1  Aaron M. McKown (SBN 208781)
2  aaron@mckownbailey.com
   William P. Cassidy, Jr.
3  wcassidy@mckownbailey.com
4  **McKOWN BAILEY**
   520 Newport Center Drive, Suit 470
5  Newport Beach, CA 92660
   Telephone: (949) 858-3200
6

SHOOK, HARDY & BACON L.L.P.
Mark D. Campell (SBN 180528)
mdcampbell@shb.com
Matt Light (SBN 294007)
mlight@shb.com
2049 Century Park East, Suite 3000
Los Angeles, California 90067-3204
Tel: (424) 285-8330 | Fax: (424) 204-9093

7  Attorneys for Plaintiff
   WORLD TECH TOYS, INC.

Attorneys for Defendant
CVS PHARMACY, INC.

8
## UNITED STATES DISTRICT COURT
9
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

11  WORLD TECH TOYS, INC., a California
12  corporation,

13          Plaintiff,

14      v.

15  CVS PHARMACY, INC., a Rhode Island
16  corporation; and DOES 1-10, inclusive,

17          Defendants.
18

Case No.: 2:23-cv-05567-FMO-JPR

Assigned to:  Hon. Fernando M. Olguin

Magistrate Judge Hon. Jean P. Rosenbluth

**JOINT STIPULATION RE PLAINTIFF WORLD TECH TOYS, INC.'S MOTION TO OVERRULE OBJECTIONS AND TO COMPEL DEFENDANT CVS PHARMACY INC.'S RESPONSES TO WRITTEN DISCOVERY AND PRODUCTION OF DOCUMENTS**

19
20  Hearing Date:   March 7, 2024
    Hearing Time:  10:00 a.m.
    Courtroom:      880
21
22  Discovery Cutoff:        May 30, 2024
    Pre-Trial Conf.:    November 22, 2024
    Trial Date:        December 17, 2024
23
24
25
26
27
28

1

1

## TABLE OF CONTENTS

2  I.  INTRODUCTORY STATEMENTS ................................................................. 2

3   A.   WTT's Statement ......................................................................... 2

4     1.   *Summary* ............................................................................. 2

5     2.   *Relevant Factual and Procedural Background* ........................... 4

6   B.   Certification Regarding L.R. 37-1 Pre-Filing Conference of Counsel ..... 5

7   C.   CVS's Statement ......................................................................... 5

8  II. ISSUES IN DISPUTE .......................................................................... 8

9   A.   Whether CVS Waived the Attorney-Client and/or Attorney Work

10  Product Privileges .............................................................................. 8

11    1.   *WTT's Position* ....................................................................... 8

12    2.   *CVS's Position* ...................................................................... 10

13  B.   CVS's Objections to Specific Interrogatories ............................... 11

14    1.   Interrogatory No. 15 ............................................................... 11

15      a.   *The Interrogatory* ……………………...…………………11

16      b.   *CVS's Objections* ……………………………………………12

17      c.   *WTT's Position* ……………………………………………...13

18      d.   *CVS's Posisiton* ……………………………………………16

19    2.   Interrogatory No. 16 ............................................................... 17

20      a.   *The Interrogatory* ……………………...…………………17

21      b.   *CVS's Objections* ……………………………………………18

22      c.   *WTT's Position* ……………………………………………18

23      d.   *CVS's Posisiton* ……………………………………………19

24  C.   CVS's Objections and Responses to Requests for Production of

25  Documents (Set One)

26  ……………………………………………………………..................20

27    1.   Request No. 2 ....................................................................... 20

28      a.   *The Request* ……...………………...……………………20

| | | | |
|---|---|---|---|
| 1 | b. | *CVS's Objections*……………………………………………………20 |
| 2 | c. | *WTT's Position*…………………………………………………...21 |
| 3 | d. | *CVS's Posisiton*…………………………………………………28 |
| 4 | 2. | Request No. 3 ..................................................................................... 34 |
| 5 | a. | *The Request*……………………………...…………………………34 |
| 6 | b. | *CVS's Objections*……………………………………………………34 |
| 7 | c. | *WTT's Position*……………………………………………………36 |
| 8 | d. | *CVS's Posisiton*…………………………………………………37 |
| 9 | 3. | Request No. 5 ..................................................................................... 39 |
| 10 | a. | *The Request*……………………………...…………………………39 |
| 11 | b. | *CVS's Objections*……………………………………………………39 |
| 12 | c. | *WTT's Position*……………………………………………………40 |
| 13 | d. | *CVS's Posisiton*…………………………………………………41 |
| 14 | 4. | Request No. 7 ..................................................................................... 41 |
| 15 | a. | *The Request*……………………………...…………………………41 |
| 16 | b. | *CVS's Objections*……………………………………………………41 |
| 17 | c. | *WTT's Position*…………………………………………………...43 |
| 18 | d. | *CVS's Posisiton*…………………………………………………44 |
| 19 | 5. | Request No. 8 ..................................................................................... 46 |
| 20 | a. | *The Request*……………………………...…………………………46 |
| 21 | b. | *CVS's Objections*……………………………………………………47 |
| 22 | c. | *WTT's Position*……………………………………………………48 |
| 23 | d. | *CVS's Posisiton*…………………………………………………49 |
| 24 | 6. | Request No. 9 ..................................................................................... 52 |
| 25 | a. | *The Request*……………………………...…………………………52 |
| 26 | b. | *CVS's Objections*……………………………………………………52 |
| 27 | c. | *WTT's Position*…………………………………………………...53 |
| 28 | d. | *CVS's Posisiton*…………………………………………………54 |

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    7.    Request No. 10 ................................................................... 57
2        a.    *The Request* ………………………...…………………………57
3        b.    *CVS's Objections* ……………………………………………57
4        c.    *WTT's Position* ………………………………………………...58
5        d.    *CVS's Posisiton* …………………………………………….....59
6    8.    Request No. 11 ................................................................... 61
7        a.    *The Request* ………………………...…………………………61
8        b.    *CVS's Objections* ……………………………………………61
9        c.    *WTT's Position* ………………………………………………62
10       d.    *CVS's Posisiton* ……………………………………………63
11   9.    Request No. 12 ................................................................... 64
12       a.    *The Request* ………………………...…………………………64
13       b.    *CVS's Objections* ……………………………………………64
14       c.    *WTT's Position* ………………………………………………...65
15       d.    *CVS's Posisiton* ……………………………………………66
16   10.   Request No. 13 ................................................................... 68
17       a.    *The Request* ………………………...…………………………68
18       b.    *CVS's Objections* ……………………………………………68
19       c.    *WTT's Position* ………………………………………………68
20       d.    *CVS's Posisiton* ……………………………………………70
21   11.   Request No. 14 ................................................................... 73
22       a.    *The Request* ………………………...…………………………73
23       b.    *CVS's Objections* ……………………………………………73
24       c.    *WTT's Position* ………………………………………………...75
25       d.    *CVS's Posisiton* ……………………………………………76
26   12.   Request No. 15 ................................................................... 79
27       a.    *The Request* ………………………...…………………………79
28       b.    *CVS's Objections* ……………………………………………79

| | | | |
|---|---|---|---|
| 1 | | c. | *WTT's Position*…………………………………………………...80 |
| 2 | | d. | *CVS's Posisiton*…………………………………………………..81 |
| 3 | 13. | | Request No. 16 .................................................................................... 84 |
| 4 | | a. | *The Request*……………………………...…………………………84 |
| 5 | | b. | *CVS's Objections*………………………………………………….84 |
| 6 | | c. | *WTT's Position*…………………………………………………...85 |
| 7 | | d. | *CVS's Posisiton*…………………………………………………..86 |
| 8 | 14. | | Request No. 17 .................................................................................... 88 |
| 9 | | a. | *The Request*……………………………...…………………………88 |
| 10 | | b. | *CVS's Objections*………………………………………………….88 |
| 11 | | c. | *WTT's Position*…………………………………………………...90 |
| 12 | | d. | *CVS's Posisiton*…………………………………………………..90 |
| 13 | 15. | | Request No. 18 .................................................................................... 93 |
| 14 | | a. | *The Request*……………………………...…………………………93 |
| 15 | | b. | *CVS's Objections*………………………………………………….93 |
| 16 | | c. | *WTT's Position*…………………………………………………...94 |
| 17 | | d. | *CVS's Posisiton*…………………………………………………..95 |
| 18 | 16. | | Request No. 19 .................................................................................... 100 |
| 19 | | a. | *The Request*……………………………...…………………………100 |
| 20 | | b. | *CVS's Objections*………………………………………………….100 |
| 21 | | c. | *WTT's Position*…………………………………………………...100 |
| 22 | | d. | *CVS's Posisiton*…………………………………………………..102 |
| 23 | 17. | | Request No. 20 .................................................................................... 105 |
| 24 | | a. | *The Request*……………………………...…………………………105 |
| 25 | | b. | *CVS's Objections*………………………………………………….105 |
| 26 | | c. | *WTT's Position*…………………………………………………...105 |
| 27 | | d. | *CVS's Posisiton*…………………………………………………..107 |
| 28 | 18. | | Request No. 21 .................................................................................... 107 |

|  |  | |
|---|---|---|
| a. | *The Request*……………………………..…………………… | 107 |
| b. | *CVS's Objections*……………………………………………….. | 107 |
| c. | *WTT's Position*……………………………………………… | 108 |
| d. | *CVS's Posisiton*……………………………………………… | 110 |
| 19. | Request No. 23 ............................................................................ | 110 |
| a. | *The Request*……………………………..…………………… | 110 |
| b. | *CVS's Objections*……………………………………………….. | 110 |
| c. | *WTT's Position*……………………………………………… | 112 |
| d. | *CVS's Posisiton*……………………………………………… | 112 |
| 20. | Request No. 24 ............................................................................ | 115 |
| a. | *The Request*……………………………..…………………… | 115 |
| b. | *CVS's Objections*……………………………………………….. | 115 |
| c. | *WTT's Position*……………………………………………… | 117 |
| d. | *CVS's Posisiton*……………………………………………… | 117 |
| 21. | Request No. 25 ............................................................................ | 120 |
| a. | *The Request*……………………………..…………………… | 120 |
| b. | *CVS's Objections*……………………………………………….. | 120 |
| c. | *WTT's Position*……………………………………………… | 121 |
| d. | *CVS's Posisiton*……………………………………………… | 122 |
| 22. | Request No. 26 ............................................................................ | 125 |
| a. | *The Request*……………………………..…………………… | 125 |
| b. | *CVS's Objections*……………………………………………….. | 125 |
| c. | *WTT's Position*……………………………………………… | 126 |
| d. | *CVS's Posisiton*……………………………………………… | 127 |
| 23. | Request No. 27 ............................................................................ | 129 |
| a. | *The Request*……………………………..…………………… | 129 |
| b. | *CVS's Objections*……………………………………………….. | 129 |
| c. | *WTT's Position*……………………………………………… | 130 |

| | | | |
|---|---|---|---|
| | d. | *CVS's Posisiton*………………………………………… | 132 |
| 24. | | Request No. 28 ………………………………………………… | 134 |
| | a. | *The Request*………………………...………………… | 134 |
| | b. | *CVS's Objections*………………………………………… | 134 |
| | c. | *WTT's Position*………………………………………… | 135 |
| | d. | *CVS's Posisiton*………………………………………… | 137 |
| 25. | | Request No. 29 ………………………………………………… | 137 |
| | a. | *The Request*………………………...………………… | 137 |
| | b. | *CVS's Objections*………………………………………… | 137 |
| | c. | *WTT's Position*………………………………………… | 138 |
| | d. | *CVS's Posisiton*………………………………………… | 139 |
| 26. | | Request No. 30 ………………………………………………… | 142 |
| | a. | *The Request*………………………...………………… | 142 |
| | b. | *CVS's Objections*………………………………………… | 142 |
| | c. | *WTT's Position*………………………………………… | 143 |
| | d. | *CVS's Posisiton*………………………………………… | 144 |
| 27. | | Request No. 31 ………………………………………………… | 146 |
| | a. | *The Request*………………………...………………… | 146 |
| | b. | *CVS's Objections*………………………………………… | 146 |
| | c. | *WTT's Position*………………………………………… | 148 |
| | d. | *CVS's Posisiton*………………………………………… | 149 |
| 28. | | Request No. 32 ………………………………………………… | 151 |
| | a. | *The Request*………………………...………………… | 151 |
| | b. | *CVS's Objections*………………………………………… | 151 |
| | c. | *WTT's Position*………………………………………… | 152 |
| | d. | *CVS's Posisiton*………………………………………… | 153 |
| 29. | | Request No. 34 ………………………………………………… | 155 |
| | a. | *The Request*………………………...………………… | 155 |

1    b.    *CVS's Objections*………………………………………………..156
2    c.    *WTT's Position*…………………………………………………156
3    d.    *CVS's Posisiton*…………………………………………………158
4    30.    Request No. 36 ................................................................................ 161
5    a.    *The Request*……………………………...………………………161
6    b.    *CVS's Objections*………………………………………………161
7    c.    *WTT's Position*…………………………………………………162
8    d.    *CVS's Posisiton*…………………………………………………163
9    31.    Request No. 38 ................................................................................ 165
10    a.    *The Request*……………………………...………………………165
11    b.    *CVS's Objections*………………………………………………166
12    c.    *WTT's Position*…………………………………………………166
13    d.    *CVS's Posisiton*…………………………………………………167
14    32.    Request No. 40 ................................................................................ 168
15    a.    *The Request*……………………………...………………………168
16    b.    *CVS's Objections*………………………………………………169
17    c.    *WTT's Position*…………………………………………………170
18    d.    *CVS's Posisiton*…………………………………………………170
19    33.    Request No. 41 ................................................................................ 172
20    a.    *The Request*……………………………...………………………172
21    b.    *CVS's Objections*………………………………………………172
22    c.    *WTT's Position*…………………………………………………173
23    d.    *CVS's Posisiton*…………………………………………………174
24    34.    Request No. 42 ................................................................................ 176
25    a.    *The Request*……………………………...………………………176
26    b.    *CVS's Objections*………………………………………………176
27    c.    *WTT's Position*…………………………………………………177
28    d.    *CVS's Posisiton*…………………………………………………178

35. Request No. 43 ................................................................................. 180

    a.   *The Request* .................................................................................. 180

    b.   *CVS's Objections* ......................................................................... 180

    c.   *WTT's Position* ............................................................................ 181

    d.   *CVS's Posisiton* ........................................................................... 182

36. Request No. 44 ................................................................................. 184

    a.   *The Request* .................................................................................. 184

    b.   *CVS's Objections* ......................................................................... 184

    c.   *WTT's Position* ............................................................................ 185

    d.   *CVS's Posisiton* ........................................................................... 186

37. Request No. 47 ................................................................................. 188

    a.   *The Request* .................................................................................. 188

    b.   *CVS's Objections* ......................................................................... 188

    c.   *WTT's Position* ............................................................................ 189

    d.   *CVS's Posisiton* ........................................................................... 130

38. Request No. 48 ................................................................................. 192

    a.   *The Request* .................................................................................. 192

    b.   *CVS's Objections* ......................................................................... 192

    c.   *WTT's Position* ............................................................................ 194

    d.   *CVS's Posisiton* ........................................................................... 194

39. Request No. 49 ................................................................................. 196

    a.   *The Request* .................................................................................. 196

    b.   *CVS's Objections* ......................................................................... 197

    c.   *WTT's Position* ............................................................................ 198

    d.   *CVS's Posisiton* ........................................................................... 199

40. Request No. 50 ................................................................................. 200

    a.   *The Request* .................................................................................. 200

    b.   *CVS's Objections* ......................................................................... 201

1

  c. *WTT's Position*……………………………………………………202

2

  d. *CVS's Posisiton*……………………………………………………202

3

 41. Request No. 51 ........................................................................ 205

4

  a. *The Request*……………………...………………………205

5

  b. *CVS's Objections*………………………………………..205

6

  c. *WTT's Position*……………………………………………………206

7

  d. *CVS's Posisiton*……………………………………………………207

8

 42. Request No. 52 ........................................................................ 209

9

  a. *The Request*……………………...………………………209

10

  b. *CVS's Objections*………………………………………..209

11

  c. *WTT's Position*……………………………………………………210

12

  d. *CVS's Posisiton*……………………………………………………211

13

 43. Request No. 53 ........................................................................ 213

14

  a. *The Request*……………………...………………………..213

15

  b. *CVS's Objections*………………………………………..213

16

  c. *WTT's Position*……………………………………………………214

17

  d. *CVS's Posisiton*……………………………………………………215

18

 44. Request No. 54 ........................................................................ 217

19

  a. *The Request*……………………...………………………217

20

  b. *CVS's Objections*………………………………………..217

21

  c. *WTT's Position*……………………………………………………218

22

  d. *CVS's Posisiton*……………………………………………………219

23

 45. Request No. 55 ........................................................................ 221

24

  a. *The Request*……………………...………………………221

25

  b. *CVS's Objections*………………………………………..221

26

  c. *WTT's Position*……………………………………………………222

27

  d. *CVS's Posisiton*……………………………………………………223

28

 46. Request No. 56 ........................................................................ 226

a.    *The Request*............................................................226

b.    *CVS's Objections*.....................................................226

c.    *WTT's Position*........................................................227

d.    *CVS's Posisiton*......................................................228

47.    Request No. 57 ......................................................... 231

a.    *The Request*............................................................231

b.    *CVS's Objections*.....................................................231

c.    *WTT's Position*........................................................232

d.    *CVS's Posisiton*......................................................232

48.    Request No. 58 ......................................................... 235

a.    *The Request*............................................................235

b.    *CVS's Objections*.....................................................235

c.    *WTT's Position*........................................................236

d.    *CVS's Posisiton*......................................................237

49.    Request No. 59 ......................................................... 238

a.    *The Request*............................................................238

b.    *CVS's Objections*.....................................................239

c.    *WTT's Position*........................................................239

d.    *CVS's Posisiton*......................................................240

**D.    Whether CVS Should Reimburse WTT for Some of Its Reasonable Attorneys' Fees in Bringing this Motion**........................................... 240

1.    *WTT's Position*.............................................................. 240

2.    *CVS's Position* .............................................................. 241

**E.    The Court Should Order WTT to Pay CVS's Reasonable Expenses in Opposing Its Improper and Meritless Motion** ............................................ 244

1

**TABLE OF AUTHORITIES**

2   **Cases**

3   *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).......... 24

4   *Advanced Visual Image Design, LLC v. Exist, Inc.*, 2015 U.S. Dist. LEXIS 109140,

5       at *6 (C.D. Cal. Aug. 18, 2015) ....................................................................... 15, 24

6   *Alvarez v. Xpo Logistics Cartage, LLC*, 2020 U.S. Dist. LEXIS 139266, *6-7 (C.D.

7       Cal. May 21, 2020).............................................................................................. 26

8   *Anderson v. Hansen*, 2012 U.S. Dist. LEXIS 131010, at *8 (E.D. Cal. Sept. 13, 2012)

9       ..................................................................................................... 14, 22, 27

10  *Blackburn v. Walmart Inc.*, 2019 WL 7171558, at *1 (C.D. Cal. July 18, 2019)...... 28

11  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ....................... 14, 22

12  *Buffington v. Nestlé Healthcare Nutrition, Inc.*, 2019 U.S. Dist. LEXIS 130971, at

13      *17-18 (C.D. Cal. Apr. 18, 2019) ...................................................................... 26

14  *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142,

15      1148-49 (9th Cir. 2005)...................................................................................... 2, 26

16  *Cache La Poudre Fees, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 618-19 (D.

17      Colo. 2007).......................................................................................................... 15, 24

18  *Carrico v. CNA Ins.*, 2020 WL 7711838, at *1 (C.D. Cal. Nov. 5, 2020).......... passim

19  *Celanese Corp. v. Clariant Corp.*, 2016 WL 1074573, at *4-5 (N.D. Tex. Mar. 18,

20      2016)..................................................................................................................... 94, 131

21  *Cohen v. Trump*, 2015 WL 3966140, at *6 (S.D. Cal. June 30, 2015) ... 36, 39, 69, 72,

22      157

23  *Delta Star, Inc. v. Michael's Carpet World*, 666 S.E.2d 331, 334 (Va. 2008) .......... 97

24  *Devoll v. Burdick Painting, Inc.*, 35 F.3d 408, 411 n.4 (9th Cir. 1994)............. 70, 158

25  *Diaz v. Heredia*, 2022 WL 2134967, at *3 (C.D. Cal. Mar. 4, 2022) ....................... 25

26  *Fabritex, Inc. v. Target Corp.*, 2016 WL 11743231, at *2 (C.D. Cal. Dec. 9, 2016) 33

27  *Fleck & Associates, Inc. v. City of Phoenix*, 471 F.3d 1100, 1104 (9th Cir. 2006) ... 26

28  *Franklin v. Smalls*, 2012 WL 5077630, at *31 (S.D. Cal. Oct. 18, 2012) ................. 24

*Geophysical Systems Corp. v. Raytheon Co.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987) ............................................................................................................ 14, 22

*Godinez v. Alta-Dena Certified Dairy*, 2016 WL 6917270, at \*3 (C.D. Cal. Jan. 22, 2016)........................................................................................................ 15

*Gold v. Kaplan*, 2021 U.S. Dist. LEXIS 252272, \*7-8 (C.D. Cal. Dec. 2, 2021) 15, 24

*Golden Eagle Milling Co. v. Old Homestead Bakery*, 59 Cal. App. 541, 542, 545–46 (1922) ................................................................................................... 97, 98

*Guerrero v. Wharton*, 2017 U.S. Dist. LEXIS 225185, at \*4 (N.D. NV. Mar. 30, 2017)....................................................................................................... 14, 22

*Herrera v. AllianceOne Receivable Mgmt.*, 2016 U.S. Dist. LEXIS 40474, \*7 (S.D. Cal. Mar. 28 2016) ......................................................................... 14, 22, 27

*ILC Trademark Corp. v. Aviator Nation, Inc.*, 2019 WL 2998576, at \*2 (C.D. Cal. Jan. 22, 2019) ................................................................................... passim

*Impossible Elecs. Techs., Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1037 (5th Cir. 1982) ............................................................................ 97

*King-Hardy v. Bloomfield Bd. Of Educ.*, 2002 U.S. Dist. LEXIS 27384, at \*5 (D. Conn. Dec. 8, 2002) ................................................................................ 15, 24

*Koeper v. BMW of N. Am., LLC*, 2018 WL 6016915, at \*2 (C.D. Cal. May 21, 2018) .................................................................................................... passim

*Lavco Solutions, Inc. v. Biztracker Sys. of St. John, LLC*, 2021 WL 4771803, at \*8 (C.D. Cal. Sept. 1, 2021) ......................................................... 17, 19, 30

*Lehman Commercial Paper Inc. v. Fidelity Nat'l Title Ins. Co.*, 2013 WL 12114063, at \*1 (C.D. Cal. July 25, 2013) ................................................ 29

*Maderas Tropicales S. de R. L. de C. V. v. S. Crate & Veneer Co.*, 588 F.2d 971, 974 (5th Cir. 1979) ............................................................................ 97

*Mayes v. Sturdy N. Sales, Inc.*, 91 Cal. App. 3d 69, 85 (1979) ................................ 103

*McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) ............................ 15, 24

*Mend Health, Inc. v. Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1056 (C.D.

Cal. 2022) ..................................................................................... passim

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) ............................................................................. 25

*Puerto v. Superior Court*, 158 Cal.App.4th 1242, 1249-50 (2008) ........................ 15

*RG Abrams Insurance v. Law Offices of C.R. Abrams*, 2021 WL 10312432, at *7 (C.D. Cal. Nov. 5, 2021) ........................................................................ 24

*Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 n.4 (N.D. Ill. 2001).... 14, 22, 27

*Rivera v. Amazon Web Services, Inc.*, 2023 WL 6554304, at *1 (W.D. Wash. Sept. 27, 2023)......................................................................................... 34

*Sepulveda v. City of Whittier*, 2022 WL 20804352, at *5 (C.D. Cal. Feb. 16, 2022) 30

*Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41 (1993) .................................. 103

*Stockton Mortgage, Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014) ............... passim

*Symettrica Entm't Ltd. v. UMG Recordings, Inc.*, 2020 WL 13311683, at *6 (C.D. Cal. July 15, 2020) ................................................................... 28

*Tapia v. Huntington Park Police Dep't*, 2010 WL 11549657, at *1, 3 (C.D. Cal. May 5, 2010)........................................................................................ 29

*Teradyne, Inc. v. Astronics Test Sys., Inc.*, 2022 WL 18397125, at *5–7 (C.D. Cal. Dec. 22, 2022) ................................................................................ passim

*Third Pentacle, LLC v. Interactive Life Forms, LLC*, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) ........................................................................ 95, 131

*Trans-World Int'l v. Smith-Hemion Prods.*, 972 F.Supp.1275, 1284 (C.D. Cal. 1997) ...................................................................................... 70, 158

*United States v. Abel*, 469 U.S. 45, 52 (1984)........................................... 36

*United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ........................... 26

*Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994) ..................... 103

*White v. Moore*, 2022 WL 2189645, at *5 (C.D. Cal. Mar. 23, 2022)................ passim

*Williams v. Hargrove*, 2017 WL 11454716, at *1 (S.D. Miss. Apr. 12, 2017) . 95, 131

**Statutes**

Cal. Com. Code § 2201(3)(a) ....................................................................... 96

Cal. Comm. Code § 2201(3)(a) ........................................................... 94, 131

Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii) ................................................. passim

Fed. R. Civ. P. 26(b)(2)(C)(i) ............................................................. passim

Fed. R. Civ. P. 34(b)(2)(C) ......................................................................... 27

Fed. R. Civ. P. 34(b)(2)(C), Comm. Notes (2015 Am.) ............................. 34

Fed. R. Civ. P. 37(a)(5)(A) ....................................................................... 242

Fed. R. Civ. P. 37(a)(5)(B) ....................................................................... 244

Fed. R. Civ. P. 37(a)(5)(C) ....................................................................... 245

Fed. R. Civ. P.26 (b)(1) ...................................................................... 14, 22

Fed. R. Evid. 401 .............................................................................. passim

FRCP 37(a)(5)(i)-(iii) ............................................................................... 241

**Other Authorities**

8 Wright, Miller & Marcus, Federal Practice and Procedure § 2008, p. 137 (3d ed.
2010) ................................................................................................. 95, 131

1    Pursuant to Federal Rules of Civil Procedure, Rules 33, 34, and 37 and Local
2    Rule 37-2, Plaintiff World Tech Toys, Inc. ("Plaintiff" or "WTT") and Defendant CVS
3    Pharmacy, Inc. ("Defendant" or "CVS") submit this Joint Stipulation regarding WTT's
4    motion to overrule objections and to compel CVS's supplemental responses to written
5    discovery and for a further production of documents.

6    **I.    INTRODUCTORY STATEMENTS**

7        **A.    WTT's Statement**

8            1.    *Summary*

9    "The purpose of discovery is to provide a mechanism for making relevant
10   information available to the litigants . . . .  Thus the spirit of the rules is violated when
11   advocates attempt to use discovery tools as tactical weapons rather than to expose the
12   facts and illuminate the issues . . . ."  *Burlington Northern & Santa Fe Ry. v. United*
13   *States Dist. Court*, 408 F.3d 1142, 1148-49 (9th Cir. 2005).

14       Here, Plaintiff seeks to compel CVS's responses to two interrogatories and 49
15   document requests.  Plaintiff also seeks an order compelling CVS to produce
16   responsive documents and for an order finding that CVS waived all asserted privileges
17   as a result of its failure to provide a privilege log to date.[1]  Lastly, Plaintiff requests
18   reimbursement of its attorneys' fees in the amount of $5,330.00.

19       With respect to the two interrogatories at issue, both seek the names of potential
20   party witnesses.  Specifically, WTT asked CVS to provide the identities of those
21   persons who were involved in the creation, modification, and/or approval of artwork,
22   written instructions, and warning labels used in the customized packaging of the goods
23   at issue.  It is now 25 days and counting since CVS stated it would provide these names.
24   Moreover, the restrictions on the names CVS intends to disclose are improper.

25   _____

26   [1] WTT anticipates that CVS will serve a privilege log prior to this Joint Stipulation being filed so it
     could argue that the issue is moot.  It is not.  CVS has an affirmative obligation to provide the log at
27   the time of its responses.  It failed to do so.  *See* Declaration of Aaron M. McKown ("McKown
     Decl."), ¶ 4.  After the parties met and conferred, they mutually agreed that all privilege logs would
28   be produced within 21 days of the parties' production of documents.  *Id.*, ¶¶ 6-7, Exs. G-H.  WTT
     timely complied with this agreement.  *Id.*, ¶ 8.  CVS did not.  *Id.*

_____
JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    As for document requests, CVS refused to produce or is otherwise withholding
2  documents as to 49 of the 59 requests propounded by WTT.  Thirty-six (36) of these
3  requests[2] either seek documents that support CVS's contentions or ask for documents
4  specific to the goods at issue and the parties' discussions related thereto.  While CVS
5  indicated its intent to produce documents responsive to each of these 36 requests, CVS
6  also indicated that it was withholding unidentified documents responsive to each.
7  WTT's meet and confer efforts to determine what documents are being withheld and
8  on what grounds was met with a demand by CVS that WTT identify documents that it
9  believed should be produced in response to each request – an impossible task that turns
10  Rules 26 and 34 on their heads by improperly shifting the discovery burden onto WTT
11  to justify the production of documents when CVS is the withholding party.

12    The genuine disputes as to the remaining 13 requests revolve around whether
13  the requests seek documents that are relevant and proportional to the needs of this $12
14  million suit.  The discovery dispute involves three categories of documents.  The first
15  are requests involving Sarah Currier and Matt LeBlanc.  There are essentially three
16  key witnesses in this case who regularly discussed amongst themselves the orders and
17  goods at issue:  Ms. Currier (CVS buyer), Kevork Kouyoumjian (WTT's CEO), and
18  Mr. LeBlanc (independent sales rep).  WTT believes that documents such as Ms.
19  Currier's phone records reflecting calls with the other two, payments CVS made to
20  Mr. LeBlanc, and other transactions involving CVS and Mr. LeBlanc are all relevant
21  to determine whether certain events occurred and to determine whether Mr. LeBlanc
22  may have a bias adverse to WTT given the extent of his financial reliance on CVS.

23    The second category involves CVS's purchase of the same types of masks at
24  issue in this case and its subsequent sale of those masks, if any.  WTT believes that
25  these documents are highly probative as to the circumstances surrounding the promises
26  at issue as well as to CVS's defense regarding mitigation of damages.

27
28  _____
[2] These requests are as follows:  Request Nos. 2-3, 7-10, 12, 14-17, 23-26, 29-32, 41-44, and 47-59.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

The third group involves CVS's policies and procedures regarding its acquisition, use, and sale of masks during the pandemic. These policies and procedures are highly probative of the circumstances surrounding Ms. Currier's alleged requests and promises to WTT. They are also highly probative of whether Ms. Currier followed CVS's policies and procedures as well as to witness credibility for each of the three key witnesses.

2.    *Relevant Factual and Procedural Background*

On September 13, 2023, WTT served an initial set of written discovery on CVS, including interrogatories and requests for production of documents. *See* Declaration of Aaron McKown ("McKown Decl."), ¶ 2, Exs. A-B. CVS requested a three-week extension to respond, which WTT granted. *Id.*, ¶ 3, Ex. C. On November 3, 2023, CVS served objections and responses to written discovery, however, no privilege log was provided nor were any documents produced. *Id.*, ¶ 4, Exs. D-E.

On December 18, 2023, WTT sent a 28-page, single spaced, meet and confer letter identifying numerous deficiencies with CVS's objections and responses, its failure to provide a privilege log, and its failure to produce any documents. *Id.*, ¶ 5, Ex. F. WTT also requested a telephonic conference pursuant to L.R. 37-1. *Id.*

On December 27, 2023, the parties engaged in a telephonic meet and confer in which they discussed the items identified in the meet and confer letter. *Id.*, ¶ 6. One of the issues agreed upon during the call was that the parties would each provide a privilege log within 21 days after their initial document production. *Id.* After concluding the call, WTT provided a letter memorializing the discussion, including the privilege log agreement. *Id.*, ¶ 7, Ex. G. On December 28, 2023, CVS responded to WTT's December 27, 2023 letter clarifying its positions. *Id.*, Ex. H. The parties subsequently engaged in further meet and confer discussions over the next week. *Id.*

CVS produced documents on January 5, 2024. *Id.*, ¶ 8. As of January 30, 2024, CVS has not provided a privilege log. *Id.* In contrast, WTT produced both a privilege log and its initial document production on January 12, 2024. *Id.*, Ex. I.

WTT requests that the Court overrule CVS's objections to Interrogatory Nos. 15-16, Requests for Production Nos. 2-3, 5, 7-21, 23-32, 34, 36, 38, 40-44, 47-59, that the Court compel CVS to provide complete and direct responses to each without objection, and that CVS produce all non-privileged documents in its possession, custody, and control responsive to Requests for Production Nos. 2-3, 5, 7-21, 23-32, 34, 36, 38, 40-44, 47-59 as limited by WTT in the parties' meet and confer discussions. WTT also asks that CVS reimburse WTT $5,330.00 for bringing this motion.

**B.**    **Certification Regarding L.R. 37-1 Pre-Filing Conference of Counsel**

Pursuant to L.R. 37-1, the parties conducted numerous pre-filing conferences of counsel in writing on December 18, 2023, December 28, 2023, December 30, 2023, and January 5, 2024, and by telephone on December 27, 2023. *See* McKown Decl., ¶¶ 5-7, Exs. F-H.

**C.**    **CVS's Statement**

Rather than litigate on the merits, WTT seeks to burden CVS (and now the Court) with irrelevant and disproportionate discovery to leverage exorbitant litigation costs. Even worse, WTT is trying to make discovery a one-way street. After nearly a year of litigation, WTT has failed to identify *any* documents supporting its claims and produced *only 66* documents in total, many of which CVS already produced, and none of which are communications from the two "key witnesses" that acted on WTT's behalf, which CVS asked WTT to prioritize. Light Decl. ¶ 19. As WTT's 130-page motion addressing 51 discovery requests makes clear, WTT would rather focus on moot, irrelevant, and attenuated issues that will not advance the action.

This case arises out of WTT's failed attempt to profit off the demand for face masks during the pandemic. WTT, a toy supplier, shifted to selling masks and bought millions on speculation, hoping it could sell them to retailers, like CVS, at similar rates as during the peak of the pandemic. When demand cooled, WTT was left holding millions of masks. Now, WTT is trying to shift the costs of its speculative endeavor and excess inventory to CVS, even though CVS never placed an order for, or otherwise

5

promised to buy, the masks. Moreover, because WTT owes CVS more than $400,000 in accrued discounts for certain masks previously purchased, WTT is challenging those discounts and other credits to which the parties had long ago agreed.

In its Third Amended Complaint ("TAC," Light Decl. Ex. 1), WTT brings three categories of claims against CVS: (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit in October 2020 for masks previously ordered that was supposedly conditioned on an alleged oral agreement or promise during a call in October 2020 to buy an additional 10 million blue 3-ply masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks previously ordered that was supposedly related to a request for additional funding during a call in July 2021, *id.* ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that CVS orally agreed or promised to buy 5 million red 3-ply masks during a call in August 2020, *id.* ¶¶ 87–106, 10 million blue 3-ply masks during a call in October 2020, *id.* ¶¶ 107–36, 5 million multi-color 3-ply masks during a call in December 2020, *id.* ¶¶ 137–56, "up to" 1 million black cloth masks during a call in January 2021, *id.* ¶¶ 157–76, and 2.4 million kids' themed masks during a call in December 2020. *Id.* ¶¶ 177–97.

Critically, WTT concedes there are only "*three key witnesses in this case"—and just one who acted on behalf of CVS: Sarah Currier*, p. 3 above (emphasis added). Ms. Currier, a former Category Manager who is no longer at CVS, is the *sole* individual who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 below (emphasis added). The other two "key witnesses" are WTT's CEO, Kevork Kouyoumjian, and sales agent, Mark LeBlanc. *Id.* Thus, all key communications and other documents flowed from these three individuals—*and CVS has agreed to produce (and, for the most part, already produced) all such communications and documents*.

Specifically, CVS has produced over 2,600 documents comprising over 5,400

6

pages of internal and external emails and attachments and over 620 native files (e.g., large excel spreadsheets) comprising thousands of additional pages of data. Light Decl. ¶¶ 7–10. The vast majority of these documents were collected from the email accounts of Ms. Currier and the two individuals at CVS to whom she reported using search terms and connectors that WTT concedes "should capture all responsive documents," p. 23 below. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, data from various systems sufficient to show all face mask purchase orders submitted to WTT, all payments made to WTT, and all discounts and credits applied to mask purchases from WTT, and Ms. Currier's phone records. Light Decl. ¶¶ 12–13. In total, CVS has collected *more than 630,000 records and millions of pages of data*, as well as interviewed numerous individuals at CVS to identify and collect information in response to WTT's first sets of written discovery. *E.g.*, *id.* ¶¶ 8, 12–13.

These extensive efforts have cost CVS significant time and expense. CVS has already incurred **over 280 attorney hours and over $180,000 in attorney fees responding to and collecting information for WTT's first sets of written discovery**, **including over 160 attorney hours and over $103,000 in attorney fees collecting, processing, and reviewing documents for production**. *Id.* ¶ 14. This does not account for the substantial time and expense CVS has incurred from its e-discovery vendor and contract reviewers (collectively over $25,000), or the considerable amount of time spent by CVS's in-house counsel and employees in collecting and providing information in response to the discovery. *Id.* But, apparently, this is not enough for WTT. The Court should shut down WTT's meritless attempt to inflict further unnecessary and unduly burdensome discovery on CVS.

WTT's argument that CVS waived all privileges as to WTT's first sets of discovery is baseless because CVS served a privilege log for all documents withheld

or redacted from its productions on January 19, 2024, concurrently with CVS's second production, and 14 days after CVS's initial production on January 5, 2024. *Id.* ¶ 11 & Ex. 3. WTT's motion is moot as to Interrogatory Nos. 15–16 and Document Request Nos. 5, 38, and 59 because CVS served supplemental responses to the interrogatories on February 2, 2024, and to the document requests on February 12, 2024. *Id.* ¶¶ 16– 17 & Ex. 4–5. WTT's motion is procedurally defective as to Document Request Nos. 2–3, 7–10, 12, 14–17, 23–26, 29–32, 41–44, and 47–59 because WTT failed to specifically discuss the requests during the parties' conference of counsel, let alone propose any resolutions of its disputes, as required by Local Rule 37. *Id.* ¶ 4. And WTT's motion lacks merit as to these requests and the remaining requests because CVS's objections (which are *not* boilerplate) are justified and the remaining documents WTT seeks are either irrelevant or disproportionate to the needs of the case.

For all these reasons, the Court should deny WTT's motion in its entirety.

## II.    ISSUES IN DISPUTE

### A.    Whether CVS Waived the Attorney-Client and/or Attorney Work Product Privileges

#### 1.    *WTT's Position*

The mere assertion of an objection based on the attorney-client privilege or work product doctrine without providing a corresponding privilege log or equivalent detail is insufficient to preserve those privileges. *Burlington*, 408 F.3d at 1149.  Rather, the Ninth Circuit has instructed district courts to make a case-by-case determination on whether privileges have been waived, taking into account the following factors:

(1)    "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient)";

(2)    "the timeliness of the objection and accompanying information about the

1              withheld documents (where service within 30 days, as a default guideline,

2              is sufficient)";

3       (3)    "the magnitude of the document production"; and

4       (4)    "other particular circumstances of the litigation that make responding to

5              discovery unusually easy or unusually hard".

6 *Id.* "These factors should be applied in the context of a holistic reasonableness

7 analysis, intended to forestall needless waste of time and resources, as well as tactical

8 manipulation of the rules and the discovery process." *Id.* "They should not be applied

9 as a mechanistic determination of whether the information is provided in a particular

10 format." *Id.* "Finally, the application of these factors shall be subject to any applicable

11 local rules, **agreements or stipulations among the litigants**, and discovery or

12 protective order." *Id.* (emphasis added).

13       Here, the *Burlington* factors, the parties' agreement, and the unique factors of

14 this case support a finding of waiver. First, the boilerplate fashion of CVS's privilege

15 objections does not enable WTT or the Court to evaluate whether any documents are

16 being withheld let alone whether any such documents are privileged thereby rendering

17 their assertion presumptively insufficient. *See* McKown Decl., ¶ 2, Ex. B. Second, it

18 has been 139 days and counting since CVS was served with discovery and yet no

19 privilege log has been provided – well beyond the 30 days that is sufficient and only

20 two weeks shy of the five (5) months the Ninth Circuit held was a waiver absent

21 mitigating considerations. *Burlington*, 408 F.3d at 1149.

22       Another factor that favors a finding of waiver is that CVS is in breach of the

23 parties' agreement regarding the timing for its production of a privilege log. During

24 the parties' December 27, 2023 telephonic meeting, the parties agreed that each would

25 provide a privilege log no later than 21 days after their initial document production.

26 *See* McKown Decl., ¶¶ 6-7, Exs. G-H. WTT honored the parties' agreement by

27 providing a privilege log concurrently with its initial document production on January

28 12, 2024. *Id.*, ¶ 8, Ex. I. CVS, on the other hand, did not. *Id.* While CVS made an

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

initial document production on January 5, 2024, it did not provide a privilege log within 21 days as agreed nor has it provided a privilege log as of WTT's completion this Joint Stipulation on January 30, 2024. *Id.* The breach of the parties' agreement, particularly in light of WTT's compliance, is further grounds to find a waiver.

While WTT acknowledges that the magnitude of the document production in general is substantial, the vast majority of the documents in this case are not in any conceivable way privileged as they consist of tens of thousands of invoices and purchase orders exchanged between the parties. The actual universe of documents that would be potentially privileged is only a tiny fraction of the total production. Moreover, CVS has employed automated technology that allows CVS to segregate any emails involving its in-house counsel and/or outside counsel. This technology substantially reduces the universe of potentially privileged documents that need to be reviewed. While WTT is not privy to the quantity of documents that fall within this subcategory, CVS has not complained or otherwise asked WTT to amend their agreement for more time due to the volume of potentially privileged documents that need to be reviewed. *Id.*

Other factors unique to this case also support a finding of waiver. CVS is the nation's largest pharmacy with nearly $300 billion in annual revenues and over 10,000 retail locations making it the type of "sophisticated corporate litigant" that renders its failure to provide a privilege log under the circumstances "hard to justify." *Burlington*, 408 F.3d at 1149. The same can be said with the law firm representing CVS, which is an AmLAW 100 firm with over 500 attorneys across the nation.

In light of the above, WTT respectfully requests that the Court find that CVS has waived any claimed privileges as to WTT's first set of interrogatories and first set of requests for production of documents.

2. *CVS's Position*

WTT's arguement that CVS waived all privileges as to WTT's first sets of discovery is based on a false premise: that CVS failed to "honor[] the parties'

agreement," pp. 9–10 above, to "serve a privilege log within 21 days of each rolling production identifying any documents withheld from the production on the basis of privilege." McKown Decl. Ex. H at 2; *see also* Light Decl. ¶ 3. WTT is mistaken.

CVS promptly served a privilege log on January 19, 2024, concurrently with CVS's second document production, and 14 days after CVS's initial document production on January 5, 2024. Light Decl. ¶¶ 7, 10–11 & Ex. 3. The privilege log is 18 pages long, contains 99 entries, and covers documents withheld or redacted from CVS's first two productions on grounds of privilege. *Id.* ¶ 11 & Ex. 3. CVS did not receive any electronic message or other indication that WTT's counsel did not receive the email serving the privilege log, and both individuals cc'd on the email received it shortly after it was sent. *Id.* ¶ 11. Thus, CVS has fully complied with the parties' agreement.

Because WTT concedes the "timing" of privilege logs is "subject" to the parties' "agreements," p. 9 above, and CVS has complied with the parties' agreement, the Court should deny WTT's argument that CVS waived all privileges as to WTT's first sets of discovery. To the extent WTT seeks to challenge CVS's privilege log by motion, WTT "must" first "confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible" pursuant to Local Rule 37-1. WTT has not initiated, let alone satisfied, this requirement.

**B.    CVS's Objections to Specific Interrogatories**

1.    Interrogatory No. 15

a.    *The Interrogatory*

"IDENTIFY all PERSONS involved in YOUR creation of any artwork for face masks, including packaging thereof, between January 1, 2020 and January 31, 2022, including the following:

/ / / /

/ / / /

/ / / /

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1
2
3
4
5
6
7
8
9
10
11
12



Jan 8, 2021 at 3:21 PM

13
14
15
16
17
18
19
20
21



22                b.    *CVS's Objections*

23    CVS incorporates and reasserts its preliminary statement and objections to

24 specific definitions set forth above as if fully stated in response to this interrogatory.

25 CVS further objects to this interrogatory to the extent it seeks information that is not

26 relevant to any party's claim or defense or proportional to the needs of the case.

27 Information regarding persons involved in the creation of artwork or packaging

28 designs for face masks between January 1, 2020 and January 31, 2022 that were not

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

communicated to WTT has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the interrogatory is vague and ambiguous because it does not describe with reasonable particularity what the phrase "involved in [CVS's] creation of any artwork for face masks, including packaging thereof" means or define the capitalized term "IDENTIFY." CVS further objects to the interrogatory to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control.

c.    *WTT's Position*

The parties clarified during their meet and confer discussions that WTT created the artwork with the assistance and approval of CVS.  Accordingly, WTT requested that CVS identify the names of those persons who were involved in the creation, modification, and approval of the packaging artwork depicted in Interrogatory No. 15. In response, CVS agreed to "supplement our responses to these interrogatories to identify the CVS employee(s) we understand were responsible for approving or providing feedback to the face mask artwork and labeling language proposed by WTT."  McKown Decl., ¶ 8, Ex. H.  It has now been 25 days since CVS stated it would provide these supplemental responses, yet, WTT has neither received the supplemental responses nor has it indicated a date certain as to when.

Moreover, CVS's attempt to restrict the persons identified to CVS employees would render this response insufficient.  If CVS is aware of persons other than its own employees who were involved in the creation, modification, and/or approval of the artwork used for the packaging of the goods at issue in this case, then it must be required to identify those persons.

To the extent CVS now intends to stand on its objections, its refusal to provide a response to this interrogatory lacks merit.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents

13

or other tangible things ***and the identity and location of persons who know of any discoverable matter***." Fed. R. Civ. P.26 (b)(1) (emphasis added). "The test of relevance in the discovery context is a very broad one." *Geophysical Systems Corp. v. Raytheon Co*., 117 F.R.D. 646, 647 (C.D. Cal. 1987). "Even after the 2015 amendments, courts continue to recognize that discovery relevance remains 'broad' in scope." *Guerrero v. Wharton*, 2017 U.S. Dist. LEXIS 225185, at *4 (N.D. NV. Mar. 30, 2017) (citations omitted).

If objections are made to discovery requests, the party asserting the objections bears the burden of justifying them. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). "Where the responding party provides a boilerplate or generalized objection, the 'objections are inadequate and tantamount to not making any objection at all.'" *Herrera v. AllianceOne Receivable Mgmt*., 2016 U.S. Dist. LEXIS 40474, *7 (S.D. Cal. Mar. 28 2016); *Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 n.4 (N.D. Ill. 2001) ("As courts have repeatedly pointed out, blanket objections are patently improper, . . . [and] we treat [the] general objections as if they were never made."). Rather, "[t]he responding party must clarify, explain, and support its objections." *Herrera*, 2016 U.S. Dist. LEXIS 40474, *7 (citing *Anderson v. Hansen*, 2012 U.S. Dist. LEXIS 131010, at *8 (E.D. Cal. Sept. 13, 2012)). "The grounds for objecting to a request must be stated . . . and as with other forms of discovery, it is well established that boilerplate objections do not suffice." *Id.* (discussing boilerplate objections asserted in response to requests for admission).

Here, all of CVS's boilerplate objections lack merit. The use of general objections are improper. *Id.* CVS's objection that it is not relevant and thus, not proportional to the needs of the case to provide the names of those persons within CVS who were involved in the creation, modification, and/or approval of the artwork used for the specially manufactured goods at issue in this case lacks merit. CVS has taken the position that it neither expressly ordered nor made any promises, representations, or statements, or taken any other action, that WTT could have reasonably relied upon

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

in sourcing black cloth and multi-colored masks.  CVS's participation in the design and selection of features for those masks, including CVS's involvement with and/or approval of the artwork used for the specially designed packaging of those masks, is directly relevant to whether an agreement had been reached and/or whether WTT reasonably believed and relied on CVS in moving forward with sourcing, at the cost to WTT of millions of dollars, the black cloth and multi-colored masks at issue. Simply identifying potential witnesses within CVS imposes very little burden and, quite frankly, is central to the purpose of discovery.  *See Godinez v. Alta-Dena Certified Dairy*, 2016 WL 6917270, at \*3 (C.D. Cal. Jan. 22, 2016) (citing *Puerto v. Superior Court*, 158 Cal.App.4th 1242, 1249-50 (2008) ("identification of potential witnesses" is central to the discovery process).

Plaintiff's objection on the grounds that the interrogatory is vague and ambiguous is similarly specious. "Parties responding to discovery should use common sense and attribute ordinary definitions to terms in discovery requests."  *Gold v. Kaplan*, 2021 U.S. Dist. LEXIS 252272, \*7-8 (C.D. Cal. Dec. 2, 2021) (citing *Advanced Visual Image Design, LLC v. Exist, Inc.*, 2015 U.S. Dist. LEXIS 109140, at \*6 (C.D. Cal. Aug. 18, 2015); *Cache La Poudre Fees, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 618-19 (D. Colo. 2007) (finding parties have an "obligation to construe . . . discovery requests in a reasonable manner"); *King-Hardy v. Bloomfield Bd. Of Educ.*, 2002 U.S. Dist. LEXIS 27384, at \*5 (D. Conn. Dec. 8, 2002) (finding the responding party must give discovery requests a reasonable construction, rather than strain to find ambiguity); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized . . . ." (internal quotation marks omitted)).  There is nothing about the language used that prevents CVS from responding to this interrogatory.  As discussed and clarified during the parties' meet and confer efforts, Plaintiff is simply requesting the identities of those person who were involved in the creation, modification, and/or approval of the artwork

15

1    identified in the interrogatory.

2        CVS's objection that it requires the disclosure of information in possession of

3    former employees evidences CVS's failure to comply with its discovery obligations to

4    conduct a reasonable inquiry.  That means not only asking those persons who were

5    involved but may no longer be at the company, but it also means reviewing those

6    former employee's records, particularly emails, to determine whether the identities can

7    be provided.  Simply refusing to respond because an employee may no longer work at

8    CVS is not a valid objection.

9            d.    *CVS's Position*

10       WTT's motion as to this interrogatory is moot because CVS served a

11   supplemental response on February 2, 2024 identifying "Sarah Currier" as the

12   individual "responsible for providing … feedback or approval to WTT" for "the

13   'artwork' for face masks supplied by WTT." Light Decl. ¶ 16 & Ex. 4 at 25.

14       As WTT concedes, *see* p. 13 above, on December 28, 2023, after WTT's

15   counsel "confirm[ed] with [his] client that the artwork and labeling language for the

16   masks at issue was sent by WTT to CVS via Mr. LeBlanc for approval"—and not the

17   other way around, as alleged in the TAC and contemplated by Interrogatory Nos. 15–

18   16—CVS agreed to "supplement [its] responses to the interrogatories to identify the

19   CVS employee(s) [it] understand[s] were responsible for approving or providing

20   feedback to the face mask artwork and labeling language proposed by WTT."

21   McKown Decl. ¶ 8 & Ex. H at 6. CVS did not serve the supplemental response earlier

22   because during a January 5, 2024 conference of counsel, the parties agreed it would be

23   more efficient to serve all supplemental discovery responses together instead of in

24   iterations, CVS was still collecting information to supplement certain discovery

25   responses, and WTT never requested the supplemental response by a certain deadline

26   (or even followed up on its status before serving CVS with this motion). Light Decl.

27   ¶ 18. Moreover, on January 5, 2024, CVS produced all located communications

28   between CVS and WTT (and WTT's sales agents) regarding WTT's face mask artwork

16

and labeling language, and these communications do not reflect anyone providing feedback or approval to WTT for such artwork and labeling language besides Ms. Currier, the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy *all* the masks at issue. *Id.*

To the extent WTT now argues that CVS's December 28, 2023 agreement to supplement the response is "insufficient," p. 13 above, WTT never raised the issue during the parties' conference of counsel or subsequent correspondence. On the contrary, WTT responded to CVS's agreement with two words: "Than you." McKown Decl. ¶ 8 & Ex. H at 6. Accordingly, WTT has failed to "confer in a good-faith effort to eliminate the necessity for hearing the motion" as to this issue, L.R. 37-1, and the Court should deny the motion as to it. *Carrico v. CNA Ins.*, 2020 WL 7711838, at *1 (C.D. Cal. Nov. 5, 2020) (Rosenbluth, J.) (denying motion to compel further response to interrogatory "because [plaintiff] did not meet and confer concerning it").

Nor has WTT met its *initial "burden"* of showing that further information is "relevant to [the] claims and defenses in this action and proportional to the needs of the case." *Lavco Solutions, Inc. v. Biztracker Sys. of St. John, LLC*, 2021 WL 4771803, at *8 (C.D. Cal. Sept. 1, 2021); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii). WTT does not articulate how identification of other individuals beyond Ms. Currier—the *only* individual who CVS is aware provided feedback or approval to WTT for the artwork at issue—has any tendency to make a fact "of consequence in determining the action" more or less probable. Fed. R. Evid. 401. And even if WTT could show some marginal relevance, "the importance of the discovery in resolving the issues [in this case] is virtually nil." *ILC Trademark Corp. v. Aviator Nation, Inc.*, 2019 WL 2998576, at *2 (C.D. Cal. Jan. 22, 2019) (Rosenbluth, J.) (denying discovery).

Therefore, the Court should deny WTT's motion as to this interrogatory.

### 2.    Interrogatory No. 16

#### a.    *The Interrogatory*

"IDENTIFY all PERSONS who were involved in YOUR creation of any copy

17

used for face masks, including any warnings, limitations, and instructions, between January 1, 2020 and January 31, 2022."

### b.    *CVS's Objections*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this interrogatory. CVS further objects to this interrogatory to the extent it seeks information that is not relevant to any party's claim or defense or proportional to the needs of the case. Information regarding persons involved in the creation of language used for face mask packaging, including warnings, limitations, and instructions, between January 1, 2020 and January 31, 2022 that was not communicated to WTT has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the interrogatory is vague and ambiguous because it does not describe with reasonable particularity what the phrase "involved in [CVS's] creation of any copy used for face masks" means or define the capitalized term "IDENTIFY." CVS further objects to the interrogatory to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control.

### c.    *WTT's Position*

Unlike the artwork subject Interrogatory No. 15, WTT did not create the instructions or warning labels that CVS insisted by placed on all individual packaging of the masks.  Rather, that copy was drafted and provided by CVS to WTT.  Thus, while CVS agreed to "supplement our responses to these interrogatories to identify the CVS employee(s) we understand were responsible for approving or providing feedback to the face mask artwork and labeling language proposed by WTT," that supplemental response would not be sufficient.  Rather, CVS must also identify all persons who were involved in its creation of the instructions and warnings CVS provided to WTT.

CVS's attempt to restrict the persons identified to CVS employees is also

18

inadequate. If CVS is aware of persons other than its own employees who were involved in the creation, modification, and/or approval of the instructions and warnings used for the packaging of the goods at issue in this case, then it must be required to identify those persons even if that means identifying third parties.

It has now been 25 days since CVS stated it would provide these supplemental responses, yet, WTT has neither received the supplemental responses nor has it indicated a date certain as to when.

To the extent CVS now intends to stand on its objections, its refusal to provide a response to this interrogatory lacks merit for the same reasons discussed in Interrogatory No. 15.

d.    *CVS's Position*

WTT's motion as to this interrogatory is moot for the same reasons as demonstrated above for Interrogatory No. 15 because CVS served a supplemental response on February 2, 2024 identifying "Sarah Currier" as the individual "responsible for providing … feedback or approval to WTT" for "the 'labeling language' for face masks supplied by WTT." Light Decl. ¶ 16 & Ex. 4 at 26.

To the extent WTT now argues that CVS's December 28, 2023 agreement to supplement the response is insufficient, *see* p. 18 above, WTT has failed to "confer in a good-faith effort to eliminate the necessity for hearing the motion" as to this issue, L.R. 37-1, for the same reasons as shown above for Interrogatory No. 15, *see* p. 17.

Nor has WTT met its "burden of showing" that further information is "relevant to [the] claims and defenses in this action and proportional to the needs of the case." *Lavco Solutions*, 2021 WL 4771803, at *8; *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii). WTT does not articulate how identification of other individuals beyond Ms. Currier—the *only* individual who CVS is aware provided feedback or approval to WTT for labeling language for the masks at issue—has any tendency to make a fact "of consequence in determining the action" more or less probable. Fed. R. Evid. 401. And even if WTT could show some marginal relevance, "the importance of the

19

discovery in resolving the issues [in this case] is virtually nil." *ILC Trademark*, 2019 WL 2998576, at *2 (denying discovery).

Therefore, the Court should deny WTT's motion as to this interrogatory.

**C.    CVS's Objections and Responses to Requests for Production of Documents (Set One)**

   1.    Request No. 2

     a.    *The Request*

"All COMMUNICATIONS between YOU and any PERSON related to WTT."

     b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all communications between CVS and any person somehow related to WTT or CVS's purchase of millions of face masks from WTT for thousands of stores. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "related to WTT" means or provide any limitations as to persons, subject matter, and time. CVS further objects to the request to the extent it seeks communications that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to the request to the extent it is unreasonably cumulative and duplicative of Request No. 1.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between it and purported agents of WTT (such as Mark LeBlanc) regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT; and (2) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.   *WTT's Position*

i.   **Boilerplate Objections Should be Overruled**

CVS's response starts with the proverbial kitchen sink of boilerplate objections: incorporating general objections, relevance, proportionality, overbroad, unduly burdensome, vague and ambiguous, equally available to Plaintiff, company documents somehow in the possession of former employees, confidentiality and withholding until protective order in place (protective order was entered on January 5, 2024 (*see* Dkt. 31)), attorney-client privilege, attorney work product, and other unidentified protection

and privileges (despite no privilege log), privacy, and cumulative. None of these objections have merit nor can CVS meet its burden of demonstrating that they do. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

- **▪ Incorporation of General Statement and Objections**

It is black-letter law that the incorporation of general statements or objections is entirely improper. "Where the responding party provides a boilerplate or generalized objection, the 'objections are inadequate and tantamount to not making any objection at all.'" *Herrera*, 2016 U.S. Dist. LEXIS 40474, at \*7; *Ritacca*, 203 F.R.D. at 335 n.4 ("As courts have repeatedly pointed out, blanket objections are patently improper, . . . [and] we treat [the] general objections as if they were never made."). Rather, "[t]he responding party must clarify, explain, and support its objections." *Herrera*, 2016 U.S. Dist. LEXIS 40474, \*7 (citing *Anderson*, 2012 U.S. Dist. LEXIS 131010, at \*8. "The grounds for objecting to a request must be stated . . . and as with other forms of discovery, it is well established that boilerplate objections do not suffice." *Id.* (discussing boilerplate objections asserted in response to requests for admission).

- **▪ Relevance**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things ***and the identity and location of persons who know of any discoverable matter***." Fed. R. Civ. P.26 (b)(1) (emphasis added). "The test of relevance in the discovery context is a very broad one." *Geophysical Systems Corp. v. Raytheon Co*., 117 F.R.D. 646, 647 (C.D. Cal. 1987). "Even after the 2015 amendments, courts continue to recognize that discovery relevance remains 'broad' in scope." *Guerrero v. Wharton*, 2017 U.S. Dist. LEXIS 225185, at \*4 (N.D. NV. Mar. 30, 2017) (citations omitted).

Here, any communications that CVS had with any person related to WTT would have necessarily been related to the parties' masks transactions at issue in this case. WTT was not a vendor to CVS prior to the start of the pandemic when it first began

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  selling the masks at issue to CVS.  CVS ceased purchasing any goods from WTT in
2  January 2022 as the pandemic came to an end.  Thus, any communications with any
3  persons related to WTT would be relevant to the claims, defenses, and issues in the
4  case.

5              ▪    Proportionality

6      CVS's proportionality objection lacks merit as CVS has already agreed to
7  conduct a keyword search across various custodians.  Those keyword searches include
8  WTT and World Tech Toys.  As a result, CVS is collecting, or has already incurred
9  the burden, of collecting documents responsive to this request.  Thus, the issue is
10  whether CVS's production of these communications is proportional to the needs of the
11  case "considering the importance of the issues at stake in the action, the amount in
12  controversy, the party's access to relevant information, the party's resources, the
13  importance of the discovery in resolving the issues, and whether the burden and
14  expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P.
15  26(b)(1).

16      This is a $12 million dispute based largely on disputed oral communications
17  between the parties.  What CVS may have communicated to others about WTT is likely
18  to reflect CVS's belief and understanding at the time of the disputed oral
19  communications and in fact, may even contain admissions by CVS.  As such, the
20  documents requested are important to the issues at stake.  The fact that $12 million is
21  also at stake supports a finding that the request is proportional.  As does CVS's
22  resources considering it is the largest retail pharmacy in the United States and a
23  publicly traded company with nearly $300 billion in annual revenues.  Considering
24  that CVS has already conducted a keyword search that should capture all responsive
25  documents, there is limited burden for CVS to produce all documents responsive to
26  this request.  As such, CVS's proportionality objection should be overruled.

27              ▪    Overbroad

28      CVS "must do more than state that the Requests at Issue are overbroad—they

23

must explain the nature and extent of the purported over overbreadth." *RG Abrams Insurance v. Law Offices of C.R. Abrams*, 2021 WL 10312432, at *7 (C.D. Cal. Nov. 5, 2021) (citing *Franklin v. Smalls*, 2012 WL 5077630, at *31 (S.D. Cal. Oct. 18, 2012) ("Merely stating that [a discovery request] is overbroad does not suffice to state a proper objection . . . . Instead, the objecting party must specify which part of the request is overbroad, and why."). Here, CVS failed to provide the required information to support its overbreadth objection.

■    Burdensome

"To succeed on an undue burden objection, the party resisting discovery has the burden of establishing that the request is unduly burdensome." *Id.* at *10 (citation omitted). "To satisfy this burden, Defendant[], as the resisting party, must provide sufficient detail regarding the time, money, and procedures required to produce the requested documents." *Id.* "This detail must come in the form of evidentiary declarations supporting such objections." *Id.* (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006)).

Here, CVS provides no such detail let alone any evidentiary declarations to support its burdensome objection. As such, it should be overruled.

■    Vague and Ambiguous

"Parties responding to discovery should use common sense and attribute ordinary definitions to terms in discovery requests." *Gold v. Kaplan*, 2021 U.S. Dist. LEXIS 252272, *7-8 (C.D. Cal. Dec. 2, 2021) (citing *Advanced Visual Image Design, LLC v. Exist, Inc.*, 2015 U.S. Dist. LEXIS 109140, at *6 (C.D. Cal. Aug. 18, 2015); *Cache La Poudre Fees, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 618-19 (D. Colo. 2007) (finding parties have an "obligation to construe . . . discovery requests in a reasonable manner"); *King-Hardy v. Bloomfield Bd. Of Educ.*, 2002 U.S. Dist. LEXIS 27384, at *5 (D. Conn. Dec. 8, 2002) (finding the responding party must give discovery requests a reasonable construction, rather than strain to find ambiguity); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) ("A party responding to discovery

24

requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized . . . ." (internal quotation marks omitted)).

There is nothing objectively vague or ambiguous about this request.  It asks for all communications about WTT.  CVS has already identified keywords to identify such documents.  This objection should be overruled.

▪ Equally Available

"Defendant's objection that documents are equally available to Plaintiff is meritless." *Diaz v. Heredia*, 2022 WL 2134967, at *3 (C.D. Cal. Mar. 4, 2022) (citing *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (finding objections that certain discovery requests seek information equally available to other party are insufficient to resist a discovery request)).

Moreover, this request seeks communications not only between CVS and WTT, but any person, including third parties such as former employees, independent contractors, independent sales representatives like Tim LaBlanc, and any other person – communications that WTT would not have access to whatsoever.

This objection should be overruled.

▪ Company Documents In the Possession of Former Employees

CVS remarkably suggests that it allows its former employees to maintain possession, custody, and control over CVS's corporate records.  Even if CVS was so reckless with its document security, which WTT doubts, this is not grounds for objection, but would simply be an explanation for what specific responsive documents are in possession of these rogue former employees, including the identity and last known contact information for each.

▪ Confidential/Commercially Sensitive Information

The parties executed and the Court entered a protective order in this case on January 5, 2024.  *See* Dkt. 31.  As a result, this objection, by CVS's own admission, is moot.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

■    <u>Attorney-Client Privilege, Work Product Doctrine, Other Privileges</u>

As discussed in detail above, CVS did not provide a privilege log at the time of its responses.  Nor did CVS provide a privilege log within 21-days after its document production as agreed.  It has now been nearly 5 months since the requests were issued.  As such, these objections are waived.  *See Burlington*, 408 F.3d at 1149 ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to support a privilege.").

■    <u>Privacy</u>

Both the Supreme Court and the Ninth Circuit have made clear that "corporations have no right to privacy."  *Fleck & Associates, Inc. v. City of Phoenix*, 471 F.3d 1100, 1104 (9th Cir. 2006) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).  As a result, CVS's objection based on privacy grounds is without merit.

Regardless, even if Plaintiff had a privacy right, the fact that the Court has issued a protective order combined with the relevance of the information warrants overruling this objection.  *See Alvarez v. Xpo Logistics Cartage, LLC*, 2020 U.S. Dist. LEXIS 139266, *6-7 (C.D. Cal. May 21, 2020) ("Defendants have demonstrated that the information sought is relevant to their defense and non-privileged, and Plaintiff's privacy rights are shielded by a protective order.  Thus the Court agrees that there is no violation of the right to privacy in requiring disclosure of the financial records in question in the context of this litigation."); *Buffington v. Nestlé Healthcare Nutrition, Inc.*, 2019 U.S. Dist. LEXIS 130971, at *17-18 (C.D. Cal. Apr. 18, 2019) (citations omitted).

■    <u>Cumulative</u>

CVS does not contend that any document request, including Request No. 2, is unduly cumulative with other discovery, such as interrogatories.  Instead, CVS's definition of cumulative is that all of the document requests are cumulative as to early document requests without providing any explanation or support.  Such general

26

objections are tantamount to not objecting at all. *Herrera*, 2016 U.S. Dist. LEXIS 40474, at *7 ("Where the responding party provides a boilerplate or generalized objection, the 'objections are inadequate and tantamount to not making any objection at all.'"); *see also Ritacca*, 203 F.R.D. at 335 n.4 ("As courts have repeatedly pointed out, blanket objections are patently improper, . . . [and] we treat [the] general objections as if they were never made."). Rather, "[t]he responding party must clarify, explain, and support its objections." *Herrera*, 2016 U.S. Dist. LEXIS 40474, *7 (citing *Anderson*, 2012 U.S. Dist. LEXIS 131010, at *8). "The grounds for objecting to a request must be stated . . . and as with other forms of discovery, it is well established that boilerplate objections do not suffice." *Id.* (discussing boilerplate objections asserted in response to requests for admission).

### ii.    Qualified Response Inadequate

Rule 34(b)(2)(B) provides that "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection." Pursuant to Rule 34(b)(2)(C), where, as here, an objection is made and the responding party does not agree to a complete production of all responsive documents, the "objection must state whether any responsive materials are being withheld **on the basis of that objection**. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C) (emphasis added). CVS failed to comply with Rule 34.

Rather than identifying which responsive materials are being withheld or which part of the request is being objected to and the basis of any specific objection(s) and then producing all other responsive documents, CVS instead states that it will produce certain categories of documents without (1) stating whether it is withholding specific documents and (2) based on which of the asserted objections. During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so,

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1   what category of documents were being withheld and on what grounds. McKown
2   Decl., ¶ 7, Ex. H. Instead, CVS took the position that WTT had to identify any
3   additional categories of documents responsive to this request that should be produced.
4   *Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other
5   categories of documents that should be produced in response to this request is
6   inconsistent with CVS's obligations under Rule 26 and 34.

7       Regardless, in light of the fact that none of the objections have merit, CVS
8   should be compelled to supplement this response and produce all documents
9   responsive to this request.

10              d.    *CVS's Position*

11      As an initial matter, the Court should deny WTT's motion as to this request
12   "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838,
13   at *1. The Court's Procedures "require[]" "[s]trict compliance with Local Rule 37,"
14   Judge's Procedures ¶ 1, which provides that WTT "must confer in a good-faith effort
15   to eliminate the necessity for hearing the motion or to eliminate as many of the disputes
16   as possible," L.R. 37-1, and "state how it proposed to resolve the dispute over [a
17   particular issue] at the conference of counsel." L.R. 37-2.1.

18      "The mere exchange of demand and refusal emails does not satisfy the 'meet
19   and confer' requirement of Local Rule 37-1." *Symettrica Entm't Ltd. v. UMG
20   Recordings, Inc.*, 2020 WL 13311683, at *6 (C.D. Cal. July 15, 2020). Rather, "[t]he
21   parties must *actually* meet and confer, either in person or telephonically," regarding
22   each request. *Id.* (emphasis in original) (quoting *Blackburn v. Walmart Inc.*, 2019 WL
23   7171558, at *1 (C.D. Cal. July 18, 2019)). WTT failed to do so for this request.

24      Instead of discussing the request specifically at the parties' conference of
25   counsel, WTT's counsel discussed, in the abstract, his general concern that CVS
26   responded to requests by stating what categories of information it would search for and
27   produce, but not those it was withholding. Light Decl. ¶ 4. In response, CVS's counsel
28   explained that CVS's responses comply with Rule 34 because they identify the

28

categories of documents it believes are relevant and proportional to the needs of the case that it has agreed to search for and produce. *Id.* CVS's counsel further explained that CVS does not believe additional categories of non-privileged, relevant documents that are proportional to the needs of the case exist. *Id.* Therefore, CVS's counsel urged WTT to review CVS's forthcoming document productions before seeking further documents. *Id.* That is the sum total of the parties' pre-filing conference that could possibly be construed as relating to this request. *Id.* At no point did the parties discuss this request or Request Nos. 3, 7–10, 12, 14–17, 23–26, 29–32, 41–44, and 47–59 specifically, as memorialized by CVS's counsel in an email following the conference. *Id.*; *see also* McKown Decl. Ex. H at 3 (WTT conceding through silence that the parties "did not discuss these requests individually"). Nor has WTT made any proposals to resolve its disputes over these requests as required by Local Rule 37 (such as by offering to reasonably narrow the scope of the requests). Light Decl. ¶ 5.

For these reasons alone, the Court should deny WTT's motion as to the request. *See Lehman Commercial Paper Inc. v. Fidelity Nat'l Title Ins. Co.*, 2013 WL 12114063, at *1 (C.D. Cal. July 25, 2013) (denying discovery motion where movant "fail[ed] to show what, if any, good-faith effort [it] made to comply with Local Rule 37-1 by, for example, offering to narrow the scope of each disputed request"); *Tapia v. Huntington Park Police Dep't*, 2010 WL 11549657, at *1, 3 (C.D. Cal. May 5, 2010) (denying discovery motion addressing approximately 60 document requests because "[t]he sheer volume of th[e] motion demonstrate[d] that no meaningful attempt at narrowing the issues was made," let alone "best efforts to resolve the … dispute without court intervention").

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White v. Moore*, 2022 WL 2189645, at *5 (C.D. Cal. Mar. 23, 2022) (emphasis added); *see also* Fed. R. Civ. P.

1  26(b)(1) & (2)(C)(iii); *Teradyne, Inc. v. Astronics Test Sys., Inc.*, 2022 WL 18397125,

2  at \*5–7 (C.D. Cal. Dec. 22, 2022) (denying discovery where movant failed to carry

3  initial burden to show relevance and proportionality); *Lavco*, 2021 WL 4771803, at \*8

4  (same); *Sepulveda v. City of Whittier*, 2022 WL 20804352, at \*5 (C.D. Cal. Feb. 16,

5  2022) (same).

6        As demonstrated above, *see* p. 6, this action is limited to three categories of

7  claims: (1) a written contract claim alleging that CVS wrongfully deducted a $1

8  million credit in October 2020 for face masks Sarah Currier previously ordered that

9  was supposedly conditioned on her alleged oral agreement or promise during a call in

10  October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract

11  claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August

12  2021 for certain masks previously ordered that was supposedly related to a request for

13  additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral

14  contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier

15  orally agreed or promised to buy various masks during calls in August, October, and

16  December 2020 and January 2021. TAC ¶¶ 87–197.

17        Thus, the key "communications" by CVS "related to WTT" *are those by or*

18  *copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above,

19  and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and

20  agreed or promised to buy "*all* the [masks] at issue," p. 62 below (emphasis added).

21  Nevertheless, CVS agreed to produce—and has already produced—broader categories

22  of communications.

23        Specifically, CVS agreed to produce "copies of the following for the period

24  from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to

25  April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not

26  privileged: (1) all communications between it and purported agents of WTT[3] (such as

27  _____

28  [3] CVS already agreed in response to Request No. 1 to produce "copies of all
communications between it and WTT from April 1, 2020 (the month when WTT

30

1   Mark LeBlanc) regarding WTT's actual or potential supply of face masks, actual or

2   potential face mask transactions with WTT, or any actual or potential discounts or

3   credits for face mask transactions with WTT; and (2) all internal communications by

4   those CVS employees primarily responsible for negotiating, authorizing, and placing

5   face mask purchase orders with WTT regarding WTT's actual or potential supply of

6   face masks, actual or potential face mask transactions with WTT, or any actual or

7   potential discounts or credits for face mask transactions with WTT." Critically, WTT

8   has not attempted to identify any communications beyond these categories that are

9   supposedly relevant and proportional to the needs of the case.

10      CVS already produced these communications as part of its initial production of

11  2,428 documents on January 5, 2024 comprising 5,113 pages of internal and external

12  emails and attachments and 579 native files (e.g., large excel spreadsheets) comprising

13  thousands of additional pages. Light Decl. ¶ 7. More precisely, CVS collected all

14  documents for the period of April 1, 2020 (the month WTT alleges its relationship with

15  CVS began) to September 30, 2022 (nine months after WTT alleges its relationship

16  with CVS ended, and weeks after CVS's in-house counsel took over the matter), within

17  the email accounts of Ms. Currier and the two individuals at CVS to whom she reported

18  that referenced any of the following terms: "World Tech Toys, Inc." and variations of

19  its name identified by WTT (i.e., "WTT," "WTTI," and "World Tech");

20  "Worldtechtoys" (the email domain name for WTT's employees); "LeBlanc" (the last

21  name of Mark LeBlanc, WTT's sales agent and a second "key witness" identified by

22  WTT), and his son and employee, Timothy LeBlanc); "mjlinfo" (the email domain

23  name for the LeBlancs); "Kouyoumjian" (the last name of WTT's CEO, Kevork

24  Kouyoumjian (the last "key witness" identified by WTT), and President, Vicken

25  Kouyoumjian); "William Finn" (WTT's CFO); "Tom Kulikowski" (WTT's former

26  CFO); "Paul Kelly" (another sales agent of WTT); and "pk-endeavors" (his email

27  _____

28  alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its
    initial complaint in this action)." McKown Decl. Ex. E at 3–4.

31

domain name). *Id.* ¶ 8. Because this search returned over 630,000 records, CVS's counsel worked with an e-discovery vendor to process the data (including standard filtering for documents unlikely to be responsive and global deduplication) to reduce the population to over 150,000 records, and to preform additional targeted searches across calendar entries and documents that hit the term "LeBlanc" (which had resulted in a high level of false positives) to further limit the data to a more reasonable population for attorney review. *Id.*

CVS has not knowingly withheld any non-privileged, relevant documents within this collection (and all claims of privilege have been logged). *Id.* ¶¶ 7–11 & Ex. 3. What's more, CVS shared all these search terms and connectors with WTT, and WTT has not raised any issues with the limitations of the collection and production. *Id.* ¶ 9. On the contrary, WTT concedes CVS's "keyword search … should capture all responsive documents," p. 23 above. This should end the matter.

To the extent WTT seeks "*[a]ll*" communications "related" in any way to WTT, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper v. BMW of N. Am., LLC*, 2018 WL 6016915, at *2 (C.D. Cal. May 21, 2018) (Rosenbluth, J.) (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). WTT alleges from April 2020 to October 28, 2020, CVS, through Ms. Currier, ordered millions of various types of face masks from WTT for direct delivery to thousands of retail stores nationwide via written Excel spreadsheets, *id.* ¶¶ 22–26, and then from November 2020 to January 2022, ordered millions more for delivery to CVS's various distribution centers nationwide via electronic orders. *Id.* ¶¶ 38–39, 57–60. Many (if not most) communications regarding these masks—such as regarding CVS's internal distribution, inventory, and retail sales of the masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the action" more or less probable. Fed. R. Evid. 401. Moreover, CVS bought other goods from WTT that are not at issue, such as various

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

toys and vaccine card holders. Communications regarding these transactions likewise are not relevant. Thus, WTT is plain wrong to argue that "any communications that CVS had with any person related to WTT would have necessarily been related to the parties' masks transactions at issue in this case," pp. 22–23 above.

Even if WTT could establish some marginal relevance of additional documents, "it is not enough that the information sought to be discovered is relevant; it must also be proportional to the needs of the case." *Fabritex, Inc. v. Target Corp.*, 2016 WL 11743231, at *2 (C.D. Cal. Dec. 9, 2016) (Rosenbluth, J.); *see also Carrico*, 2020 WL 7711838, at *1 (acknowledging the "elevated importance" of proportionality under amended Rule 26). "Here, most of the [Rule 26(b)(1) proportionality] factors tilt toward denying [WTT's] motion." *Koeper*, 2018 WL 6016915, at *1.

"The importance of the issue at stake" is "not great, other than to [WTT] [it]self." *Id.* "Although [CVS] … has somewhat greater access to the information sought than does [WTT] and is not without substantial resources, gathering it would nonetheless require it to undertake significant effort." *Id.* CVS has already incurred *over 280 attorney hours and over $180,000 in attorney fees responding to and collecting information for WTT's first sets of written discovery, including over 160 attorney hours and over $103,000 in attorney fees collecting, processing, and reviewing documents for production*. Light Decl. ¶ 14. This does not account for the significant time and fees CVS has incurred from its e-discovery vendor and contract reviewers (collectively over $25,000), or the considerable time spent by CVS's in-house counsel and employees collecting and providing information in response to the discovery. *Id.*

CVS should not be forced to incur the exponentially greater time and expense of searching through other employees' communications (CVS employees more than 300,000 people, *id.* ¶ 15) for communications that may somehow relate to WTT, when such employees were not directly involved in any of the alleged transactions at issue, and WTT concedes they are not "key witnesses," p. 3 above. Such a fishing expedition

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

for needles in a haystack based purely on WTT's speculation that there may be additional relevant documents would be cumulative of the discovery already conducted, as any information related to WTT would have first been communicated by Ms. Currier or extracted from other data that CVS has already produced or agreed to produce. *See* Light Decl. ¶¶ 7–10, 12–13; *Teradyne*, 2022 WL 18397125, at *6 (denying additional discovery that was a "fishing expedition" based on speculation).

Finally, "the importance of [additional documents] in resolving the issues [in this case] is virtually nil," *ILC Trademark*, 2019 WL 2998576, at *2, and substantially "outweighed by its burdens." *Koeper*, 2018 WL 6016915, at *1. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 because it does not "identify[] which responsive materials are being withheld or which part of the request is being objected to." The 2015 Amendment Committee Notes for Rule 34 are clear that "[t]he producing party does not need to provide a detailed description or log of all documents withheld." Fed. R. Civ. P. 34(b)(2)(C), Comm. Notes (2015 Am.). Rather, after stating objections, a response should simply "*state[] the limits that have controlled the search for responsive and relevant materials*." *Id.* (emphasis added). This "qualifies as a statement that the materials have been 'withheld'" and is sufficient to "facilitate an informed discussion of the objection[s]." *Id.* Because CVS did so, the response complies with Rule 34. *See Rivera v. Amazon Web Services, Inc.*, 2023 WL 6554304, at *1 (W.D. Wash. Sept. 27, 2023).

For all these reasons, the Court should deny WTT's motion as to this request.

    2.    <u>Request No. 3</u>

        a.    *<u>The Request</u>*

"All COMMUNICATIONS between YOU and Mark LeBlanc."

        b.    *<u>CVS's Response</u>*

CVS incorporations and reasserts its preliminary statement and objections to

34

specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome, and fails to describe with reasonable particularity the information sought, because it calls for all communications between CVS and Mr. LeBlanc without any limitations as to CVS employees, subject matter, and time, notwithstanding that CVS and Mr. LeBlanc had a broader relationship than the alleged face mask transactions at issue in WTT's TAC. CVS further objects to the request to the extent it seeks communications that are equally accessible to WTT because they are within its possession, custody, or control, especially since WTT's Third Amended Complaint in this action (the "TAC") alleges that Mr. LeBlanc is WTT's agent. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects that the request is unreasonably cumulative and duplicative of Request Nos. 1 and 2. CVS further objects to the request to the extent it seeks confidential and commercially sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of all communications between it and Mr. LeBlanc from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information

35

1    in response to this request.

2                        c.    *WTT's Position*

3         CVS regurgitates the same meritless objections as discussed in detail with

4    respect to Request No. 2 above.  For the same reasons, those objections lack merit

5    here.  Matt LeBlanc was the independent sales representative whose entire business is

6    based solely on assisting suppliers sell goods to CVS, including WTT.  The full extent

7    of Mr. LeBlanc's business dealings with, and his financial dependence on, CVS are

8    critically relevant not only to discovering the communications at the heart of this

9    disputed issues in this case, but also any bias that Mr. LeBlanc may have as a witness.

10   *See Cohen v. Trump*, 2015 WL 3966140, at *6 (S.D. Cal. June 30, 2015) (financial

11   records were discoverable in order to evaluate potential bias of witness) (citing *United

12   States v. Abel*, 469 U.S. 45, 52 (1984) (finding evidence related to bias "almost always

13   relevant")).  As such, none of the objections asserted by CVS should be sustained so

14   as to preclude WTT from discovering the nature and complete extent of Mr. LeBlanc's

15   business dealings and dependence on CVS for his livelihood.

16        Rather than identifying which responsive materials are being withheld or which

17   part of the request is being objected to and the basis of any specific objection(s) and

18   then producing all other responsive documents, CVS instead states that it will produce

19   certain categories of documents without (1) stating whether it is withholding specific

20   documents and (2) based on which of the asserted objections.  During the parties' meet

21   and confer, CVS refused to clarify whether documents were being withheld and, if so,

22   what category of documents were being withheld and on what grounds.  McKown

23   Decl., ¶ 7, Ex. H.  Instead, CVS took the position that WTT had to identify any

24   additional categories of documents responsive to this request that should be produced.

25   *Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other

26   categories of documents that should be produced in response to this request is

27   inconsistent with CVS's obligations under Rule 26 and 34.

28        Regardless, in light of the fact that none of the objections have merit as

36

1  discussed above, CVS should be compelled to supplement this response and produce

2  all documents responsive to this request.

3              d.    *CVS's Position*

4        As an initial matter, the Court should deny WTT's motion as to this request for

5  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

6  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

7        But even setting aside this procedural deficiency, CVS's objections (which are

8  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

9  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

10 this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645

11 (emphasis added), at *5; *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

12       As shown above, *see* p. 6, this action is limited to three categories of claims:

13 (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

14 in October 2020 for face masks Sarah Currier previously ordered that was supposedly

15 conditioned on her alleged oral agreement or promise during a call in October 2020 to

16 buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

17 CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

18 previously ordered that was supposedly related to a request for additional funding by

19 Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

20 alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

21 promised to buy various masks during calls in August, October, and December 2020

22 and January 2021. TAC ¶¶ 87–197.

23       Thus, the key "COMMUNICATIONS between [CVS] and Mark LeBlanc" *are*

24 *those* by or copying Ms. Currier—the *sole* "key witness" that acted on behalf of CVS,

25 p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the

26 transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 below

27 (emphasis added). Nevertheless, CVS agreed to produce far broader categories of

28 communications.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

Specifically, CVS agreed to produce "copies of all communications between it and Mr. LeBlanc from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT." As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these communications, including all communications by or copying Ms. Currier and her two superiors, and many communications by or copying other CVS employees. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production communications from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), and supplier support mailboxes with whom WTT may have communicated. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" communications with Mr. LeBlanc, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Not only does the request lack any limitations as to CVS employees, subject matter, and time, but WTT expressly admits Mr. LeBlanc assisted numerous "suppliers sell goods to CVS," p. 36 above. Those communications have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, and certainly are not "at the heart of this" case, as WTT argues, p. 36 above. While WTT speculates the documents may be relevant to showing "any bias that Mr. LeBlanc may have as a witness," p. 36 above, during the parties' conference of counsel, WTT's counsel admitted he had never even spoken with Mr. LeBlanc to have a reasonable basis to believe he may be biased. Light Decl. ¶ 6. Moreover, CVS has not made any payments

38

to Mr. LeBlanc. Light Decl. ¶ 17 & Ex. 5 at 9 (Supp. Resp. to Request No. 5). So, WTT's conjecture that Mr. LeBlanc is financially dependent on CVS lacks merit.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. For instance, evidence of any potential bias Mr. LeBlanc may have could far more easily be obtained by asking him targeted questions in deposition. *See Teradyne*, 2022 WL 18397125, at *7 (denying discovery motion where information sought "can likely be obtained in more convenient, less burdensome ways," such as "depositions" that "would likely be more efficient"); Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery otherwise allowed … if it determines that" "the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Indeed, targeted deposition questions were precisely the discovery at issue in *Cohen v. Trump*, 2015 WL 3966140, at *1–2 (S.D. Cal. June 30, 2015). Thus, WTT's reliance on that decision to support this document request is misplaced.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2. *See* p. 34 above.

For all these reasons, the Court should deny WTT's motion as to this request.

### 3. Request No. 5

#### a. *The Request*

"All DOCUMENTS evidencing payments YOU have made to Mark LeBlanc."

#### b. *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects that this request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. WTT's TAC does not allege that CVS made any payments to Mr. LeBlanc, and whether CVS made any such

39

payments has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is unduly burdensome and vague and ambiguous because it does not describe with reasonable particularity what "evidencing payments" means or provide any limitations as to the subject matter and time of such payments. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control, especially since the TAC alleges that Mr. LeBlanc is WTT's agent. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects that the request is unreasonably cumulative and duplicative of Request No. 3–4. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection.

Subject to and without waiving the foregoing objections, CVS responds that it has not made any payments to Mr. LeBlanc related to its transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

### c.    *WTT's Position*

After asserting the same boilerplate objections as discussed above, CVS engages in the same game of semantics, claiming that "CVS responds that it has not made any payments to Mr. LeBlanc related to its transactions with WTT." Notably, CVS does not claim that it has not made payments to Mr. LeBlanc nor does CVS claim that it has no responsive documents because no such documents have ever existed. Instead, CVS implies that it has responsive documents but "CVS will not produce further information in response to this request." CVS's relationship with Mr. LeBlanc is critical to understanding his experience with CVS, particularly Ms. Courier, who was

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

CVS's employee and buyer for the masks at issue, as well as any bias he may have given the volume of sales he participated with CVS.  The extent and frequency with which CVS made payments to Mr. LeBlanc are relevant to the issues in this case as well as to the credibility of the key witnesses in this case.

During the parties' meet and confer discussions, WTT inquired into whether CVS even made any payments to Mr. LeBlanc based on CVS's contention that independent sales reps like Mr. LeBlanc are paid by the suppliers, not CVS.  McKown Decl., ¶ 7, Ex. G.  While CVS's counsel indicated a willingness to ask CVS whether it would search to make this determination, and despite two follow-ups on this issue by WTT on December 28, 2023 and January 5, 2024, CVS's counsel never informed WTT whether it ever made any payments to Mr. LeBlanc.  *Id.*, Ex. H.  CVS's silence can only be interpreted as a decision to stand on its objections and not provide any documents in response.

### d.   *CVS's Position*

WTT's motion as to this request is moot because CVS served a supplemental response on February 12, 2024 stating, "pursuant to WTT's proposal during the parties' December 27, 2023 conference of counsel to limit this request to the period from January 1, 2019 to January 31, 2022," that CVS "has not made any payments to Mr. LeBlanc between January 1, 2019 and January 31, 2022 and, therefore, no responsive documents exist." Light Decl. ¶ 17 & Ex. 5 at 9. Accordingly, the Court should deny WTT's motion as to this request.

### 4.   Request No. 7

### a.   *The Request*

"All internal DOCUMENTS, including internal COMMUNICATIONS and all ESI, related to WTT."

### b.   *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS

41

further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents/ESI somehow related to WTT or CVS's purchase of millions of face masks from WTT for thousands of stores. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity the types of documents at issue or what "related to WTT" means, or provide any limitations as to subject matter and time. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all

communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT; (2) all purchase orders or agreements for face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request seeks CVS's internal communications regarding WTT. As discussed above, WTT was not a vendor of CVS until it started selling masks that are at issue in this case at the start of the pandemic. As such, this request seeks highly relevant documents. After asserting a slew of boilerplate objections, CVS indicated that it will produce certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced. *Id. Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other categories of documents that should be produced in

43

1    response to this request is inconsistent with CVS's obligations under Rule 26 and 34.

2         Regardless, in light of the fact that none of the objections have merit as

3    discussed above, CVS should be compelled to supplement this response and produce

4    all documents responsive to this request.

5                    d.    *CVS's Position*

6         As an initial matter, the Court should deny WTT's motion as to this request for

7    the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

8    [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

9         But even setting aside this procedural deficiency, CVS's objections (which are

10   *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

11   demonstrate that the requested discovery is *both* relevant to the claims or defenses in

12   this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

13   (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

14        As shown above, *see* p. 6, this action is limited to three categories of claims:

15   (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

16   in October 2020 for face masks Sarah Currier previously ordered that was supposedly

17   conditioned on her alleged oral agreement or promise during a call in October 2020 to

18   buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

19   CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

20   previously ordered that was supposedly related to a request for additional funding by

21   Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

22   alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

23   promised to buy various masks during calls in August, October, and December 2020

24   and January 2021. TAC ¶¶ 87–197.

25        Thus, the key internal communications by CVS "related to WTT" *are those by*

26   *or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3

27   above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions

28   and agreed or promised to buy "*all* the [masks] at issue," p. 62 below (emphasis

44

added). The other key documents are the purchase orders or agreements for the masks, credits, and discounts at issue, data showing the payments at issue, and data showing the discounts and credits at issue. Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT; (2) all purchase orders or agreements for face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, many of the purchase orders, and data showing many of the payments and all the discounts and credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT, all payments made to WTT, and all discounts and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "related" in any way to WTT, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) documents related to WTT—such as regarding CVS's internal distribution, inventory, and retail sales of WTT's masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request No. 2, *see* p. 32. Moreover, CVS bought other goods from WTT that are not at issue, such as various toys and vaccine card holders. Documents regarding these transactions likewise are not relevant.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

### 5. <u>Request No. 8</u>

#### a. <u>*The Request*</u>

"All DOCUMENTS that contain the term 'WTT' and any variant thereof, including 'WTTI', 'World Tech,' and 'World Tech Toys'."

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to WTT or CVS's purchase of millions of face masks from WTT for thousands of stores. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity the types of documents at issue, identify other variants of "WTT" beyond "WTTI," "World Tech," and "World Tech Toys," or provide any limitations as to subject matter and time. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4 and 6–7.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control,

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

CVS will produce copies of the following that contain the terms "WTT," "WTTI," "World Tech," or "World Tech Toys," for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding face masks, actual or potential face mask transactions, or any actual or potential discounts or credits for face masks; (2) all purchase orders or agreements for face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents.  CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced. *Id.*  CVS's attempt to shift the burden onto WTT to determine if there should be other categories of documents that should be produced in response

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    to this request is inconsistent with CVS's obligations under Rule 26 and 34.

2        Regardless, in light of the fact that none of the objections have merit as

3    discussed above, CVS should be compelled to supplement this response and produce

4    all documents responsive to this request.

5            d.    *CVS's Position*

6        As an initial matter, the Court should deny WTT's motion as to this request for

7    the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

8    [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

9        But even setting aside this procedural deficiency, CVS's objections (which are

10   *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

11   demonstrate that the requested discovery is *both* relevant to the claims or defenses in

12   this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

13   (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

14       As shown above, *see* p. 6, this action is limited to three categories of claims:

15   (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

16   in October 2020 for face masks Sarah Currier previously ordered that was supposedly

17   conditioned on her alleged oral agreement or promise during a call in October 2020 to

18   buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

19   CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

20   previously ordered that was supposedly related to a request for additional funding by

21   Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

22   alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

23   promised to buy various masks during calls in August, October, and December 2020

24   and January 2021. TAC ¶¶ 87–197.

25       Thus, the key communications that "contain the term 'WTT'" (and the variants

26   thereof listed in the request) *are those by or copying Ms. Currier*—the *sole* "key

27   witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who

28   WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the

                                              49

[masks] at issue," p. 62 below (emphasis added). The other key documents are the purchase orders or agreements for the masks, credits, and discounts at issue, data showing the payments at issue, and data showing the discounts and credits at issue. Nevertheless, CVS agreed to produce far broader categories of documents

Specifically, CVS agreed to produce "copies of the following that contain the terms "WTT," "WTTI," "World Tech," or "World Tech Toys," for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding face masks, actual or potential face mask transactions, or any actual or potential discounts or credits for face masks; (2) all purchase orders or agreements for face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, many of the purchase orders, and data showing many of the payments and all the discounts and credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for

50

1    production additional documents from other custodians, including individuals who

2    WTT has identified as potential deponents (even though they were not directly

3    involved in the alleged transactions), supplier support mailboxes with whom WTT

4    may have communicated, and data from various systems sufficient to show all face

5    mask purchase orders submitted to WTT, all payments made to WTT, and all discounts

6    and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

7        To the extent WTT seeks "*[a]ll*" documents that "contain the term 'WTT'" (and

8    the variants thereof listed in the request), such a "sweeping" and "hopelessly broad"

9    request does "not comply with Rule 34's 'reasonable particularity' requirement."

10   *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents'

11   'concerning or relating to' a variety of topics"). Many (if not most) documents related

12   to WTT—such as regarding CVS's internal distribution, inventory, and retail sales of

13   WTT's masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—

14   have no tendency to make any fact "of consequence in determining the action" more

15   or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for

16   Request No. 2, *see* p. 32. Moreover, CVS bought other goods from WTT that are not

17   at issue, such as various toys and vaccine card holders. Documents regarding these

18   transactions likewise are not relevant.

19       Even if WTT could establish some marginal relevance of the information, the

20   additional documents WTT seeks are not remotely proportional to the needs of the

21   case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.

22   WTT has not attempted to articulate how additional documents would be important to

23   resolving the action, or even what those additional documents may be.

24       WTT is further mistaken that CVS's response fails to comply with Rule 34 for

25   the same reasons as demonstrated above for Request No. 2, *see* p. 34.

26       For all these reasons, the Court should deny WTT's motion as to this request.

27   / / / /

28   / / / /

51

6.    Request No. 9

a.    *The Request*

All DOCUMENTS referencing Kevork Kouyoumjian and any abbreviation of his name, including "Kev".

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to WTT or CVS's purchase of millions of face masks from WTT for thousands of stores. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity the types of documents at issue, any abbreviation of Kevork Kouyoumjian's name beyond "Kev," which is not a reasonably limited term given there may be numerous other persons referred to as "Kev", or provide any limitations as to subject matter and time. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work

52

product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4 and 7–8.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following that that contain the name "Kevork Kouyoumjian" or "Kev Kouyoumjian," for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT; (2) all purchase orders or agreements for face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

Kevork Kouyoumjian is WTT's CEO and the person at WTT who engaged in the numerous discussions with CVS and Mr. LeBlanc regarding the masks at issue in this action.  Mr. Kouyoumjian is commonly referred to as "Kev."  This request asks "[a]ll DOCUMENTS referencing Kevork Kouyoumjian and any abbreviation of his name, including 'Kev'."  After asserting the same slew of boilerplate objections, CVS

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other categories of documents that should be produced in response to this request is inconsistent with CVS's obligations under Rule 26 and 34.

Regardless, in light of the fact that none of the objections have merit as discussed above, CVS should be compelled to supplement this response and produce all documents responsive to this request.

### d. *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

As shown above, *see* p. 6, this action is limited to three categories of claims: (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit in October 2020 for face masks Sarah Currier previously ordered that was supposedly conditioned on her alleged oral agreement or promise during a call in October 2020 to

1  buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that
2  CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks
3  previously ordered that was supposedly related to a request for additional funding by
4  Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the
5  alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or
6  promised to buy various masks during calls in August, October, and December 2020
7  and January 2021. TAC ¶¶ 87–197.

8       Thus, the key communications that referencing Kevork Kouyoumjian (or Kev)
9  *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of
10  CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the
11  transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 below
12  (emphasis added). The other key documents are the purchase orders or agreements for
13  the masks, credits, and discounts at issue, data showing the payments at issue, and data
14  showing the discounts and credits at issue. Nevertheless, CVS agreed to produce far
15  broader categories of documents.

16       Specifically, CVS agreed to produce "copies of the following that that contain
17  the name "Kevork Kouyoumjian" or "Kev Kouyoumjian," for the period from April
18  1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11,
19  2023 (the date WTT filed its initial complaint in this action) to the extent not
20  privileged: (1) all communications between CVS and WTT (including its purported
21  agents) regarding WTT's actual or potential supply of face masks, actual or potential
22  face mask transactions with WTT, or any actual or potential discounts or credits for
23  face mask transactions with WTT; (2) all purchase orders or agreements for face masks
24  between CVS and WTT; (3) documents sufficient to show all payments that CVS
25  made to WTT for such masks; (4) documents sufficient to show all discounts/credits
26  at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal
27  communications by those CVS employees primarily responsible for negotiating,
28  authorizing, and placing face mask purchase orders with WTT regarding WTT's actual

or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, many of the purchase orders, and data showing many of the payments and all the discounts and credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT, all payments made to WTT, and all discounts and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents referencing Kevork Kouyoumjian (or the widely-used nickname "Kev"), such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) such documents (especially in a company like CVS with more than 300,000 employees, Light Decl. ¶ 15) have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

### 7.  Request No. 10

#### a.  *The Request*

"All DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all agreements between YOU and WTT."

#### b.  *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to CVS's purchase of millions of face masks from WTT for thousands of stores. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity the types of documents at issue or what "evidencing" all agreements between CVS and WTT means, or provide any limitations as to subject matter and time. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially sensitive information. To the extent CVS agrees to produce any such confidential or

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4 and 7–9.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of non-privileged documents from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to show all agreements concerning the purchase or pricing of face masks between CVS and WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all agreements between YOU and WTT."  These documents go to the heart of the parties' dispute.  After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents.  CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

58

1   if there should be other categories of documents that should be produced in response

2   to this request is inconsistent with CVS's obligations under Rule 26 and 34.

3        Regardless, in light of the fact that none of the objections have merit as

4   discussed above, CVS should be compelled to supplement this response and produce

5   all documents responsive to this request.

6                          d.   *CVS's Position*

7        As an initial matter, the Court should deny WTT's motion as to this request for

8   the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

9   [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

10       But even setting aside this procedural deficiency, CVS's objections (which are

11  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

12  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

13  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

14  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

15       As shown above, *see* p. 6, this action is limited to three categories of claims:

16  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

17  in October 2020 for face masks Sarah Currier previously ordered that was supposedly

18  conditioned on her alleged oral agreement or promise during a call in October 2020 to

19  buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

20  CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

21  previously ordered that was supposedly related to a request for additional funding by

22  Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

23  alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

24  promised to buy various masks during calls in August, October, and December 2020

25  and January 2021. TAC ¶¶ 87–197.

26       Thus, the key communications evidencing agreements with WTT *are those by*

27  *or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3

28  above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

and agreed or promised to buy "*all* the [masks] at issue," p. 62 below (emphasis added). As demonstrated above, CVS has already agreed to produce these communications in response to previous requests. *See, e.g.*, Request Nos. 1–4 and 7–9. The other key documents are those sufficient to show all purchase orders or agreements for the masks, credits, and discounts at issue. That is exactly what CVS agreed to do.

Specifically, CVS agreed to produce "copies of non-privileged documents from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to show all agreements concerning the purchase or pricing of face masks between CVS and WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, many of the purchase orders, and data showing many of the payments and all the discounts and credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including data from various systems sufficient to show all face mask purchase orders submitted to WTT, all payments made to WTT, and all discounts and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "evidencing all agreements between [CVS] and WTT," such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) documents "evidencing" in some way an

1  agreement with WTT—such as regarding CVS's internal distribution, inventory, and

2  retail sales of WTT's masks at more than 9,000 stores and 20 distribution centers, Light

3  Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the

4  action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated

5  above for Request No. 2, *see* p. 32. Moreover, CVS bought other goods from WTT

6  that are not at issue, such as various toys and vaccine card holders. Documents

7  regarding these transactions likewise are not relevant.

8       Even if WTT could establish some marginal relevance of the information, the

9  additional documents WTT seeks are not remotely proportional to the needs of the

10  case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.

11  WTT has not attempted to articulate how additional documents would be important to

12  resolving the action, or even what those additional documents may be.

13       WTT is further mistaken that CVS's response fails to comply with Rule 34 for

14  the same reasons as demonstrated above for Request No. 2, *see* p. 34.

15       For all these reasons, the Court should deny WTT's motion as to this request.

16          8.   <u>Request No. 11</u>

17             a.   *<u>The Request</u>*

18       "DOCUMENTS sufficient to evidence Sarah Currier's phone records between

19  April 1, 2020 and December 31, 2020."

20             b.   *<u>CVS's Response</u>*

21       CVS incorporates and reasserts its preliminary statement and objections to

22  specific definitions set forth above as if fully stated in response to this request. CVS

23  further objects to this request to the extent it seeks information that is not relevant to

24  any party's claim or defense or not proportional to the needs of the case. For example,

25  the request is overbroad and unduly burdensome because it calls for documents related

26  to Ms. Currier's phone records with an untold number of people who have nothing to

27  do with any of WTT's claims for a nine-month period rather than specific calls

28  between Ms. Currier and WTT or specific dates on which WTT contends it had phone

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1   calls with Ms. Currier. Most of that information has no tendency to make any fact that

2   is of consequence in determining this action more or less probable than it would be

3   without the evidence. CVS further objects that the request is vague and ambiguous

4   because it does not describe with reasonable particularity what "evidenc[ing]" Ms.

5   Currier's phone records means, or what specific phone calls or information about such

6   phone calls is sought. CVS further objects to the request to the extent it seeks

7   information that is equally accessible to WTT because the information is within its

8   possession, custody, or control (e.g., information reflected in WTT's own phone

9   records for any calls with Ms. Currier). CVS further objects to the request to the extent

10  it calls for information solely within the possession, custody, or control of former

11  employees of CVS or witnesses over whom CVS has no lawful right of control (such

12  as records of calls made from a private phone). CVS further objects to the request to

13  the extent it seeks confidential and commercially-sensitive information. CVS further

14  objects to the request to the extent it seeks information protected by the attorney-client

15  privilege, the attorney work product doctrine, the right of privacy, or any other

16  applicable privilege or protection.

17      Based on the foregoing objections, CVS will not produce information in

18  response to this request.

19          c.    *WTT's Position*

20      This request asks for "DOCUMENTS sufficient to evidence Sarah Currier's

21  phone records between April 1, 2020 and December 31, 2020." CVS refused to

22  provide any responsive documents based on a slew of boilerplate and/or inapplicable

23  objections. For the reasons discussed above, the objections lack merit.

24      Regardless, in an effort to reach a resolution, WTT produced during the parties'

25  telephonic meet and confer that CVS produce Ms. Currier's (CVS's employee and

26  buyer for all of the goods at issue) to the extent they reflect phone calls or messages

27  between her and WTT and/or Mr. LeBlanc – phone numbers which WTT would

28  provide. *See* McKown Decl., ¶ 6. In response, CVS's counsel indicated that he would

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  speak with CVS to inquiry into whether they would search for and/or produce such
2  records based on the proposed limitation.  *Id.*  On December 28, 2023, WTT provided
3  four phone numbers to CVS's counsel.  *Id.*, ¶ 7, Exs. G-H.

4  Despite WTT's follow-up on January 5, 2024 regarding the status of CVS's
5  decision, CVS has not even indicated whether it would search for such records specific
6  to the four phone numbers provided let alone agreed to produce.  *Id.*, ¶ 7, Ex. H.  CVS's
7  silence can only be interpreted as a decision to stand on its objections.

8  Ms. Currier's phone records are directly relevant to corroborating WTT's
9  allegations that various discussions occurred resulting in the acquisition of the masks
10  for which CVS subsequently refused to pay.  CVS's objections should be overruled
11  and CVS should be compelled to produce the phone records as limited by WTT in its
12  December 28, 2023 proposal.

13  d.    *CVS's Position*

14  WTT's motion as to this request is premature. As CVS informed WTT, it was
15  waiting to hear from CVS's IT department whether the search WTT proposed is
16  reasonably feasible and would get back to WTT once CVS heard back. McKown Decl.
17  Ex. H at 3. Rather than follow up with CVS on the status of its investigation, WTT
18  filed this motion without notice.

19  CVS has not yet determined whether the search is reasonably feasible without
20  undue time and expense. Light Decl. ¶ 13. While CVS's IT department was ultimately
21  able to collect available files containing Sarah Currier's company-issued phone
22  records, it took time to locate and export the files to a CD and deliver the CD to CVS's
23  e-discovery vendor for processing. *Id.* CVS's e-discovery vendor received the data on
24  January 31, 2024. *Id.* Unfortunately, the files are not limited to Ms. Currier's phone
25  records, but contain numerous other employees' phone records too, and comprise *over*
26  *3.8 million pages* of data. *Id.* CVS is working with its e-discovery vendor to try to
27  isolate Ms. Currier's phone records and see if it can reasonably identify, without undue
28  time and expense, those associated with the telephone numbers provided by WTT. *Id.*

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

As far as CVS can tell, however, even if CVS's e-discovery vendor can isolate Ms. Currier's phone records associated with the numbers identified by WTT, the records would show no more than the time, date, telephone number, rate, usage type, origin, destination, and minutes of a call—but *not any information related to the substance of the call*. *Id.* Therefore, it is unclear how these records would be useful to this action. Accordingly, even if the records are marginally relevant, until CVS is able to determine the time and expense associated with the search WTT proposed, it is not clear if the proposed discovery is proportional to the needs of the case.

For these reasons, the Court should deny WTT's motion as to this request and allow the parties time to complete their meet and confer as to whether the search WTT proposed is reasonably feasible without undue time and expense.

        9.    <u>Request No. 12</u>

           a.    *<u>The Request</u>*

"All of YOUR accounting records related to WTT."

           b.    *<u>CVS's Response</u>*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome because it seeks all accounting records somehow related to WTT or CVS's purchase of millions of face masks from WTT for thousands of stores rather than the specific payments and discounts/credits for face masks at issue in WTT's TAC. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity the types of accounting records sought or what "related to WTT" means. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated

1    protective order governing the disclosure and use of confidential information in this

2    action. CVS further objects to the request to the extent it seeks information protected

3    by the attorney-client privilege, the attorney work product doctrine, the right of

4    privacy, or any other applicable privilege or protection. CVS further objects to this

5    request to the extent it is unreasonably cumulative and duplicative of Request Nos. 7–

6    10.

7         Subject to and without waiving the foregoing objections, after a diligent search

8    and reasonable inquiry of documents within CVS's possession, custody, or control,

9    CVS will produce copies of non-privileged documents sufficient to show all payments

10   that CVS made to WTT and all discounts/credits at issue in the TAC that CVS claimed

11   from WTT for face masks. Based on the foregoing objections, CVS will not produce

12   further information in response to this request.

13                        c.    *WTT's Position*

14        This request asks for "[a]ll of YOUR accounting records related to WTT."

15   These documents go to the heart of the parties' dispute, including various discounts

16   that CVS claims, how those discounts were applied across the tens of thousands of

17   invoices, and any shortfall in payments.  After asserting the same slew of boilerplate

18   objections, CVS indicated that it will produce at some unidentified time certain

19   documents responsive to this request while refusing to produce other responsive

20   documents.  CVS, however, failed to identify on which objection it is basing its refusal

21   to produce certain documents as requested by Rule 34(b)(2)(C) or which category of

22   documents are being withheld.

23        During the parties' meet and confer, CVS refused to clarify whether documents

24   were being withheld and, if so, what category of documents were being withheld and

25   on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

26   WTT had to identify any additional categories of documents responsive to this request

27   that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

28   if there should be other categories of documents that should be produced in response

65

1   to this request is inconsistent with CVS's obligations under Rule 26 and 34.

2        Regardless, in light of the fact that none of the objections have merit as

3   discussed above, CVS should be compelled to supplement this response and produce

4   all documents responsive to this request.

5              d.     *CVS's Position*

6        As an initial matter, the Court should deny WTT's motion as to this request for

7   the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

8   [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

9        But even setting aside this procedural deficiency, CVS's objections (which are

10   *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

11   demonstrate that the requested discovery is *both* relevant to the claims or defenses in

12   this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

13   (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

14        As shown above, *see* p. 6, this action is limited to three categories of claims:

15   (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

16   in October 2020 for face masks Sarah Currier previously ordered that was supposedly

17   conditioned on her alleged oral agreement or promise during a call in October 2020 to

18   buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

19   CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

20   previously ordered that was supposedly related to a request for additional funding by

21   Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

22   alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

23   promised to buy various masks during calls in August, October, and December 2020

24   and January 2021. TAC ¶¶ 87–197.

25        Thus, the key "accounting records related to WTT" are records sufficient to

26   show the disputed payments, discounts, and credits at issue. This is exactly what CVS

27   agreed to produce: "copies of non-privileged documents sufficient to show all

28   payments that CVS made to WTT and all discounts/credits at issue in the TAC that

CVS claimed from WTT for face masks." Critically, WTT has not attempted to identify any accounting records beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced many (if not most) of these documents, and it is collecting and reviewing the remaining document documents for production. Light Decl. ¶¶ 7–10, 12.

To the extent WTT seeks "*[a]ll*" "accounting records" "related" in any way to WTT, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) accounting records related to WTT—such as regarding CVS's internal distribution, inventory, and retail sales of WTT's masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request No. 2, *see* p. 32. Moreover, CVS bought other goods from WTT that are not at issue, such as various toys and vaccine card holders. Accounting records regarding these transactions likewise are not relevant.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

////

////

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

10. <u>Request No. 13</u>

a. *<u>The Request</u>*

"All DOCUMENTS evidencing, referencing, or discussing any difficulties YOU encountered sourcing 3-ply disposable face masks between January 1, 2020 and January 31, 2022."

b. *<u>CVS's Response</u>*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects that this request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Whether CVS had any difficulties sourcing any 3-ply disposable face masks between January 1, 2020 and January 31, 2022 has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is unduly burdensome and vague and ambiguous because it does not describe with reasonable particularity what "evidencing, referencing, or discussing any difficulties" means or what types of documents are sought for the two-year period at issue. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection.

Based on the foregoing objections, CVS will not produce information in response to this request.

c. *<u>WTT's Position</u>*

This request asks for "DOCUMENTS evidencing, referencing, or discussing any difficulties YOU encountered sourcing 3-ply disposable face masks between

68

January 1, 2020 and January 31, 2022." CVS refused to provide any responsive documents based on a slew of boilerplate and/or inapplicable objections. While the majority of the boilerplate objections simply regurgitate the same as the ones discussed above and thus, addressed in detail in regarding to Request No. 2, WTT does want to address some of the objections specific to this request.

First, CVS's objection that "[w]hether CVS had any difficulties sourcing any 3-ply disposable face masks between January 1, 2020 and January 31, 2022 has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence" is simply false. As alleged in the complaint, the pandemic forced businesses, including CVS, to scramble to find protective equipment, particularly face coverings. Because the pandemic interfered with traditional supply chains, Plaintiff alleges that CVS was desperate to find product anywhere in the market and was willing to ignore its standard protocols and procedures, including ordering large quantities of products from non-approved vendors. WTT further alleges that as time went on, the need for common blue 3-ply masks went down and there was a change in the type of face coverings desired by CVS, which impacted and changed the course of dealing between the parties and which underlie each of the claims in this case, including Ms. Currier's motives in promising to purchase the various masks at issue. Thus, the difficulties that CVS experienced and the changes in those difficulties over the course of pandemic have a direct relationship to the claims at issue, including CVS's motive in doing the things Plaintiff alleges, which CVS now denies. Such evidence is discoverable (and admissible). *See Cohen*, 2015 WL 3966140, at *5 (financial records were discoverable and relevant to the issue of motive).

During the parties' meet and confer, CVS argued that none of the documents responsive to the request was relevant to any claim and that, at best, it was a fishing expedition. The law is not in accord. As the Ninth Circuit has made clear, whether WTT's reliance on the promises it alleges were made by CVS through Ms. Currier was

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

reasonable depends on the totality of the circumstances at the time the promises were made:

> Federal courts applying California promissory estoppel law have identified another element that the promisee must prove: that the promisee's reliance have been reasonable under the circumstances. Thus, under the Ninth Circuit's application of California law, in order to establish a right to recovery based on promissory estoppel, "a promisee must show (1) the existence of a promise, (2) that the promisor reasonably should have expected to induce the promisee's reliance, (3) that the promisee actually induced such reliance, (4) that such reliance is reasonable, and (5) that injustice can be avoided only by enforcement of the promise."

*Trans-World Int'l v. Smith-Hemion Prods.*, 972 F.Supp.1275, 1284 (C.D. Cal. 1997) (quoting *Devoll v. Burdick Painting, Inc.*, 35 F.3d 408, 411 n.4 (9th Cir. 1994)).

Here, one of those critical circumstances at issue was the impact the pandemic had on CVS's ability to source the blue 3-ply masks as requested and how that difficult waned over the course of the pandemic which resulted in CVS promising to purchase other types of masks unique to CVS. Similarly, the inability of CVS to source masks and when is directly relevant to CVS's alleged willingness to commit to purchasing 10 million blue 3-ply masks in exchange for a discount. Thus, the documents requested go directly to WTT's promissory estoppel claims.

### d. *CVS's Position*

The Court should deny WTT's motion as to this request because CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

Contrary to WTT's unsupported assertion, the TAC does not allege CVS "was willing to ignore its standard protocols and procedures, including ordering large quantities of products from non-approved vendors," p. 69 above. Nor does the TAC

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  allege CVS decided to buy other types of masks due to difficulty sourcing 3-ply masks.

2  Thus, WTT is wrong that the requested documents "evidencing, referencing, or

3  discussing any difficulties [CVS] encountered sourcing 3-ply disposable face masks"

4  have a "direct relationship to the claims at issue," p. 69 above.

5        Even if WTT had made such allegations, however, the requested documents

6  would still have no tendency to make any fact "of consequence in determining the

7  action" more or less probable, Fed. R. Evid. 401. As shown above, *see* p. 6, this action

8  is limited to three categories of claims: (1) a written contract claim alleging that CVS

9  wrongfully deducted a $1 million credit in October 2020 for face masks Sarah Currier

10 previously ordered that was supposedly conditioned on her alleged oral agreement or

11 promise during a call in October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75;

12 (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in

13 discounts as of August 2021 for certain masks previously ordered that was supposedly

14 related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–

15 86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging

16 that Ms. Currier orally agreed or promised to buy various masks during calls in August,

17 October, and December 2020 and January 2021. TAC ¶¶ 87–197. Information related

18 to any difficulties CVS encountered sourcing 3-ply disposable face masks does not go

19 to any elements of these contract and promissory estoppel claims. *See Stockton*

20 *Mortgage, Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014) ("The elements of a breach

21 of oral contract claim are the same as those for a breach of written contract: a contract;

22 its performance or excuse for nonperformance; breach; and damages."); *Mend Health,*

23 *Inc. v. Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1056 (C.D. Cal. 2022) ("In

24 California, the elements of promissory estoppel are (1) a promise clear and

25 unambiguous in its terms; (2) reliance by the party to whom the promise is made;

26 (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting

27 the estoppel must be injured by his reliance."). Accordingly, the requested documents

28 are irrelevant to WTT's claims and CVS's defenses.

Although WTT argues "the difficulties that CVS experienced and the changes in those difficulties over the course of pandemic have a direct relationship to … CVS's motive in doing the things Plaintiff alleges," p. 69 above, this is *not a tort case* in which intent is an element and motive may come into play. Therefore, WTT's reliance on *Cohen*—a RICO case in which the defendant's motive for allegedly defrauding the plaintiff was directly relevant to proving the element of "intent to defraud," 2015 WL 3966140, at *4–5—is misplaced.

Nor is WTT correct that the requested documents go to "whether WTT's reliance on the promises it alleges were made by CVS through Ms. Currier was reasonable," pp. 69–70. Whether WTT's reliance was reasonable depends on the circumstances *known by WTT* "at the time the promises were made," p. 69 above, not documents that CVS *never disclosed to WTT*—and, thus, on which WTT could *not* have relied. Accordingly, WTT's citation to *Trans-World*—a decision that does not address the relevance of any discovery requests, let alone one similar to this request— is unavailing.

Even if WTT could establish some marginal relevance of the information, WTT's "sweeping" and "hopelessly broad" request for "*[a]ll*" documents "*evidencing, referencing, or discussing any* difficulties" CVS encountered sourcing *any* "3-ply disposable face masks" from *any* supplier over the two-year period "between January 1, 2020 and January 31, 2022" does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. CVS bought millions of masks during this two-year period from more than 15 suppliers in the Apparel Category alone, and millions more from additional suppliers in the First Aid Category. Felice-Dooley Decl. ¶ 2. If the Court were to allow WTT to expand document discovery to information about *other* masks from *other* suppliers that are *not at issue*, CVS would necessarily

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

incur exponentially greater time and expense than the ***more than 160 attorney hours and over \$103,000 in attorney fees, and over \$25,000 in e-discovery vendor and contract reviewer fees, CVS has already incurred collecting, processing, and reviewing documents for production related to WTT's goods alone***. Light Decl. ¶ 14.

The substantial burden and expense of such discovery would significantly outweigh any limited benefit even if WTT could establish some minimal relevance of the information (which it has not). Moreover, "the importance of the [document request] in resolving the issues [in this case] is virtually nil." *ILC Trademark*, 2019 WL 2998576, at *2 (denying discovery). To the extent WTT establishes any relevance of information regarding any difficulties CVS encountered sourcing 3-ply face masks, such information can be far more easily obtained by asking Ms. Currier (or a representative of CVS) targeted questions in deposition. *See Teradyne*, 2022 WL 18397125, at *7 (denying discovery motion where information sought "can likely be obtained in more convenient, less burdensome ways," such as "depositions" that "would likely be more efficient"); Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery otherwise allowed … if it determines that" "the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Indeed, targeted deposition questions were precisely the discovery at issue in *Cohen*—a further reason the decision is inapposite.

For all these reasons, the Court should deny WTT's motion as to this request.

> 11.  <u>Request No. 14</u>

> > a.  <u>*The Request*</u>

"All DOCUMENTS, including COMMUNICATIONS and ESI, relating to YOUR purchase of any 3-ply disposable face masks from WTT, including purchase orders, invoices, warehouse receipts, shipping documents, tracking data, credits, credit memo, discounts, and payments."

> > b.  <u>*CVS's Response*</u>

CVS incorporates and reasserts its preliminary statement and objections to

specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to CVS's purchase of millions of 3-ply disposable face masks from WTT for thousands of stores. Most of that information, including warehouse receipts, shipping documents, and tracking data, has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "relating to [CVS's] purchase of any 3-ply disposable face masks from WTT" means. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, and 12.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT

filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of 3-ply disposable face masks, actual or potential 3-ply disposable face mask transactions with WTT, or any actual or potential discounts or credits for 3-ply disposable face mask transactions with WTT; (2) all purchase orders or agreements for 3-ply disposable face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing 3-ply disposable face masks purchase orders with WTT regarding WTT's actual or potential supply of 3-ply disposable face masks, actual or potential 3-ply disposable face mask transactions with WTT, or any actual or potential discounts or credits for 3-ply disposable face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c. *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS and ESI, relating to [CVS's] purchase of any 3-ply disposable face masks from WTT, including purchase orders, invoices, warehouse receipts, shipping documents, tracking data, credits, credit memo, discounts, and payments."  In other words, it seeks documents that go to the heart of the parties' claims and defenses regarding one of the goods specifically at issue.  After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents.  CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    were being withheld and, if so, what category of documents were being withheld and

2    on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

3    WTT had to identify any additional categories of documents responsive to this request

4    that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

5    if there should be other categories of documents that should be produced in response

6    to this request is inconsistent with CVS's obligations under Rule 26 and 34.

7         Regardless, in light of the fact that none of the objections have merit as

8    discussed above, CVS should be compelled to supplement this response and produce

9    all documents responsive to this request.

10              d.    *CVS's Position*

11        As an initial matter, the Court should deny WTT's motion as to this request for

12   the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

13   [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

14        But even setting aside this procedural deficiency, CVS's objections (which are

15   *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

16   demonstrate that the requested discovery is *both* relevant to the claims or defenses in

17   this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

18   (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

19        As shown above, *see* p. 6, this action is limited to three categories of claims:

20   (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

21   in October 2020 for face masks Sarah Currier previously ordered that was supposedly

22   conditioned on her alleged oral agreement or promise during a call in October 2020 to

23   buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

24   CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

25   previously ordered that was supposedly related to a request for additional funding by

26   Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

27   alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

28   promised to buy various masks during calls in August, October, and December 2020

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  and January 2021. TAC ¶¶ 87–197.

2       Thus, the key communications "relating to [CVS's] purchase of" "3-ply
3  disposable face masks from WTT" *are those by or copying Ms. Currier*—the *sole* "key
4  witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who
5  WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the
6  [masks] at issue," p. 62 above (emphasis added). The other key documents are the
7  purchase orders or agreements for the masks, credits, and discounts at issue, data
8  showing the payments for the masks at issue, and data showing the discounts and
9  credits for the mask at issue. Nevertheless, CVS agreed to produce far broader
10 categories of documents.

11      Specifically, CVS agreed to produce "copies of the following for the period
12 from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to
13 April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not
14 privileged: (1) all communications between CVS and WTT (including its purported
15 agents) regarding WTT's actual or potential supply of 3-ply disposable face masks,
16 actual or potential 3-ply disposable face mask transactions with WTT, or any actual or
17 potential discounts or credits for 3-ply disposable face mask transactions with WTT;
18 (2) all purchase orders or agreements for 3-ply disposable face masks between CVS
19 and WTT; (3) documents sufficient to show all payments that CVS made to WTT for
20 such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC
21 that CVS claimed from WTT for such masks; and (5) all internal communications by
22 those CVS employees primarily responsible for negotiating, authorizing, and placing
23 3-ply disposable face masks purchase orders with WTT regarding WTT's actual or
24 potential supply of 3-ply disposable face masks, actual or potential 3-ply disposable
25 face mask transactions with WTT, or any actual or potential discounts or credits for 3-
26 ply disposable face mask transactions with WTT." Critically, WTT has not attempted
27 to identify any documents beyond these categories that are supposedly relevant and
28 proportional to the needs of the case.

1    As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority
2  of these documents, including all communications by or copying Ms. Currier and her
3  two superiors, many communications by or copying other CVS employees, many of
4  the purchase orders, and data showing many of the payments and all the discounts and
5  credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search
6  [underlying its initial production] should capture all responsive documents," p. 23
7  above. This should end the matter. Further, CVS is collecting and reviewing for
8  production additional documents from other custodians, including individuals who
9  WTT has identified as potential deponents (even though they were not directly
10 involved in the alleged transactions), supplier support mailboxes with whom WTT
11 may have communicated, and data from various systems sufficient to show all face
12 mask purchase orders submitted to WTT, all payments made to WTT, and all discounts
13 and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

14    To the extent WTT seeks "*[a]ll*" documents "relating" in any way to CVS's
15 "purchase of *any* 3-ply disposable face masks from WTT, including purchase orders,
16 invoices, warehouse receipts, shipping documents, tracking data, credits, credit memo,
17 discounts, and payments," such a "sweeping" and "hopelessly broad" request does
18 "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL
19 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating
20 to' a variety of topics"). Many (if not most) documents relating to CVS's purchase of
21 3-ply masks from WTT—such as "warehouse receipts, shipping documents, tracking
22 data," or regarding CVS's internal distribution, inventory, and retail sales of WTT's
23 masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—have
24 no tendency to make any fact "of consequence in determining the action" more or less
25 probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request
26 No. 2, *see* p. 32.

27    Even if WTT could establish some marginal relevance of the information, the
28 additional documents WTT seeks are not remotely proportional to the needs of the

78

case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.
WTT has not attempted to articulate how additional documents would be important to
resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for
the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

12.    Request No. 15

a.    *The Request*

"All DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all
requests YOU made of WTT to secure 3-ply face masks on YOUR behalf."

b.    *CVS's Responses*

CVS incorporates and reasserts its preliminary statement and objections to
specific definitions set forth above as if fully stated in response to this request. CVS
further objects to this request to the extent it seeks information that is not relevant to
any party's claim or defense or not proportional to the needs of the case. For example,
the request is overbroad and unduly burdensome to the extent it seeks all documents
somehow related to CVS's purchase of millions of 3-ply face masks from WTT for
thousands of stores. Most of that information has no tendency to make any fact that is
of consequence in determining this action more or less probable than it would be
without the evidence. CVS further objects that the request is vague and ambiguous
because it does not describe with reasonable particularity what "evidencing" all
requests CVS allegedly made of WTT to secure 3-ply face masks means. CVS further
objects to the request to the extent it seeks documents that are equally accessible to
WTT because they are within its possession, custody, or control. CVS further objects
to the request to the extent it calls for information solely within the possession,
custody, or control of former employees of CVS or witnesses over whom CVS has no
lawful right of control. CVS further objects to the request to the extent it seeks
confidential and commercially-sensitive information. To the extent CVS agrees to

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT; (2) all purchase orders or agreements for 3-ply face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing 3-ply face masks purchase orders with WTT regarding WTT's actual or potential supply of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all requests YOU made of WTT to secure 3-ply face masks on YOUR behalf." In other words, it seeks documents that go to the heart of the parties' claims and defenses regarding one of the goods specifically at issue. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to

80

1    produce other responsive documents.  CVS, however, failed to identify on which

2    objection it is basing its refusal to produce certain documents as requested by Rule

3    34(b)(2)(C) or which category of documents are being withheld.

4        During the parties' meet and confer, CVS refused to clarify whether documents

5    were being withheld and, if so, what category of documents were being withheld and

6    on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

7    WTT had to identify any additional categories of documents responsive to this request

8    that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

9    if there should be other categories of documents that should be produced in response

10   to this request is inconsistent with CVS's obligations under Rule 26 and 34.

11       Regardless, in light of the fact that none of the objections have merit as

12   discussed above, CVS should be compelled to supplement this response and produce

13   all documents responsive to this request.

14                    d.    *CVS's Position*

15       As an initial matter, the Court should deny WTT's motion as to this request for

16   the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

17   [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

18       But even setting aside this procedural deficiency, CVS's objections (which are

19   *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

20   demonstrate that the requested discovery is *both* relevant to the claims or defenses in

21   this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

22   (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

23       As shown above, *see* p. 6, this action is limited to three categories of claims:

24   (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

25   in October 2020 for face masks Sarah Currier previously ordered that was supposedly

26   conditioned on her alleged oral agreement or promise during a call in October 2020 to

27   buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

28   CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

previously ordered that was supposedly related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or promised to buy various masks during calls in August, October, and December 2020 and January 2021. TAC ¶¶ 87–197.

Thus, the key communications "evidencing" "requests [CVS] made of WTT to secure 3-ply disposable face masks" *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). The other key documents are the purchase orders or agreements for the 3-ply masks at issue. Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT; (2) all purchase orders or agreements for 3-ply face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing 3-ply face masks purchase orders with WTT regarding WTT's actual or potential supply of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and many

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "evidencing" in any way "*all* requests [CVS] made of WTT to secure 3-ply face masks," such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) documents evidencing CVS's requests to WTT to secure 3-ply face masks—such as warehouse receipts, shipping documents, tracking data, or regarding CVS's internal distribution, inventory, and retail sales of WTT's masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request No. 2, *see* p. 32.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

/ / / /

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

13.    <u>Request No. 16</u>

        a.    <u>*The Request*</u>

"All DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all requests YOU made of WTT to import 3-ply face masks on YOUR behalf."

        b.    <u>*CVS's Response*</u>

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to CVS's purchase of millions of 3-ply face masks from WTT for thousands of stores. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "evidencing" all requests CVS allegedly made of WTT to import 3-ply face masks means. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is

1   unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14.

2          Subject to and without waiving the foregoing objections, after a diligent search

3   and reasonable inquiry of documents within CVS's possession, custody, or control,

4   CVS will produce copies of the following for the period from April 1, 2020 (the month

5   when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT

6   filed its initial complaint in this action) to the extent not privileged: (1) all

7   communications between CVS and WTT (including its purported agents) regarding

8   WTT's importing of 3-ply face masks or actual or potential 3-ply face mask

9   transactions with WTT; (2) all purchase orders or agreements for 3-ply face masks

10  between CVS and WTT; and (3) all internal communications by those CVS employees

11  primarily responsible for negotiating, authorizing, and placing 3-ply face masks

12  purchase orders with WTT regarding WTT's importing of 3-ply face masks or actual

13  or potential 3-ply face mask transactions with WTT. Based on the foregoing

14  objections, CVS will not produce further information in response to this request.

15                         c.   *WTT's Position*

16         This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS

17  and ESI, evidencing all requests YOU made of WTT to import 3-ply face masks on

18  YOUR behalf."  In other words, it seeks documents that go to the heart of the parties'

19  claims and defenses regarding one of the goods specifically at issue.  After asserting

20  the same slew of boilerplate objections, CVS indicated that it will produce at some

21  unidentified time certain documents responsive to this request while refusing to

22  produce other responsive documents.  CVS, however, failed to identify on which

23  objection it is basing its refusal to produce certain documents as requested by Rule

24  34(b)(2)(C) or which category of documents are being withheld.

25         During the parties' meet and confer, CVS refused to clarify whether documents

26  were being withheld and, if so, what category of documents were being withheld and

27  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

28  WTT had to identify any additional categories of documents responsive to this request

85

1  that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine
2  if there should be other categories of documents that should be produced in response
3  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

4      Regardless, in light of the fact that none of the objections have merit as
5  discussed above, CVS should be compelled to supplement this response and produce
6  all documents responsive to this request.

7                  d.   *CVS's Position*

8      As an initial matter, the Court should deny WTT's motion as to this request for
9  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because
10  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

11      But even setting aside this procedural deficiency, CVS's objections (which are
12  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to
13  demonstrate that the requested discovery is *both* relevant to the claims or defenses in
14  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5
15  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

16      As shown above, *see* p. 6, this action is limited to three categories of claims:
17  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit
18  in October 2020 for face masks Sarah Currier previously ordered that was supposedly
19  conditioned on her alleged oral agreement or promise during a call in October 2020 to
20  buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that
21  CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks
22  previously ordered that was supposedly related to a request for additional funding by
23  Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the
24  alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or
25  promised to buy various masks during calls in August, October, and December 2020
26  and January 2021. TAC ¶¶ 87–197.

27      Thus, the key communications "evidencing" "requests [CVS] made of WTT to
28  import 3-ply disposable face masks" *are those by or copying Ms. Currier*—the *sole*

"key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue,*" p. 62 above (emphasis added). The other key documents are the purchase orders or agreements for the 3-ply masks at issue. Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's importing of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT; (2) all purchase orders or agreements for 3-ply face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing 3-ply face masks purchase orders with WTT regarding WTT's importing of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and many of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT. Light Decl. ¶ 12.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

To the extent WTT seeks "*[a]ll*" documents "evidencing" in any way"*all* requests [CVS] made of WTT to import 3-ply face masks," such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) documents evidencing CVS's requests to WTT to import 3-ply face masks—such as warehouse receipts, shipping documents, tracking data, or regarding CVS's internal distribution, inventory, and retail sales of WTT's masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request No. 2, *see* p. 32.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

14.    Request No. 17

a.    *The Request*

"All DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all requests YOU made of WTT to store 3-ply face masks on YOUR behalf."

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example,

88

the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to CVS's purchase of millions of 3-ply face masks from WTT for thousands of stores. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "evidencing" all requests CVS allegedly made of WTT to store 3-ply face masks means. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's storing of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT; (2) all purchase orders or agreements for 3-ply face masks between CVS

1  and WTT; and (3) all internal communications by those CVS employees primarily

2  responsible for negotiating, authorizing, and placing 3-ply face masks purchase orders

3  with WTT regarding WTT's storing of 3-ply face masks or actual or potential 3-ply

4  face mask transactions with WTT. Based on the foregoing objections, CVS will not

5  produce further information in response to this request.

6                          c.    *WTT's Position*

7        This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS

8  and ESI, evidencing all requests YOU made of WTT to store 3-ply face masks on

9  YOUR behalf." In other words, it seeks documents that go to the heart of the parties'

10 claims and defenses regarding one of the goods specifically at issue. After asserting

11 the same slew of boilerplate objections, CVS indicated that it will produce at some

12 unidentified time certain documents responsive to this request while refusing to

13 produce other responsive documents. CVS, however, failed to identify on which

14 objection it is basing its refusal to produce certain documents as requested by Rule

15 34(b)(2)(C) or which category of documents are being withheld.

16       During the parties' meet and confer, CVS refused to clarify whether documents

17 were being withheld and, if so, what category of documents were being withheld and

18 on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that

19 WTT had to identify any additional categories of documents responsive to this request

20 that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine

21 if there should be other categories of documents that should be produced in response

22 to this request is inconsistent with CVS's obligations under Rule 26 and 34.

23       Regardless, in light of the fact that none of the objections have merit as

24 discussed above, CVS should be compelled to supplement this response and produce

25 all documents responsive to this request.

26                          d.    *CVS's Position*

27       As an initial matter, the Court should deny WTT's motion as to this request for

28 the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

[WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at \*1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at \*5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

As shown above, *see* p. 6, this action is limited to three categories of claims: (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit in October 2020 for face masks Sarah Currier previously ordered that was supposedly conditioned on her alleged oral agreement or promise during a call in October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks previously ordered that was supposedly related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or promised to buy various masks during calls in August, October, and December 2020 and January 2021. TAC ¶¶ 87–197.

Thus, the key communications "evidencing" any "requests [CVS] made of WTT to store 3-ply disposable face masks" *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). The other key documents are the purchase orders or agreements for the 3-ply masks at issue. Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

agents) regarding WTT's storing of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT; (2) all purchase orders or agreements for 3-ply face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing 3-ply face masks purchase orders with WTT regarding WTT's storing of 3-ply face masks or actual or potential 3-ply face mask transactions with WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and many of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "evidencing" in any way "*all* requests [CVS] made of WTT to store 3-ply face masks," such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) such documents have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request No. 2, *see* p. 32.

Even if WTT could establish some marginal relevance of the information, the

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

15. <u>Request No. 18</u>

a. ***The Request***

"All DOCUMENTS related to YOUR purchase of 3-ply disposable face masks between January 1, 2020 and January 31, 2022 from any vendor other than WTT."

b. ***CVS's Response***

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects that this request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Information regarding CVS's transactions with other vendors of 3-ply disposable face masks between January 1, 2020 and January 31, 2022 has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is unduly burdensome and vague and ambiguous because it does not describe with reasonable particularity what "related to [CVS's] purchase of 3-ply disposable face masks" means or what types of documents are sought for the two-year period at issue. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product

93

1    doctrine, the right of privacy, or any other applicable privilege or protection.

2        Based on the foregoing objections, CVS will not produce information in

3    response to this request.

4                        c.    *WTT's Position*

5        This request asks for "[a]ll DOCUMENTS related to YOUR purchase of 3-ply

6    disposable face masks between January 1, 2020 and January 31, 2022 from any vendor

7    other than WTT."  After asserting a slew of boilerplate objections, CVS refused to

8    produce any responsive documents.  CVS's refusal lacks merit.

9        Most of the objections asserted are general and boilerplate and should be

10   overruled for the reasons discussed above in regards to Request No. 2.  With that said,

11   WTT addresses the relevance and proportionality objections here.  WTT alleges that

12   CVS requested that WTT source, import, and store 5 million specially manufactured

13   red 3-ply masks for which there was no demand or market.  CVS disputes this

14   contention, claiming that the red 3-ply masks were common in the market during the

15   pandemic and that they were not specially made at the behest of CVS.  WTT believes

16   that CVS's own records will confirm that it was not able to purchase red 3-ply masks

17   from any other source and that any requests it made to other vendors confirmed that

18   they were not regularly available in the market and that they would need to be specially

19   manufactured.  For this reason alone, these records are highly relevant as they go to

20   refuting one of the core defenses raised by CVS.  Thus, these records are directly

21   relevant under Cal. Comm. Code § 2201(3)(a) as they would tend to show that an

22   exception to the Statute of Frauds for the purchase of the 5 million red 3-ply masks.

23       While the parties dispute issues such as whether the goods were specially

24   manufactured, whether they were suitable in the market, and whether oral agreements

25   fall within the Statute of Fraud, CVS's belief that WTT's claims are without merit or

26   barred by the Statute of Frauds defense preclude WTT's discovery.  *See, e.g.*, *Celanese*

27   *Corp. v. Clariant Corp.*, 2016 WL 1074573, at *4-5 (N.D. Tex. Mar. 18, 2016)

28   (arguments that the plaintiff's claim fails as a matter of law are not properly addressed

in the context of a discovery subpoena; "The Court declines the invitation to, on motions to quash a subpoena, declare a pending claim to be meritless as a matter of law, no matter how plainly meritless the opposing party believes the claim to be"); *accord Williams v. Hargrove*, 2017 WL 11454716, at *1 (S.D. Miss. Apr. 12, 2017); *Third Pentacle, LLC v. Interactive Life Forms, LLC*, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012); *see generally* 8 Wright, Miller & Marcus, Federal Practice and Procedure § 2008, p. 137 (3d ed. 2010) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.").

The documents requested are also relevant not only as to the 5 million red 3-ply masks, but also as to the 10 million blue 3-ply masks at issue in this case. Specifically, documents related to CVS's purchase of other blue 3-ply masks via Sara Currier are relevant and proportional as they will tend to show whether Ms. Currier believed that she had ordered or otherwise promised to purchase the 10 million blue 3-ply masks from WTT as alleged in this case. If she ordered blue 3-ply masks from other vendors after the date she is alleged to have ordered such masks from WTT, then that would have a tendency to disprove WTT's claims. Conversely, if Ms. Currier did not order any additional blue 3-ply masks from any vendor other than WTT while other CVS buyers were purchasing such masks, then that would tend to show Ms. Currier's understanding that she had agreed to purchase or has promised to purchase blue 3-ply masks from WTT.

As such, WTT respectfully requests that the Court overruled CVS's objection and compel it to supplement its response and to produce all documents responsive to this request within its possession, custody, or control.

### d.   *CVS's Position*

The Court should deny WTT's motion as to this request because CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial* "burden to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*,

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) &

2    (2)(C)(iii).[4]

3    As shown above, *see* p. 6, this action is limited to three categories of claims:

4    (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

5    in October 2020 for face masks Sarah Currier previously ordered that was supposedly

6    conditioned on her alleged oral agreement or promise during a call in October 2020 to

7    buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

8    CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

9    previously ordered that was supposedly related to a request for additional funding by

10    Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

11    alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

12    promised to buy various masks during calls in August, October, and December 2020

13    and January 2021. TAC ¶¶ 87–197. Documents "related to [CVS's] purchase of 3-ply

14    disposable face masks" that are *not at issue* from vendors "*other than WTT*" have no

15    tendency to make any fact "of consequence in determining the action" more or less

16    probable. Fed. R. Evid. 401.

17    Contrary to WTT's unsupported assertion, the requested documents are not

18    relevant to showing "an exception to the Statute of Frauds" under California

19    Commercial Code section 2201(3)(a) for the "5 million red 3-ply masks" that WTT

20    alleges Ms. Currier orally agreed to purchase, p. 94 above. Not only does WTT lack

21    any authority for that proposition, but it is contrary to well-established authority

22    defining the scope and standard for proving this exception to the statute of frauds.

23    Section 2201(3)(a) provides an exception for goods that are "specially

24    manufactured for the buyer and are not suitable for sale to others in the ordinary course

25    of the seller's business." Cal. Com. Code § 2201(3)(a). "The term 'specially

26

27    ───────────────

28    [4] CVS has not argued that the request is improper because WTT's claims are without merit or barred by the statute of frauds. Therefore, WTT's whole digression and case cites on that issue miss the mark.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

manufactured'" "refers to *the nature of the particular goods in question*, and not whether the goods were made in an unusual, as opposed to the regular, business operation or manufacturing process of the seller." *Impossible Elecs. Techs., Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1037 (5th Cir. 1982). "The crucial inquiry is whether the manufacturer could sell the goods in the ordinary course of his business to someone other than the original buyer." *Id.* "If with slight alterations the goods could be so sold, then they are not specially manufactured; if, however, essential changes are necessary to render the goods marketable by the seller to others, then the exception does apply." *Id.* Thus, for the red 3-ply masks at issue, the exception to the statute of frauds turns on the *design* of those *particular* masks—*evidence that is already in WTT's possession as the supplier*. WTT cannot escape the fact that the masks were designed for *any member of the general public* and, thus, are "suitable for sale to others." The very fact that WTT alleges CVS bought the masks to offer them to the general public shows they are suitable for sale to others. *See* TAC ¶ 27.

It does not matter whether CVS was "able to purchase red 3-ply masks from any other source" or whether the masks were "regularly available in the market" such that WTT would need to have them "made at the behest of CVS," p. 94. *See Golden Eagle Milling Co. v. Old Homestead Bakery*, 59 Cal. App. 541, 542, 545–46 (1922) (barley flour was not specially manufactured for alleged buyer because it was suitable "for the general market" even though it was "not kept in stock" and "not yet manufactured" at time of alleged purchase agreement); *Delta Star, Inc. v. Michael's Carpet World*, 666 S.E.2d 331, 334 (Va. 2008) (flooring materials that were "available to all customers" "were suitable for sale to others" notwithstanding that alleged buyer "selected" and "ordered [them] directly" from seller because there was "no inventory"). Nor does it matter whether there was an established "demand or market" for the masks, because the focus is on the nature of the masks, not "market conditions" that are subject to change. *See Maderas Tropicales S. de R. L. de C. V. v. S. Crate & Veneer Co.*, 588 F.2d 971, 974 (5th Cir. 1979) ("[e]vidence of temporary market conditions"—even

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1   conditions that make sales to others "largely futile—"cannot affect" whether a good is

2   "suitable for sale to others"); *Golden Eagle*, 59 Cal. App. at 542, 545–46

3   ("intervene[ing]" market conditions that prevented seller from "readily dispos[ing] of

4   the flour to other customers" were irrelevant). Accordingly, WTT is wrong that

5   documents related to CVS's purchase of *other* 3-ply disposable face masks from *other*

6   vendors is relevant to whether the red 3-ply masks at issue fall within this limited

7   exception to the statute of frauds.

8          WTT is likewise mistaken that "documents related to CVS's purchase of other

9   blue 3-ply masks via Sara Currier" are relevant to whether she allegedly orally agreed

10  or promised to buy "10 million blue 3-ply masks from WTT," p. 95 above. WTT does

11  not explain why any purchases by CVS of *other* blue 3-ply masks from *other* suppliers

12  after Ms. Currier's alleged oral agreement or promise to buy 10-million blue 3-ply

13  masks from WTT "would have a tendency to disprove WTT's claims," *id.* Nor is WTT

14  correct that "if Ms. Currier did not order any additional blue 3-ply masks from any

15  vendor other than WTT while other CVS buyers were purchasing such masks, then

16  that would tend to show Ms. Currier's understanding that she had agreed to purchase

17  or has promised to purchase blue 3-ply masks from WTT," *id.* As WTT admits, Ms.

18  Currier was one of several "buyers responsible for acquiring masks within each CVS

19  store," and other buyers were responsible for masks in different sections, including the

20  pharmacy. TAC ¶ 20. Thus, any actions by other CVS buyers for other store sections

21  have no relation to whether Ms. Currier allegedly agreed or promised to buy the blue

22  3-ply masks at issue for her section. Whether Ms. Currier orally agreed or promised to

23  buy the masks turns on any *objective* manifestations of assent or clear and

24  unambiguous promises that she *communicated to WTT*, not any *undisclosed*

25  documents about CVS's face mask purchases from other vendors.

26         Even if WTT could establish some marginal relevance of the information,

27  WTT's "sweeping" and "hopelessly broad" request for "*[a]ll*" documents "*related* to"

28  *all* of CVS's purchases of *any* "3-ply disposable face masks" for the two-year period

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

"between January 1, 2020 and January 31, 2022 from *any* vendor other than WTT" does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. CVS bought millions of masks during this two-year period from more than 15 suppliers in the Apparel Category alone, and millions more from additional suppliers in the First Aid Category. Felice-Dooley Decl. ¶ 2. If the Court were to allow WTT to expand document discovery to information about *other* masks from *other* suppliers that are *not at issue*, CVS would necessarily incur exponentially greater time and expense than the ***more than 160 attorney hours and over $103,000 in attorney fees, and over $25,000 in e-discovery vendor and contract reviewer fees, CVS has already incurred collecting, processing, and reviewing documents for production related to WTT's goods alone***. Light Decl. ¶ 14.

The substantial burden and expense of such discovery would significantly outweigh any limited benefit even if WTT could establish some minimal relevance of the information (which it has not). Moreover, "the importance of the [document request] in resolving the issues [in this case] is virtually nil." *ILC Trademark*, 2019 WL 2998576, at *2 (denying discovery). To the extent WTT establishes any relevance of information regarding CVS's purchases of other 3-ply face masks from other suppliers, such information canfar more easily be obtained by asking Ms. Currier (or a representative of CVS) targeted questions in deposition. *See Teradyne*, 2022 WL 18397125, at *7 (denying discovery motion where information sought "can likely be obtained in more convenient, less burdensome ways," such as "depositions" that "would likely be more efficient"); Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery otherwise allowed … if it determines that" "the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive").

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    For all these reasons, the Court should deny WTT's motion as to this request.

2         16.    Request No. 19

3              a.    *The Request*

4    "All DOCUMENTS evidencing YOUR sales of blue 3-ply disposable face

5    masks between January 1, 2020 and January 31, 2022."

6              b.    *CVS's Response*

7    CVS incorporates and reasserts its preliminary statement and objections to

8    specific definitions set forth above as if fully stated in response to this request. CVS

9    further objects that this request seeks information that is neither relevant to any party's

10   claim or defense nor proportional to the needs of the case. Information regarding

11   CVS's sales of blue 3-ply disposable face masks between January 1, 2020 and January

12   31, 2022 has no tendency to make any fact that is of consequence in determining this

13   action more or less probable than it would be without the evidence. CVS further objects

14   that the request is unduly burdensome and vague and ambiguous because it does not

15   describe with reasonable particularity what "evidencing [CVS's] sales of blue 3-ply

16   disposable face masks" means or what types of documents are sought for the two-year

17   period at issue. CVS further objects to the request to the extent it calls for information

18   solely within the possession, custody, or control of former employees of CVS or

19   witnesses over whom CVS has no lawful right of control. CVS further objects to the

20   request to the extent it seeks confidential and commercially-sensitive information.

21   CVS further objects to the request to the extent it seeks information protected by the

22   attorney-client privilege, the attorney work product doctrine, the right of privacy, or

23   any other applicable privilege or protection.

24   Based on the foregoing objections, CVS will not produce information in

25   response to this request.

26              c.    *WTT's Position*

27   This request asks for "[a]ll DOCUMENTS evidencing YOUR sales of blue 3-

28   ply disposable face masks between January 1, 2020 and January 31, 2022."  After

100

asserting a slew of boilerplate objections, CVS refused to produce any responsive documents. CVS's refusal lacks merit.

Most of the objections asserted are general and boilerplate and should be overruled for the reasons discussed above in regards to Request No. 2. With that said, WTT addresses the relevance and proportionality objections here. Two of the key allegations in this case is breach and promissory estoppel, specifically, WTT's allegation that CVS breached the parties' agreement or otherwise breached its promise to purchase 10 million blue 3-ply masks by only purchasing a portion of those items. The request at issue seeks documents and information that can put that alleged breach in context. For example, WTT believes that the reason CVS renegued on its agreement to purchase all 10-million blue 3-ply masks was due to a dramatic drop in demand for that product across CVS's stores nationwide. WTT believe that the sales records requested will demonstrate this fact and provide context for the reason or motive for why CVS breached its promise as alleged.

In addition, the volume and revenue sales information are relevant to the issue of mitigation of losses. As the nation's largest pharmacy with nearly 10,000 retail locations nationwide, CVS's sales records for blue 3-ply masks are a barometer of the salability of these goods and the retail pricing nationwide and thus, are highly relevant in addressing arguments by CVS that it was possible to sell those goods after CVS's breached and at what amount WTT allegedly could have mitigated its losses by selling off blue 3-ply masks as argued by CVS. In other words, CVS's sales records, including its pricing for the blue 3-ply masks over the course of the pandemic, are highly instructive as to the reasonable value of the goods and whether WTT's inability to sell the goods was reasonable under the circumstances. Indeed, CVS has taken the position that WTT must produce evidence of its sale of blue 3-ply masks for the exact same reason.

Despite the relevance and proportionality of the original request, WTT offered during the parties meet and confer process to limit substantially this request to CVS's

1    production of aggregate monthly sales records by volume and revenue for the blue 3-

2    ply between January 1, 2020 and January 31, 2022.  Despite demanding the same

3    information from WTT, CVS rejected this proposal.

d.    *CVS's Position*

5    The Court should deny WTT's motion as to this request because CVS's

6    objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its*

7    *initial "burden* to demonstrate that the requested discovery is *both* relevant to the

8    claims or defenses in this action *and* proportional to the needs of the case." *White*,

9    2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) &

10   (2)(C)(iii).

11   Contrary to WTT's unsupported assertion, the "reason or motive" why CVS

12   supposedly breached its alleged oral agreement or promise to buy face masks from

13   WTT, p. 100–01, above, is irrelevant to WTT's contract and promissory estoppel

14   claims for the same reasons as demonstrated above for Request No. 13, *see* pp. 70–71.

15   Again, this is *not a tort case* in which intent is an element and motive may come into

16   play. *See Stockton Mortgage*, 233 Cal. App. 4th at 453 ("The elements of a breach of

17   oral contract claim are the same as those for a breach of written contract: a contract;

18   its performance or excuse for nonperformance; breach; and damages."); *Mend Health*,

19   588 F. Supp. 3d at 1056 (C.D. Cal. 2022) ("In California, the elements of promissory

20   estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party

21   to whom the promise is made; (3) the reliance must be both reasonable and foreseeable;

22   and (4) the party asserting the estoppel must be injured by his reliance."). Therefore,

23   even if the requested documents would show a drop in retail demand for WTT's masks

24   by individual consumers at CVS's stores (as WTT speculates, *see* p. 100–01 above),

25   such information would still not go to any elements of WTT's contract or promissory

26   estoppel claims and, thus, would not make any fact "of consequence in determining

27   the action" more or less probable. Fed. R. Evid. 401.

28   Nor is WTT correct that the requested documents "are relevant to the issue of

102

mitigation of losses," pp. 101 above. "The doctrine of mitigation of damages holds that '*[a] plaintiff* who suffers damage as a result of either a breach of contract or a tort *has a duty to take reasonable steps to mitigate those damages* and will not be able to recover for any losses which could have been thus avoided." *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994) (quoting *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41 (1993)) (emphasis added). "A plaintiff cannot recover damages that would have been avoidable by *his or her ordinary care and reasonable exertions*." *Mayes v. Sturdy N. Sales, Inc.*, 91 Cal. App. 3d 69, 85 (1979) (emphasis added). Thus, the focus of mitigation is on *WTT's efforts to resell the specific blue 3-ply masks at issue to other retailers at wholesale*, not CVS's sales of various masks (including other blue 3-ply masks supplied by other vendors) at higher prices and in smaller quantities to individual consumers at resale. This is why CVS's discovery regarding WTT's efforts to resell the masks to other retailers at wholesale is proper.

WTT has no authority supporting its conclusory assertion that CVS's retail sales of various masks at higher prices and in smaller quantities to individual consumers at retail "are a barometer of the salability" of WTT's masks at issue to other retailers at wholesale, pp. 101 above. Nor does WTT's assertion make any sense. Regardless of any drop in CVS's retail sales of masks (as WTT speculates), other retailers with different (or no) face mask inventories serving different customers may have bought WTT's masks at wholesale prices had WTT used ordinary care and reasonable exertions to try to sell the masks. For this reason, the requested retail sales documents from CVS would not make any fact "of consequence in determining the action" more or less probable. Fed. R. Evid. 401.

Even if WTT could establish some marginal relevance of the information, WTT's "sweeping" and "hopelessly broad" request for "*[a]ll*" documents "*evidencing*" CVS's retail sales of *any* blue 3-ply disposable face mask (even different blue 3-ply disposable masks from different suppliers) over the two-year period "between January 1, 2020 and January 31, 2022" does "not comply with Rule 34's

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at \*2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. CVS bought millions of masks during this two-year period from more than 15 suppliers in the Apparel Category alone, and millions more from additional suppliers in the First Aid Category. Felice-Dooley Decl. ¶ 2. If the Court were to allow WTT to expand document discovery to information about *other* masks from *other* suppliers that are *not at issue*, CVS would necessarily incur exponentially greater time and expense than the ***more than 160 attorney hours and over $103,000 in attorney fees, and over $25,000 in e-discovery vendor and contract reviewer fees, CVS has already incurred collecting, processing, and reviewing documents for production related to WTT's goods alone***. Light Decl. ¶ 14. The substantial burden and expense of such discovery would significantly outweigh any limited benefit even if WTT could establish some minimal relevance of the information (which it has not).

WTT's proposal to limit the request to "aggregate monthly sales records by volume and revenue" is also unavailing. Not only are such records irrelevant and disproportionate for the reasons just shown, but "the importance of the [records] in resolving the issues [in this case] is virtually nil." *ILC Trademark*, 2019 WL 2998576, at \*2 (denying discovery). To the extent WTT establishes any relevance of CVS's retail sales data, such information can far more easily be obtained by asking Ms. Currier (or a representative of CVS) targeted questions in deposition, such as regarding why CVS stopped ordering face masks from WTT. *See Teradyne*, 2022 WL 18397125, at \*7 (denying discovery motion where information sought "can likely be obtained in more convenient, less burdensome ways," such as "depositions" that "would likely be more efficient"); Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery otherwise allowed … if it determines that" "the discovery sought … can be obtained from some other source that is more convenient, less burdensome,

1    or less expensive").

2         For all these reasons, the Court should deny WTT's motion as to this request.

3         17.    <u>Request No. 20</u>

4              a.    *The Request*

5    "All DOCUMENTS evidencing YOUR sales of red 3-ply disposable face masks

6    between January 1, 2020 and January 31, 2022."

7              b.    *CVS's Response*

8         CVS incorporates and reasserts its preliminary statement and objections to

9    specific definitions set forth above as if fully stated in response to this request. CVS

10    further objects that this request seeks information that is neither relevant to any party's

11    claim or defense nor proportional to the needs of the case. Information regarding

12    CVS's sales of red 3-ply disposable face masks between January 1, 2020 and January

13    31, 2022 has no tendency to make any fact that is of consequence in determining this

14    action more or less probable than it would be without the evidence. CVS further objects

15    that the request is unduly burdensome and vague and ambiguous because it does not

16    describe with reasonable particularity what "evidencing [CVS's] sales of red 3-ply

17    disposable face masks" means or what types of documents are sought for the two-year

18    period at issue. CVS further objects to the request to the extent it calls for information

19    solely within the possession, custody, or control of former employees of CVS or

20    witnesses over whom CVS has no lawful right of control. CVS further objects to the

21    request to the extent it seeks confidential and commercially-sensitive information.

22    CVS further objects to the request to the extent it seeks information protected by the

23    attorney-client privilege, the attorney work product doctrine, the right of privacy, or

24    any other applicable privilege or protection.

25         Based on the foregoing objections, CVS will not produce information in

26    response to this request

27              c.    *WTT's Position*

28         This request asks for "[a]ll DOCUMENTS evidencing YOUR sales of red 3-ply

105

1   disposable face masks between January 1, 2020 and January 31, 2022." After asserting

2   a slew of boilerplate objections, CVS refused to produce any responsive documents.

3   CVS's refusal lacks merit.

4        Most of the objections asserted are general and boilerplate and should be

5   overruled for the reasons discussed above in regards to Request No. 2. With that said,

6   WTT addresses the relevance and proportionality objections here. Before doing that,

7   however, WTT was surprised by CVS's refusal to produce responsive records to this

8   request as WTT understood that CVS did not intend to sell the red 3-ply masks, but

9   rather, intended to hand them out to staff and to the public at stores during the

10  pandemic during times of masks mandates. As a result, WTT anticipated that CVS's

11  response would be that there were no responsive documents to this request because it

12  never sold red 3-ply masks. CVS, however, did not make that contention, which

13  implies that CVS actually sold red 3-ply masks. That makes the requested information

14  even that much more compelling.

15       Two of the key allegations in this case is breach and promissory estoppel,

16  specifically, WTT's allegation that CVS breached the parties' agreement or otherwise

17  breached its promise to purchase 5 million red 3-ply masks by only purchasing a

18  portion of those items. The request at issue seeks documents and information that can

19  put that alleged breach in context. For example, if CVS was actually trying to sell red

20  3-ply masks, then WTT believes that the reason CVS renegued on its agreement to

21  purchase all 5-million red 3-ply masks was due there being no demand for that product

22  across CVS's stores nationwide. WTT believe that the sales records requested will

23  demonstrate this fact and provide context for the reason or motive for why CVS

24  breached its promise as alleged.

25       In addition, the volume and revenue sales information are relevant to the issue

26  of mitigation of losses. As the nation's largest pharmacy with nearly 10,000 retail

27  locations nationwide, CVS's sales records for red 3-ply masks are a barometer of the

28  salability of these goods and the retail pricing nationwide and thus, are highly relevant

106

in addressing arguments by CVS that it was possible to sell those goods after CVS's breached and at what amount WTT allegedly could have mitigated its losses by selling off red 3-ply masks as argued by CVS. In other words, CVS's sales records, including its pricing for the red 3-ply masks over the course of the pandemic, to the extent CVS sold them at all, are highly instructive as to the reasonable value of the goods and whether WTT's inability to sell the goods was reasonable under the circumstances.

Despite the relevance and proportionality of the original request, WTT offered during the parties meet and confer process to limit substantially this request to CVS's production of aggregate monthly sales records by volume and revenue for the red 3-ply between January 1, 2020 and January 31, 2022 to the extent there even were such sales. CVS rejected this proposal.

### d.   *CVS's Position*

The Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 19, *see* pp. 101–04, because CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

### 18.   Request No. 21

#### a.   *The Request*

"All DOCUMENTS evidencing YOUR sales of any 3-ply disposable face masks other than in the color blue or color red between January 1, 2020 and January 31, 2022."

#### b.   *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects that this request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Information regarding

107

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

CVS's sales of 3-ply disposable face masks between January 1, 2020 and January 31, 2022 has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is unduly burdensome and vague and ambiguous because it does not describe with reasonable particularity what "evidencing [CVS's] sales of any 3-ply disposable face masks" means or what types of documents are sought for the two-year period at issue. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection.

Based on the foregoing objections, CVS will not produce information in response to this request.

c.   <u>*WTT's Position*</u>

This request asks for "[a]ll DOCUMENTS evidencing YOUR sales of any 3-ply disposable face masks other than in the color blue or color red between January 1, 2020 and January 31, 2022."  After asserting a slew of boilerplate objections, CVS refused to produce any responsive documents.  CVS's refusal lacks merit.

Most of the objections asserted are general and boilerplate and should be overruled for the reasons discussed above in regards to Request No. 2.  With that said, WTT addresses the relevance and proportionality objections here.  Before doing that, however, WTT was surprised by CVS's refusal to produce responsive records to this request as WTT understood that CVS did not sell any multi-colored 3-ply masks after refusing to pay WTT for them.  As a result, WTT anticipated that CVS's response would be that there were no responsive documents to this request because it never sold multi-colored 3-ply masks.  CVS, however, did not make that contention, which

108

1  implies that CVS actually sold multi-colored 3-ply masks.  That makes the requested

2  information even that much more compelling.

3      Two of the key allegations in this case is breach and promissory estoppel,

4  specifically, WTT's allegation that CVS breached the parties' agreement or otherwise

5  breached its promise to purchase 5 million multi-colored 3-ply masks by not paying

6  WTT for any of them.  The request at issue seeks documents and information that can

7  put that alleged breach in context.  For example, if CVS was actually trying to sell

8  multi-colored 3-ply masks, then WTT believes that the reason CVS renegued on its

9  agreement to purchase all 5-million multi-colored 3-ply masks was due there being no

10  demand for that product across CVS's stores nationwide.  WTT believe that the sales

11  records requested will demonstrate this fact and provide context for the reason or

12  motive for why CVS breached its promise as alleged.

13      In addition, the volume and revenue sales information are relevant to the issue

14  of mitigation of losses.  As the nation's largest pharmacy with nearly 10,000 retail

15  locations nationwide, CVS's sales records for multi-colored 3-ply masks are a

16  barometer of the salability of these goods and the retail pricing nationwide and thus,

17  are highly relevant in addressing arguments by CVS that it was possible to sell those

18  goods after CVS's breached and at what amount WTT allegedly could have mitigated

19  its losses by selling off multi-colored 3-ply masks as argued by CVS.  In other words,

20  CVS's sales records, including its pricing for the multi-colored 3-ply masks over the

21  course of the pandemic, to the extent CVS sold them at all, are highly instructive as to

22  the reasonable value of the goods and whether WTT's inability to sell the goods was

23  reasonable under the circumstances.

24      Despite the relevance and proportionality of the original request, WTT offered

25  during the parties meet and confer process to limit substantially this request to CVS's

26  production of aggregate monthly sales records by volume and revenue for the multi-

27  colored 3-ply masks between January 1, 2020 and January 31, 2022 to the extent there

28  even were such sales.  CVS rejected this proposal.

1
d.  *CVS's Position*

2
    The Court should deny WTT's motion as to this request for the same reasons as

3
demonstrated above for Request No. 19, *see* pp. 101–04, because CVS's objections

4
(which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden*

5
to demonstrate that the requested discovery is *both* relevant to the claims or defenses

6
in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at

7
*5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

8
        19.  Request No. 23

9
            a.  *The Request*

10
    "All DOCUMENTS, including COMMUNICATIONS and ESI, relating to

11
YOUR purchase of any cloth face masks from WTT, including purchase orders,

12
invoices, warehouse receipts, shipping documents, tracking data, credits, credit memo,

13
discounts, and payments."

14
            b.  *CVS's Response*

15
    CVS incorporates and reasserts its preliminary statement and objections to

16
specific definitions set forth above as if fully stated in response to this request. CVS

17
further objects to this request to the extent it seeks information that is not relevant to

18
any party's claim or defense or not proportional to the needs of the case. For example,

19
the request is overbroad and unduly burdensome to the extent it seeks all documents

20
somehow related to CVS's purchase of cloth face masks from WTT. Most of that

21
information, including warehouse receipts, shipping documents, and tracking data, has

22
no tendency to make any fact that is of consequence in determining this action more

23
or less probable than it would be without the evidence. CVS further objects that the

24
request is vague and ambiguous because it does not describe with reasonable

25
particularity what "relating to [CVS's] purchase of any cloth face masks from WTT"

26
means. CVS further objects to the request to the extent it seeks documents that are

27
equally accessible to WTT because they are within its possession, custody, or control.

28
CVS further objects to the request to the extent it calls for information solely within

110

the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, and 12.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of cloth face masks, actual or potential cloth face mask transactions with WTT, or any actual or potential discounts or credits for cloth face mask transactions with WTT; (2) all purchase orders or agreements for cloth face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing cloth face masks purchase orders with WTT regarding WTT's actual or potential supply of cloth face masks, actual or potential cloth face mask transactions with WTT, or any actual or potential discounts or credits for cloth face mask transactions with WTT. Based on the foregoing objections, CVS

111

1    will not produce further information in response to this request.

2               c.    *WTT's Position*

3       This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS

4 and ESI, relating to YOUR purchase of any cloth face masks from WTT, including

5 purchase orders, invoices, warehouse receipts, shipping documents, tracking data,

6 credits, credit memo, discounts, and payments."  In other words, it seeks documents

7 that go to the heart of the parties' claims and defenses regarding one of the goods

8 specifically at issue.  After asserting the same slew of boilerplate objections, CVS

9 indicated that it will produce at some unidentified time certain documents responsive

10 to this request while refusing to produce other responsive documents.  CVS, however,

11 failed to identify on which objection it is basing its refusal to produce certain

12 documents as requested by Rule 34(b)(2)(C) or which category of documents are being

13 withheld.

14       During the parties' meet and confer, CVS refused to clarify whether documents

15 were being withheld and, if so, what category of documents were being withheld and

16 on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

17 WTT had to identify any additional categories of documents responsive to this request

18 that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

19 if there should be other categories of documents that should be produced in response

20 to this request is inconsistent with CVS's obligations under Rule 26 and 34.

21       Regardless, in light of the fact that none of the objections have merit as

22 discussed above, CVS should be compelled to supplement this response and produce

23 all documents responsive to this request.

24               d.    *CVS's Position*

25       As an initial matter, the Court should deny WTT's motion as to this request for

26 the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

27 [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

28       But even setting aside this procedural deficiency, CVS's objections (which are

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

*not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

As shown above, *see* p. 6, this action is limited to three categories of claims: (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit in October 2020 for face masks Sarah Currier previously ordered that was supposedly conditioned on her alleged oral agreement or promise during a call in October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks previously ordered that was supposedly related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or promised to buy various masks during calls in August, October, and December 2020 and January 2021. TAC ¶¶ 87–197.

Thus, the key communications "relating to [CVS's] purchase of" "cloth face masks from WTT" *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). The other key documents are the purchase orders or agreements for the masks, credits, and discounts at issue, data showing the payments for the masks at issue, and data showing the discounts and credits for the mask at issue. Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of cloth face masks, actual or

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

potential cloth face mask transactions with WTT, or any actual or potential discounts or credits for cloth face mask transactions with WTT; (2) all purchase orders or agreements for cloth face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing cloth face masks purchase orders with WTT regarding WTT's actual or potential supply of cloth face masks, actual or potential cloth face mask transactions with WTT, or any actual or potential discounts or credits for cloth face mask transactions with WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, many of the purchase orders, and data showing many of the payments and all the discounts and credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT, all payments made to WTT, and all discounts and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "relating" in any way to CVS's "purchase of *any* cloth face masks from WTT" (including different cloth masks than the black cloth mask at issue), "including purchase orders, invoices, warehouse

114

receipts, shipping documents, tracking data, credits, credit memo, discounts, and payments," such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) documents relating CVS's purchase of cloth masks from WTT—such as "warehouse receipts, shipping documents, tracking data," or regarding CVS's internal distribution, inventory, and retail sales of WTT's masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request No. 2, *see* p. 32.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

20. Request No. 24

a. *The Request*

"All DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all requests YOU made of WTT to secure cloth face masks on YOUR behalf."

b. *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

somehow related to CVS's purchase of cloth face masks from WTT. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "evidencing" all requests CVS allegedly made of WTT to secure cloth face masks means. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 23.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of cloth face masks or actual or potential cloth face mask transactions with WTT; (2) all purchase orders or agreements for cloth face masks between CVS and WTT; and (3) all internal communications by those CVS

116

1  employees primarily responsible for negotiating, authorizing, and placing cloth face

2  masks purchase orders with WTT regarding WTT's actual or potential supply of cloth

3  face masks or actual or potential cloth face mask transactions with WTT. Based on the

4  foregoing objections, CVS will not produce further information in response to this

5  request.

6                          c.    _WTT's Position_

7       This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS

8  and ESI, evidencing all requests YOU made of WTT to secure cloth face masks on

9  YOUR behalf."  In other words, it seeks documents that go to the heart of the parties'

10  claims and defenses regarding one of the goods specifically at issue.  After asserting

11  the same slew of boilerplate objections, CVS indicated that it will produce at some

12  unidentified time certain documents responsive to this request while refusing to

13  produce other responsive documents.  CVS, however, failed to identify on which

14  objection it is basing its refusal to produce certain documents as requested by Rule

15  34(b)(2)(C) or which category of documents are being withheld.

16       During the parties' meet and confer, CVS refused to clarify whether documents

17  were being withheld and, if so, what category of documents were being withheld and

18  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

19  WTT had to identify any additional categories of documents responsive to this request

20  that should be produced.  _Id._ CVS's attempt to shift the burden onto WTT to determine

21  if there should be other categories of documents that should be produced in response

22  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

23       Regardless, in light of the fact that none of the objections have merit as

24  discussed above, CVS should be compelled to supplement this response and produce

25  all documents responsive to this request.

26                          d.    _CVS's Position_

27       As an initial matter, the Court should deny WTT's motion as to this request for

28  the same reasons as demonstrated above for Request No. 2, _see_ pp. 28–29, "because

1  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at \*1.

2  But even setting aside this procedural deficiency, CVS's objections (which are

3  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

4  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

5  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at \*5

6  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

7  As shown above, *see* p. 6, this action is limited to three categories of claims:

8  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

9  in October 2020 for face masks Sarah Currier previously ordered that was supposedly

10  conditioned on her alleged oral agreement or promise during a call in October 2020 to

11  buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

12  CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

13  previously ordered that was supposedly related to a request for additional funding by

14  Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

15  alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

16  promised to buy various masks during calls in August, October, and December 2020

17  and January 2021. TAC ¶¶ 87–197.

18  Thus, the key communications "evidencing" "requests [CVS] made of WTT to

19  secure cloth face masks" *are those by or copying Ms. Currier*—the *sole* "key witness"

20  that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT

21  alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks]

22  at issue," p. 62 above (emphasis added). The other key documents are the purchase

23  orders or agreements for the cloth masks at issue. Nevertheless, CVS agreed to produce

24  far broader categories of documents.

25  Specifically, CVS agreed to produce "copies of the following for the period

26  from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to

27  April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not

28  privileged: (1) all communications between CVS and WTT (including its purported

118

1   agents) regarding WTT's actual or potential supply of cloth face masks or actual or
2   potential cloth face mask transactions with WTT; (2) all purchase orders or agreements
3   for cloth face masks between CVS and WTT; and (3) all internal communications by
4   those CVS employees primarily responsible for negotiating, authorizing, and placing
5   cloth face masks purchase orders with WTT regarding WTT's actual or potential
6   supply of cloth face masks or actual or potential cloth face mask transactions with
7   WTT." Critically, WTT has not attempted to identify any documents beyond these
8   categories that are supposedly relevant and proportional to the needs of the case.

9       As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority
10  of these documents, including all communications by or copying Ms. Currier and her
11  two superiors, many communications by or copying other CVS employees, and many
12  of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword
13  search [underlying its initial production] should capture all responsive documents," p.
14  23 above. This should end the matter. Further, CVS is collecting and reviewing for
15  production additional documents from other custodians, including individuals who
16  WTT has identified as potential deponents (even though they were not directly
17  involved in the alleged transactions), supplier support mailboxes with whom WTT
18  may have communicated, and data from various systems sufficient to show all face
19  mask purchase orders submitted to WTT. Light Decl. ¶ 12.

20      To the extent WTT seeks "*[a]ll*" documents "evidencing" in any way "*all*
21  requests [CVS] made of WTT to secure cloth face masks" (including different cloth
22  masks than the black cloth mask at issue), such a "sweeping" and "hopelessly broad"
23  request does "not comply with Rule 34's 'reasonable particularity' requirement."
24  *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents'
25  'concerning or relating to' a variety of topics"). Many (if not most) documents
26  evidencing CVS's requests to WTT to secure cloth face masks—such as warehouse
27  receipts, shipping documents, tracking data, or regarding CVS's internal distribution,
28  inventory, and retail sales of WTT's masks at more than 9,000 stores and 20

distribution centers, Light Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request No. 2, *see* p. 32.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

21.    <u>Request No. 25</u>

a.    <u>*The Request*</u>

"All DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all requests YOU made of WTT to import cloth face masks on YOUR behalf."

b.    <u>*CVS's Response*</u>

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to CVS's purchase of cloth face masks from WTT. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "evidencing" all requests CVS allegedly made of WTT to import cloth face masks means. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its

120

possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 23–24.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's importing of cloth face masks or actual or potential cloth face mask transactions with WTT; (2) all purchase orders or agreements for cloth face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing cloth face masks purchase orders with WTT regarding WTT's importing of cloth face masks or actual or potential cloth face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.   *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all requests YOU made of WTT to import cloth face masks on

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

YOUR behalf." In other words, it seeks documents that go to the heart of the parties' claims and defenses regarding one of the goods specifically at issue. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other categories of documents that should be produced in response to this request is inconsistent with CVS's obligations under Rule 26 and 34.

Regardless, in light of the fact that none of the objections have merit as discussed above, CVS should be compelled to supplement this response and produce all documents responsive to this request.

### d.   *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

As shown above, *see* p. 6, this action is limited to three categories of claims: (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

in October 2020 for face masks Sarah Currier previously ordered that was supposedly conditioned on her alleged oral agreement or promise during a call in October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks previously ordered that was supposedly related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or promised to buy various masks during calls in August, October, and December 2020 and January 2021. TAC ¶¶ 87–197.

Thus, the key communications "evidencing" "requests [CVS] made of WTT to import cloth face masks" *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). The other key documents are the purchase orders or agreements for the cloth masks at issue. Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's importing of cloth face masks or actual or potential cloth face mask transactions with WTT; (2) all purchase orders or agreements for cloth face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing cloth face masks purchase orders with WTT regarding WTT's importing of cloth face masks or actual or potential cloth face mask transactions with WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

123

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and many of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "evidencing" in any way "*all* requests [CVS] made of WTT to import cloth face masks" (including different cloth masks than the black cloth mask at issue), such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) documents evidencing CVS's requests to WTT to import cloth face masks—such as warehouse receipts, shipping documents, tracking data, or regarding CVS's internal distribution, inventory, and retail sales of WTT's masks at more than 9,000 stores and 20 distribution centers, Light Decl. ¶ 15—have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for Request No. 2, *see* p. 32.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

22.    Request No. 26

a.    *The Request*

"All DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all requests YOU made of WTT to store cloth face masks on YOUR behalf."

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to CVS's purchase of cloth face masks from WTT. Most of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "evidencing" all requests CVS allegedly made of WTT to store cloth face masks means. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 23–25.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's storing of cloth face masks or actual or potential cloth face mask transactions with WTT; (2) all purchase orders or agreements for cloth face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing cloth face masks purchase orders with WTT regarding WTT's storing of cloth face masks or actual or potential cloth face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS and ESI, evidencing all requests YOU made of WTT to store cloth face masks on YOUR behalf." In other words, it seeks documents that go to the heart of the parties' claims and defenses regarding one of the goods specifically at issue. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents

126

1   were being withheld and, if so, what category of documents were being withheld and

2   on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

3   WTT had to identify any additional categories of documents responsive to this request

4   that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

5   if there should be other categories of documents that should be produced in response

6   to this request is inconsistent with CVS's obligations under Rule 26 and 34.

7        Regardless, in light of the fact that none of the objections have merit as

8   discussed above, CVS should be compelled to supplement this response and produce

9   all documents responsive to this request.

10                  d.    *CVS's Position*

11       As an initial matter, the Court should deny WTT's motion as to this request for

12  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

13  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

14       But even setting aside this procedural deficiency, CVS's objections (which are

15  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

16  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

17  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

18  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

19       As shown above, *see* p. 6, this action is limited to three categories of claims:

20  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

21  in October 2020 for face masks Sarah Currier previously ordered that was supposedly

22  conditioned on her alleged oral agreement or promise during a call in October 2020 to

23  buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

24  CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

25  previously ordered that was supposedly related to a request for additional funding by

26  Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

27  alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

28  promised to buy various masks during calls in August, October, and December 2020

127

1 and January 2021. TAC ¶¶ 87–197.

2        Thus, the key communications "evidencing" any "requests [CVS] made of WTT

3 to store cloth disposable face masks" *are those by or copying Ms. Currier*—the *sole*

4 "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS

5 who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all*

6 the [masks] at issue," p. 62 above (emphasis added). The other key documents are the

7 purchase orders or agreements for the cloth masks at issue. Nevertheless, CVS agreed

8 to produce far broader categories of documents.

9        Specifically, CVS agreed to produce "copies of the following for the period

10 from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to

11 April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not

12 privileged: (1) all communications between CVS and WTT (including its purported

13 agents) regarding WTT's storing of cloth face masks or actual or potential cloth face

14 mask transactions with WTT; (2) all purchase orders or agreements for cloth face

15 masks between CVS and WTT; and (3) all internal communications by those CVS

16 employees primarily responsible for negotiating, authorizing, and placing cloth face

17 masks purchase orders with WTT regarding WTT's storing of cloth face masks or

18 actual or potential cloth face mask transactions with WTT." Critically, WTT has not

19 attempted to identify any documents beyond these categories that are supposedly

20 relevant and proportional to the needs of the case.

21        As demonstrated above, pp. 31–32, CVS already produced the vast majority of

22 these documents, including all communications by or copying Ms. Currier and her two

23 superiors, many communications by or copying other CVS employees, and many of

24 the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search

25 [underlying its initial production] should capture all responsive documents," p. 23

26 above. This should end the matter. Further, CVS is collecting and reviewing for

27 production additional documents from other custodians, including individuals who

28 WTT has identified as potential deponents (even though they were not directly

1   involved in the alleged transactions), supplier support mailboxes with whom WTT

2   may have communicated, and data from various systems sufficient to show all face

3   mask purchase orders submitted to WTT. Light Decl. ¶ 12.

4       To the extent WTT seeks "*[a]ll*" documents "evidencing" in any way "*all

5   requests [CVS] made of WTT to store cloth face masks*" (including different cloth

6   masks than the black cloth mask at issue), such a "sweeping" and "hopelessly broad"

7   request does "not comply with Rule 34's 'reasonable particularity' requirement."

8   *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents'

9   'concerning or relating to' a variety of topics"). Many (if not most) such documents

10  have no tendency to make any fact "of consequence in determining the action" more

11  or less probable, Fed. R. Evid. 401, for the same reasons as demonstrated above for

12  Request No. 2, *see* p. 32.

13      Even if WTT could establish some marginal relevance of the information, the

14  additional documents WTT seeks are not remotely proportional to the needs of the

15  case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.

16  WTT has not attempted to articulate how additional documents would be important to

17  resolving the action, or even what those additional documents may be.

18      WTT is further mistaken that CVS's response fails to comply with Rule 34 for

19  the same reasons as demonstrated above for Request No. 2, *see* p. 34.

20      For all these reasons, the Court should deny WTT's motion as to this request.

21          23.   <u>Request No. 27</u>

22              a.   <u>*The Request*</u>

23      "All DOCUMENTS related to YOUR purchase of cloth face masks between

24  January 1, 2020 and January 31, 2022 from any vendor other than WTT."

25              b.   <u>*CVS's Response*</u>

26      CVS incorporates and reasserts its preliminary statement and objections to

27  specific definitions set forth above as if fully stated in response to this request. CVS

28  further objects that this request seeks information that is neither relevant to any party's

claim or defense nor proportional to the needs of the case. Information regarding CVS's transactions with other vendors of cloth face masks between January 1, 2020 and January 31, 2022 has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is unduly burdensome and vague and ambiguous because it does not describe with reasonable particularity what "related to [CVS's] purchase of cloth face masks" means or what types of documents are sought for the two-year period at issue. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection.

Based on the foregoing objections, CVS will not produce information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS related to YOUR purchase of cloth face masks between January 1, 2020 and January 31, 2022 from any vendor other than WTT." After asserting a slew of boilerplate objections, CVS refused to produce any responsive documents. CVS's refusal lacks merit.

Most of the objections asserted are general and boilerplate and should be overruled for the reasons discussed above in regards to Request No. 2. With that said, WTT addresses the relevance and proportionality objections here. WTT alleges that CVS requested that WTT source, import, and store approximately 1 million specially manufactured black cloth masks for which there was no demand or market. CVS disputes this contention, claiming that the black cloth masks were common in the market during the pandemic and that they were not specially made at the behest of

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

CVS. WTT believes that CVS's own records will confirm that it was not able to purchase black cloth masks from any other source and that any requests it made to other vendors confirmed that they were not regularly available in the market and that they would need to be specially manufactured. For this reason alone, these records are highly relevant as they go to refuting one of the core defenses raised by CVS. Thus, these records are directly relevant under Cal. Comm. Code § 2201(3)(a) as they would tend to show that an exception to the Statute of Frauds for the purchase of the 1 million black cloth masks.

While the parties dispute issues such as whether the goods were specially manufactured, whether they were suitable in the market, and whether oral agreements fall within the Statute of Fraud, CVS's belief that WTT's claims are without merit or barred by the Statute of Frauds defense preclude WTT's discovery. *See, e.g.*, *Celanese Corp. v. Clariant Corp.*, 2016 WL 1074573, at *4-5 (N.D. Tex. Mar. 18, 2016) (arguments that the plaintiff's claim fails as a matter of law are not properly addressed in the context of a discovery subpoena; "The Court declines the invitation to, on motions to quash a subpoena, declare a pending claim to be meritless as a matter of law, no matter how plainly meritless the opposing party believes the claim to be"); *accord Williams v. Hargrove*, 2017 WL 11454716, at *1 (S.D. Miss. Apr. 12, 2017); *Third Pentacle, LLC v. Interactive Life Forms, LLC*, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012); *see generally* 8 Wright, Miller & Marcus, Federal Practice and Procedure § 2008, p. 137 (3d ed. 2010) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.").

The documents requested are also relevant and proportional as they will tend to show whether Ms. Currier believed that she had ordered or otherwise promised to purchase the 1 million black cloth masks from WTT as alleged in this case. If she ordered 1 million black cloth masks from other vendors after the date she is alleged to have ordered such masks from WTT, then that would have a tendency to disprove WTT's claims. Conversely, if Ms. Currier did not order any additional black cloth

masks from any vendor other than WTT while other CVS buyers were purchasing such masks, then that would tend to show Ms. Currier's understanding that she had agreed to purchase or has promised to purchase 1 million black cloth masks from WTT.

As such, WTT respectfully requests that the Court overruled CVS's objection and compel it to supplement its response and to produce all documents responsive to this request within its possession, custody, or control.

### d. *CVS's Position*

The Court should deny WTT's motion as to this request because CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).[5]

As shown above, *see* p. 6, this action is limited to three categories of claims: (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit in October 2020 for face masks Sarah Currier previously ordered that was supposedly conditioned on her alleged oral agreement or promise during a call in October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks previously ordered that was supposedly related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or promised to buy various masks during calls in August, October, and December 2020 and January 2021. TAC ¶¶ 87–197. Documents "related to [CVS's] purchase of 3-ply disposable face masks" that are *not at issue* from vendors "*other than WTT*" have no

---

[5] CVS has not argued that the request is improper because WTT's claims are without merit or barred by the statute of frauds. Therefore, WTT's whole digression and case cites on that issue misses the mark.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

tendency to make any fact "of consequence in determining the action" more or less probable. Fed. R. Evid. 401.

Contrary to WTT's unsupported assertion, the requested documents are not relevant to showing "an exception to the Statute of Frauds" under California Commercial Code section 2201(3)(a) for the "approximately 1 million" black cloth masks that WTT alleges Ms. Currier orally agreed to purchase, p. 130 above, for the same reasons as demonstrated above for Request No. 18, *see* pp. 96–97.

WTT is likewise mistaken that the requested documents are relevant to whether Ms. Currier allegedly orally agreed or promised to buy the black cloth masks, p. 131 above, for the same reasons as demonstrated above for Request No. 18. *See* pp. 97–98 above. Whether Ms. Currier orally agreed or promised to buy the masks turns on any *objective* manifestations of assent or clear and unambiguous promises that she *communicated to WTT* during the alleged call in December 2020, not any *undisclosed* documents about CVS's face mask purchases from other vendors.

Even if WTT could establish some marginal relevance of information related to CVS's purchase of masks from other vendors, WTT's "sweeping" and "hopelessly broad" request for "*[a]ll*" documents "*related* to" *all* of CVS's purchases of *any* "cloth face masks" for the two-year period "between January 1, 2020 and January 31, 2022 from *any* vendor other than WTT" does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. CVS bought millions of masks during this two-year period from more than 15 suppliers in the Apparel Category alone, and millions more from additional suppliers in the First Aid Category. Felice-Dooley Decl. ¶ 2. If the Court were to allow WTT to expand document discovery to information about *other* masks from *other* suppliers that are *not at issue*, CVS would necessarily incur exponentially greater time and expense than the ***more than 160 attorney hours***

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

*and over $103,000 in attorney fees, and over $25,000 in e-discovery vendor and contract reviewer fees, CVS has already incurred collecting, processing, and reviewing documents for production related to WTT's goods alone*. Light Decl. ¶ 14.

The substantial burden and expense of such discovery would significantly outweigh any limited benefit even if WTT could establish some minimal relevance of the information (which it has not). Moreover, "the importance of the [document request] in resolving the issues [in this case] is virtually nil." *ILC Trademark*, 2019 WL 2998576, at *2 (denying discovery). To the extent WTT establishes any relevance of information regarding CVS's purchases of other cloth face masks from other suppliers, such information can far more easily be obtained by asking Ms. Currier (or a representative of CVS) targeted questions in deposition. *See Teradyne*, 2022 WL 18397125, at *7 (denying discovery motion where information sought "can likely be obtained in more convenient, less burdensome ways," such as "depositions" that "would likely be more efficient"); Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery otherwise allowed … if it determines that" "the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive").

For all these reasons, the Court should deny WTT's motion as to this request.

24.    Request No. 28

a.    *The Request*

"All DOCUMENTS evidencing YOUR sales of cloth face masks between January 1, 2020 and January 31, 2022."

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects that this request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Information regarding CVS's sales of cloth face masks between January 1, 2020 and January 31, 2022 has no

134

tendency to make any fact that is of consequence in determining this action more or
less probable than it would be without the evidence. CVS further objects that the
request is unduly burdensome and vague and ambiguous because it does not describe
with reasonable particularity what "evidencing [CVS's] sales of cloth face masks"
means or what types of documents are sought for the two-year period at issue. CVS
further objects to the request to the extent it calls for information solely within the
possession, custody, or control of former employees of CVS or witnesses over whom
CVS has no lawful right of control. CVS further objects to the request to the extent it
seeks confidential and commercially-sensitive information. CVS further objects to the
request to the extent it seeks information protected by the attorney-client privilege, the
attorney work product doctrine, the right of privacy, or any other applicable privilege
or protection.

Based on the foregoing objections, CVS will not produce information in
response to this request.

c.     *WTT's Position*

This request asks for "[a]ll DOCUMENTS related to YOUR sale of cloth face
masks between January 1, 2020 and January 31, 2022 from any vendor other than
WTT." After asserting a slew of boilerplate objections, CVS refused to produce any
responsive documents. CVS's refusal lacks merit.

Most of the objections asserted are general and boilerplate and should be
overruled for the reasons discussed above in regards to Request No. 2. With that said,
WTT addresses the relevance and proportionality objections here. Before doing that,
however, WTT was surprised by CVS's refusal to produce responsive records to this
request as WTT understood that CVS did not sell any black cloth masks after refusing
to pay WTT for any of them. As a result, WTT anticipated that CVS's response would
be that there were no responsive documents to this request because it never sold any
black cloth masks. CVS, however, did not make that contention, which implies that
CVS actually sold black cloth masks. That makes the requested information even that

135

1    much more compelling.

2          Two of the key allegations in this case is breach and promissory estoppel,

3    specifically, WTT's allegation that CVS breached the parties' agreement or otherwise

4    breached its promise to purchase 1 million black cloth masks by not paying WTT for

5    any of them.  The request at issue seeks documents and information that can put that

6    alleged breach in context.  For example, if CVS was actually trying to sell black cloth

7    masks, then WTT believes that the reason CVS renegued on its agreement to purchase

8    all 1 million black cloth masks was due there being no demand for that product across

9    CVS's stores nationwide.   WTT believe that the sales records requested will

10    demonstrate this fact and provide context for the reason or motive for why CVS

11    breached its promise as alleged.

12          In addition, the volume and revenue sales information are relevant to the issue

13    of mitigation of losses.  As the nation's largest pharmacy with nearly 10,000 retail

14    locations nationwide, CVS's sales records for black cloth masks are a barometer of the

15    salability of these goods and the retail pricing nationwide and thus, are highly relevant

16    in addressing arguments by CVS that it was possible to sell those goods after CVS's

17    breached and at what amount WTT allegedly could have mitigated its losses by selling

18    off black cloth masks as argued by CVS.   In other words, CVS's sales records,

19    including its pricing for the black cloth masks over the course of the pandemic, to the

20    extent CVS sold them at all, are highly instructive as to the reasonable value of the

21    goods and whether WTT's inability to sell the goods was reasonable under the

22    circumstances.

23          Despite the relevance and proportionality of the original request, WTT offered

24    during the parties meet and confer process to limit substantially this request to CVS's

25    production of aggregate monthly sales records by volume and revenue for black cloth

26    masks between January 1, 2020 and January 31, 2022 to the extent there even were

27    such sales.  CVS rejected this proposal.

28    / / / /

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

d.     *CVS's Position*

The Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 19, *see* pp. 101–04, because CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

25.     Request No. 29

a.     *The Request*

"DOCUMENTS sufficient to evidence Sarah Currier's authority to purchase goods on YOUR behalf."

b.     *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks documents related to Ms. Currier's authority to purchase goods other than the specific face masks set forth in any written purchase orders that she submitted to WTT. Such information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "evidence Sarah Currier's authority to purchase goods on [CVS's] behalf" means or the types of documents at issue, or provide any limitations as to subject matter and time. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of

137

1  CVS or witnesses over whom CVS has no lawful right of control. CVS further objects
2  to the request to the extent it seeks confidential and commercially-sensitive
3  information. To the extent CVS agrees to produce any such confidential or
4  commercially-sensitive information, it will do so only after the parties have agreed to
5  an appropriate stipulated protective order governing the disclosure and use of
6  confidential information in this action. CVS further objects to the request to the extent
7  it seeks information protected by the attorney-client privilege, the attorney work
8  product doctrine, the right of privacy, or any other applicable privilege or protection.
9  CVS further objects to this request to the extent it is unreasonably cumulative and
10  duplicative of Request Nos. 1–4, 7–10, 14–17, and 23–26.

11       Subject to and without waiving the foregoing objections, after a diligent search
12  and reasonable inquiry of documents within CVS's possession, custody, or control,
13  CVS will produce copies of the following for the period from April 1, 2020 (the month
14  when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT
15  filed its initial complaint in this action) to the extent not privileged: (1) all
16  communications between CVS and WTT (including its purported agents) regarding
17  WTT's actual or potential supply of face masks, actual or potential face mask
18  transactions with WTT, or any actual or potential discounts or credits for face mask
19  transactions with WTT; (2) all purchase orders or agreements for face masks between
20  CVS and WTT; (3) all internal communications by Sarah Currier and any person
21  primarily responsible for authorizing face mask purchase orders with WTT regarding
22  WTT's actual or potential supply of face masks, actual or potential face mask
23  transactions with WTT, or any actual or potential discounts or credits for face mask
24  transactions with WTT; and (4) any policy documents describing Sarah Currier's
25  authority to purchase goods from third-party vendors. Based on the foregoing
26  objections, CVS will not produce further information in response to this request.

27       c.   *WTT's Position*

28  This request asks for "[a]ll DOCUMENTS sufficient to evidence Sarah

138

Currier's authority to purchase goods on YOUR behalf." In other words, it seeks documents that go to the heart of the parties' claims and defenses regarding Ms. Currier's authority to bind CVS to the promises allegedly made while an employee and buyer for CVS. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other categories of documents that should be produced in response to this request is inconsistent with CVS's obligations under Rule 26 and 34.

Regardless, in light of the fact that none of the objections have merit as discussed above, CVS should be compelled to supplement this response and produce all documents responsive to this request.

### d.  *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

139

1    As shown above, *see* p. 6, this action is limited to three categories of claims:

2  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

3  in October 2020 for face masks Sarah Currier previously ordered that was supposedly

4  conditioned on her alleged oral agreement or promise during a call in October 2020 to

5  buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

6  CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

7  previously ordered that was supposedly related to a request for additional funding by

8  Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

9  alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

10  promised to buy various masks during calls in August, October, and December 2020

11  and January 2021. TAC ¶¶ 87–197.

12    Thus, the key communications "evidenc[ing] Sarah Currier's authority to

13  purchase" the alleged masks at issue *are those by or copying Ms. Currier*—the *sole*

14  "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS

15  who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all*

16  the [masks] at issue," p. 62 above (emphasis added). The other key documents are the

17  purchase orders or agreements for the masks at issue. Nevertheless, CVS agreed to

18  produce far broader categories of documents.

19    Specifically, CVS agreed to produce "copies of the following for the period

20  from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to

21  April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not

22  privileged: (1) all communications between CVS and WTT (including its purported

23  agents) regarding WTT's actual or potential supply of face masks, actual or potential

24  face mask transactions with WTT, or any actual or potential discounts or credits for

25  face mask transactions with WTT; (2) all purchase orders or agreements for face masks

26  between CVS and WTT; (3) all internal communications by Sarah Currier and any

27  person primarily responsible for authorizing face mask purchase orders with WTT

28  regarding WTT's actual or potential supply of face masks, actual or potential face

140

mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT; and (4) any policy documents describing Sarah Currier's authority to purchase goods from third-party vendors." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and many of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT. Light Decl. ¶ 12.

To the extent WTT seeks documents "evidenc[ing]" Ms. Currier's authority to purchase goods other than the specific face masks at issue or during periods other than the limited periods in 2020–2021 at issue, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Moreover, those documents are not relevant because they have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401.

Even if WTT could establish some marginal relevance of additional documents, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    resolving the action, or even what those additional documents may be.

2         WTT is further mistaken that CVS's response fails to comply with Rule 34 for

3    the same reasons as demonstrated above for Request No. 2, *see* p. 34.

4         For all these reasons, the Court should deny WTT's motion as to this request.

5         26.    Request No. 30

6              a.    *The Request*

7    "DOCUMENTS sufficient to evidence all PERSONS to whom Sarah Currier

8    reported between January 1, 2020 and January 31, 2022."

9              b.    *CVS's Response*

10        CVS incorporates and reasserts its preliminary statement and objections to

11   specific definitions set forth above as if fully stated in response to this request. CVS

12   further objects to this request to the extent it seeks information that is not relevant to

13   any party's claim or defense or not proportional to the needs of the case. For example,

14   the request is overbroad and unduly burdensome to the extent it seeks documents

15   related to persons to whom Ms. Currier reported that had nothing to do with any face

16   masks for which WTT was the supplier. Such information has no tendency to make

17   any fact that is of consequence in determining this action more or less probable than it

18   would be without the evidence. CVS further objects that the request is vague and

19   ambiguous because it does not describe with reasonable particularity what "evidence

20   all PERSONS to whom Sarah Currier reported" means or the types of documents at

21   issue. CVS further objects to the request to the extent it calls for information solely

22   within the possession, custody, or control of former employees of CVS or witnesses

23   over whom CVS has no lawful right of control. CVS further objects to the request to

24   the extent it seeks confidential and commercially-sensitive information. To the extent

25   CVS agrees to produce any such confidential or commercially-sensitive information,

26   it will do so only after the parties have agreed to an appropriate stipulated protective

27   order governing the disclosure and use of confidential information in this action. CVS

28   further objects to the request to the extent it seeks information protected by the

142

1    attorney-client privilege, the attorney work product doctrine, the right of privacy, or

2    any other applicable privilege or protection. CVS further objects that this request is

3    disproportionate to the needs of the case and unduly burdensome because the persons

4    to whom Sarah Currier reported can be more appropriately sought by interrogatory or

5    deposition.

6        Subject to and without waiving the foregoing objections, after a diligent search

7    and reasonable inquiry of documents within CVS's possession, custody, or control,

8    CVS will produce copies of non-privileged documents sufficient to identify, for the

9    period from April 1, 2020 (the month when WTT alleges its relationship with CVS

10   began) to January 31, 2022, the persons to whom Ms. Currier reported information

11   about face masks for which WTT was the supplier. Based on the foregoing objections,

12   CVS will not produce further information in response to this request.

13            c.    *WTT's Position*

14       This request asks for "DOCUMENTS sufficient to evidence all PERSONS to

15   whom Sarah Currier reported between January 1, 2020 and January 31, 2022." In

16   other words, it seeks documents that are critical in identifying potential witnesses,

17   particularly, those persons to whom Ms. Currier reported and to whom she likely

18   presented the goods for purchase approval and the discussions CVS had internally

19   regarding the purchase of each of the gloves at issue. After asserting the same slew of

20   boilerplate objections, CVS indicated that it will produce at some unidentified time

21   certain documents responsive to this request while refusing to produce other

22   responsive documents. CVS, however, failed to identify on which objection it is

23   basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or

24   which category of documents are being withheld.

25       During the parties' meet and confer, CVS refused to clarify whether documents

26   were being withheld and, if so, what category of documents were being withheld and

27   on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that

28   WTT had to identify any additional categories of documents responsive to this request

143

1  that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine

2  if there should be other categories of documents that should be produced in response

3  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

4      Regardless, in light of the fact that none of the objections have merit as

5  discussed above, CVS should be compelled to supplement this response and produce

6  all documents responsive to this request.

7                    d.    *CVS's Position*

8      As an initial matter, the Court should deny WTT's motion as to this request for

9  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

10 [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

11      But even setting aside this procedural deficiency, CVS's objections (which are

12 *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

13 demonstrate that the requested discovery is *both* relevant to the claims or defenses in

14 this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

15 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

16      As shown above, *see* p. 6, this action is limited to three categories of claims:

17 (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

18 in October 2020 for face masks Sarah Currier previously ordered that was supposedly

19 conditioned on her alleged oral agreement or promise during a call in October 2020 to

20 buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

21 CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

22 previously ordered that was supposedly related to a request for additional funding by

23 Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

24 alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

25 promised to buy various masks during calls in August, October, and December 2020

26 and January 2021. TAC ¶¶ 87–197.

27      Thus, the key documents "evidenc[ing] all PERSONS to whom Sarah Currier

28 reported" about the alleged transactions at issue *are those by or copying Ms. Currier—*

the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). This is exactly what CVS agreed to produce.

Specifically, CVS agreed to produce "copies of non-privileged documents sufficient to identify, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to January 31, 2022, the persons to whom Ms. Currier reported information about face masks for which WTT was the supplier." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced all these documents, including all communications by or copying Ms. Currier and her two superiors, Ms. Felice-Dooley and Ms. Smith. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter.

To the extent WTT seeks documents "evidenc[ing]" other persons to whom Ms. Currier reported about *other* goods than the specific face masks at issue or during periods other than the limited periods in 2020–2021 at issue, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Moreover, those documents are not relevant because they have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401.

Even if WTT could establish some marginal relevance of additional documents, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1       WTT is further mistaken that CVS's response fails to comply with Rule 34 for

2 the same reasons as demonstrated above for Request No. 2, *see* p. 34.

3       For all these reasons, the Court should deny WTT's motion as to this request.

4       27.    <u>Request No. 31</u>

5         a.    <u>*The Request*</u>

6    "All DOCUMENTS related to any artwork YOU created for face masks

7 between January 1, 2020 and January 31, 2022, including the following:



27         b.    <u>*CVS's Response*</u>

28    CVS incorporates and reasserts its preliminary statement and objections to

specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to "artwork CVS created for facemasks between January 1, 2020 and January 31, 2022," especially information that has nothing to do with any face masks for which WTT was the supplier. Such information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "related to any artwork [CVS] created for face masks" means or what types of documents are sought for the two-year period at issue. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to January 31, 2022 to the extent not

147

1 privileged: (1) any communications between CVS and WTT regarding any images for
2 packaging for face masks; and (2) any internal communications by those CVS
3 employees primarily responsible for negotiating, authorizing, and placing face masks
4 purchase orders with WTT regarding any images for packaging for face masks that
5 would potentially be supplied by WTT. Based on the foregoing objections, CVS will
6 not produce further information in response to this request.

c.  *WTT's Position*

8        During the parties' meet and confer, they were able to clarify that WTT created
9 the artwork with the input of CVS, including the packaging designs such that the
10 request seeks documents related to CVS's involvement in the creation and/or approval
11 of the artwork for masks, including the above.  Despite this clarification, stood on its
12 response and objections.  The same regurgitated objections as asserted to virtually
13 every request are boilerplate, lack the requisite explanation and support, and should be
14 overruled.

15        While CVS indicated in its responses that it will produce at some unidentified
16 time certain documents responsive to this request while refusing to produce other
17 responsive documents, CVS failed to identify on which objection it is basing its refusal
18 to produce certain documents as requested by Rule 34(b)(2)(C) or which category of
19 documents are being withheld.  During the parties' meet and confer, CVS refused to
20 clarify whether documents were being withheld and, if so, what category of documents
21 were being withheld and on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS
22 took the position that WTT had to identify any additional categories of documents
23 responsive to this request that should be produced.  *Id.* CVS's attempt to shift the
24 burden onto WTT to determine if there should be other categories of documents that
25 should be produced in response to this request is inconsistent with CVS's obligations
26 under Rule 26 and 34.

27        Regardless, in light of the fact that none of the objections have merit as
28 discussed above and in light of the clarification provided during the parties' meet and

148

1    confer discussions, CVS should be compelled to supplement this response and produce

2    all documents responsive to this request.

3                                    d.    *CVS's Position*

4        As an initial matter, the Court should deny WTT's motion as to this request for

5    the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

6    [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

7        But even setting aside this procedural deficiency, CVS's objections (which are

8    *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

9    demonstrate that the requested discovery is *both* relevant to the claims or defenses in

10   this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

11   (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

12       As shown above, *see* p. 6, this action is limited to three categories of claims:

13   (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

14   in October 2020 for face masks Sarah Currier previously ordered that was supposedly

15   conditioned on her alleged oral agreement or promise during a call in October 2020 to

16   buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

17   CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

18   previously ordered that was supposedly related to a request for additional funding by

19   Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

20   alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

21   promised to buy various masks during calls in August, October, and December 2020

22   and January 2021. TAC ¶¶ 87–197.

23       Thus, the key documents "related to" "any artwork" "for face masks" *are

24   communications by or copying Ms. Currier*—the *sole* "key witness" that acted on

25   behalf of CVS, p. 3 above, the *sole* individual at CVS who WTT alleges negotiated *all*

26   the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above

27   (emphasis added), and the *sole* individual at CVS who was "responsible for providing

28   … feedback or approval to WTT" for "the 'artwork' for face masks supplied by WTT."

                                        149

Light Decl. ¶ 16 & Ex. 4 at 25. The other key documents are the actual packaging designs that WTT admits it "created" and provided to Ms. Currier for feedback or approval, p. 148 above. This is exactly what CVS agreed to produce.

Specifically, CVS agreed to produce "copies of the following from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to January 31, 2022 to the extent not privileged: (1) any communications between CVS and WTT regarding any images for packaging for face masks; and (2) any internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face masks purchase orders with WTT regarding any images for packaging for face masks that would potentially be supplied by WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced these documents, including all communications by or copying Ms. Currier and her two superiors, and attachments to those communications regarding packaging designs, including artwork, for the masks at issue. Light Decl. ¶¶ 7–9, 18. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter.

To the extent WTT seeks "*[a]ll*" documents "related" in any way to "artwork *CVS* created for" *any* "face masks" (even masks not at issue or from other suppliers) for the two year period "between January 1, 2020 and January 31, 2022," such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Indeed, WTT concedes that CVS did not create the artwork for any of the masks at issue. *See* p. 148 above. Accordingly, all other requested documents are irrelevant because they have no tendency to make any fact "of consequence in determining the action" more or less probable, Fed. R. Evid. 401.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

28.    Request No. 32

a.    *The Request*

"All DOCUMENTS related to YOUR creation of any copy used for face masks, including any warnings, limitations, and instructions between January 1, 2020 and January 31, 2022."

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to CVS's "creation of any copy used for facemasks, including any warnings, limitations, and instructions between January 1, 2020 and January 31, 2022," especially information that has nothing to do with any face masks for which WTT was the supplier. Such information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity what "related to [CVS's] creation of any copy used for face masks" means or what types of documents are sought for the two-year period at issue. CVS further objects to the request to the extent it seeks

documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to January 31, 2022 to the extent not privileged: (1) any communications between CVS and WTT regarding any language for packaging for face masks; and (2) any internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face masks purchase orders with WTT regarding any language for packaging for face masks that would potentially be supplied by WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.   *WTT's Position*

This request asks for "[a]ll DOCUMENTS related to YOUR creation of any copy used for face masks, including any warnings, limitations, and instructions between January 1, 2020 and January 31, 2022." In other words, it seeks documents that go to the heart of the parties' claims and defenses regarding CVS's creation of the instructions and warnings placed on each individual pack of masks at issue. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at

152

1    some unidentified time certain documents responsive to this request while refusing to

2    produce other responsive documents.  CVS, however, failed to identify on which

3    objection it is basing its refusal to produce certain documents as requested by Rule

4    34(b)(2)(C) or which category of documents are being withheld.

5        During the parties' meet and confer, CVS refused to clarify whether documents

6    were being withheld and, if so, what category of documents were being withheld and

7    on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

8    WTT had to identify any additional categories of documents responsive to this request

9    that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

10   if there should be other categories of documents that should be produced in response

11   to this request is inconsistent with CVS's obligations under Rule 26 and 34.

12       Regardless, in light of the fact that none of the objections have merit as

13   discussed above, CVS should be compelled to supplement this response and produce

14   all documents responsive to this request.

15                    d.    *CVS's Position*

16       As an initial matter, the Court should deny WTT's motion as to this request for

17   the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

18   [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

19       But even setting aside this procedural deficiency, CVS's objections (which are

20   *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

21   demonstrate that the requested discovery is *both* relevant to the claims or defenses in

22   this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

23   (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

24       As shown above, *see* p. 6, this action is limited to three categories of claims:

25   (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

26   in October 2020 for face masks Sarah Currier previously ordered that was supposedly

27   conditioned on her alleged oral agreement or promise during a call in October 2020 to

28   buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

153

1   CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks
2   previously ordered that was supposedly related to a request for additional funding by
3   Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the
4   alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or
5   promised to buy various masks during calls in August, October, and December 2020
6   and January 2021. TAC ¶¶ 87–197.

7   Thus, the key documents "related to" "any copy used for face masks" *are*
8   *communications by or copying Ms. Currier*—the *sole* "key witness" that acted on
9   behalf of CVS, p. 3 above, the *sole* individual at CVS who WTT alleges negotiated *all*
10  the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above
11  (emphasis added), and the *sole* individual at CVS who was "responsible for providing
12  … feedback or approval to WTT" for "the 'labeling language' for face masks supplied
13  by WTT." Light Decl. ¶ 16 & Ex. 4 at 26. The other key documents are the actual
14  packaging designs, including labeling language, that WTT admits it provided to Ms.
15  Currier for feedback or approval. McKown Decl. Ex. G (Dec. 27, 2023 letter at 9).
16  This is exactly what CVS agreed to produce.

17  Specifically, CVS agreed to produce "copies of the following from April 1, 2020
18  (the month when WTT alleges its relationship with CVS began) to January 31, 2022
19  to the extent not privileged: (1) any communications between CVS and WTT
20  regarding any language for packaging for face masks; and (2) any internal
21  communications by those CVS employees primarily responsible for negotiating,
22  authorizing, and placing face masks purchase orders with WTT regarding any
23  language for packaging for face masks that would potentially be supplied by WTT."
24  Critically, WTT has not attempted to identify any documents beyond these categories
25  that are supposedly relevant and proportional to the needs of the case.

26  As demonstrated above, *see* pp. 31–32, CVS already produced these documents,
27  including all communications by or copying Ms. Currier and her two superiors, and
28  attachments to those communications regarding packaging designs, including labeling

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

language, for the masks at issue. Light Decl. ¶¶ 7–9, 18. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter.

To the extent WTT seeks "*[a]ll*" documents "related" in any way to CVS's "creation of copy used for" *any* "face masks" (even different masks supplied by other vendors that are not at issue) for the two year period "between January 1, 2020 and January 31, 2022," such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). Many (if not most) of those documents, especially regarding other masks that are not at issue, are plainly irrelevant. And to the extent Ms. Currier consulted CVS's "internal legal department" regarding the propriety of labeling language or the need for any "warnings and limitations" on such packaging, as WTT alleges, TAC ¶¶ 30, 49, 88, 98, such communications are protected by the attorney-client privilege and would have no tendency to make any fact "of consequence in determining the action" more or less probable in any event. Fed. R. Evid. 401.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

29. <u>Request No. 34</u>

a. *<u>The Request</u>*

"DOCUMENTS sufficient to evidence the policies YOU implemented regarding face masks and/or face coverings between January 1, 2020 and January 31,

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  2022."

2            b.    *CVS's Response*

3        CVS incorporates and reasserts its preliminary statement and objections to

4  specific definitions set forth above as if fully stated in response to this request. CVS

5  further objects that this request seeks information that is neither relevant to any party's

6  claim or defense nor proportional to the needs of the case. CVS's policies regarding

7  face masks or coverings between January 1, 2020 and January 31, 2022 has no

8  tendency to make any fact that is of consequence in determining this action more or

9  less probable than it would be without the evidence. CVS further objects that the

10 request is unduly burdensome and vague and ambiguous because it does not describe

11 with reasonable particularity what "evidence the policies [CVS] implemented

12 regarding face masks and/or face coverings" means or what types of documents are

13 sought for the two-year period at issue. CVS further objects to the request to the extent

14 it calls for information solely within the possession, custody, or control of former

15 employees of CVS or witnesses over whom CVS has no lawful right of control. CVS

16 further objects to the request to the extent it seeks confidential and commercially-

17 sensitive information. CVS further objects to the request to the extent it seeks

18 information protected by the attorney-client privilege, the attorney work product

19 doctrine, the right of privacy, or any other applicable privilege or protection. Based on

20 the foregoing objections, CVS will not produce information in response to this request.

21            c.    *WTT's Position*

22        This request asks for "DOCUMENTS sufficient to evidence the policies YOU

23 implemented regarding face masks and/or face coverings between January 1, 2020 and

24 January 31, 2022." After asserting a slew of boilerplate objections, CVS refused to

25 produce any responsive documents. CVS's refusal lacks merit.

26        Most of the objections asserted are general and boilerplate as discussed in detail

27 above in Request No. 2.  With that said, WTT addresses the relevance and

28 proportionality objections.  One of the key allegations in this case is breach,

156

specifically, WTT's allegation that CVS breached the parties' agreement or otherwise breached its promise to purchase red 3-ply face masks by refusing to purchase a portion of those items, which WTT was told by Ms. Currier would be used for CVS staff as well as to provide to customers during mandatory mask mandates in various municipalities, counties, and/or states in order to comply with the applicable laws and to avoid having to ask unmasked customers to leave the stores.  Critical to these allegations are the policies that CVS had in place during the applicable time that would tend to support the motive behind Ms. Currier and CVS ordering 5 million specially manufactured red 3-ply masks.  To the extent there were changes in CVS's mask policies within its stores over time, those changes are also relevant for discovery purposes as they may provide a possible explanation for why CVS subsequently refused to pay for the balance of the 5 million red 3-ply masks despite Ms. Currier's alleged promises and alleged instructions to have all 5 million readily available.  Such evidence is discoverable (and admissible).  *See Cohen*, 2015 WL 3966140, at *5 (financial records were discoverable and relevant to the issue of motive).

During the parties' meet and confer, CVS argued that none of the documents responsive to the request was relevant to any claim and that, at best, it was a fishing expedition.  The law is not in accord.  As the Ninth Circuit has made clear, whether WTT's reliance on the promises it alleges were made by CVS through Ms. Currier was reasonable depends on the totality of the circumstances at the time the promises were made:

> Federal courts applying California promissory estoppel law have identified another element that the promisee must prove: that the promisee's reliance have been reasonable under the circumstances.  Thus, under the Ninth Circuit's application of California law, in order to establish a right to recovery based on promissory estoppel, "a promisee must show (1) the existence of a promise, (2) that the promisor reasonably should have expected to induce the promisee's reliance, (3) that the promisee actually induced such reliance, (4) that such reliance is reasonable, and (5) that injustice can be avoided only by enforcement of the promise."

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

*Trans-World Int'l v. Smith-Hemion Prods.*, 972 F.Supp.1275, 1284 (C.D. Cal. 1997) (quoting *Devoll v. Burdick Painting, Inc.*, 35 F.3d 408, 411 n.4 (9th Cir. 1994)).

Here, one of those critical circumstances at issue was the impact the pandemic had on CVS's business, including the need to comply with masks mandates and CVS's adoption of temporary mask mandate policies for its retail stores consistent with the reasons Ms. Currier provided to WTT in promising to purchase all 5 million red 3-ply masks and the urgency claimed by Ms. Currier in having all 5 million in the United States ready for delivery to any of its stores at a moment's notice. Thus, the documents requested go directly to WTT's promissory estoppel claims.

The documents also go to the veracity of Ms. Currier and Mr. Kouyoumjian as witnesses. Indeed, whether CVS had such policies in place as WTT claims it was told by Ms. Currier will impact the credibility of both Ms. Currier and Mr. Kouyoumjian as witnesses. If no such policies existed, then a jury may be more likely to believe that Mr. Kouyoumjian's recounting of the oral conversations with Ms. Currier that are at the heart of this case is not accurate or credible. Conversely, if CVS's policies match what Mr. Kouyoumjian claims was told by him by Ms. Currier, then a jury may be more likely to find the rest of his testimony regarding the alleged promises made more credit. Thus, CVS should be compelled to produce documents responsive to this request, which is narrowly tailored and only seeks documents sufficient to show in-store mask policies during the relevant time period.

d.    *CVS's Position*

The Court should deny WTT's motion as to this request because CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

Contrary to WTT's unsupported assertion, the reason or motive why CVS

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

supposedly orally agreed or promised to buy face masks from WTT, or supposedly breached those alleged oral agreements or promises, p. 156–57, above, is irrelevant to WTT's contract and promissory estoppel claims for the same reasons as demonstrated above for Request No. 13, *see* pp. 70–71. Again, this is *not a tort case* in which intent is an element and motive may come into play. *See Stockton Mortgage*, 233 Cal. App. 4th at 453 ("The elements of a breach of oral contract claim are the same as those for a breach of written contract: a contract; its performance or excuse for nonperformance; breach; and damages."); *Mend Health*, 588 F. Supp. 3d at 1056 (C.D. Cal. 2022) ("In California, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."). Therefore, even if information regarding CVS's various face mask policies at its thousands of stores may support the alleged motive behind Ms. Currier's alleged oral agreements and promises, and supposed breaches of those alleged oral agreements and promises (as WTT speculates, *see* pp. 156–57 above), such information would still not go to any elements of WTT's contract or promissory estoppel claims and, thus, would not make any fact "of consequence in determining the action" more or less probable. Fed. R. Evid. 401.

Nor is WTT correct that the requested documents go to "whether WTT's reliance on the promises it alleges were made by CVS through Ms. Currier was reasonable," pp. 157–58. Whether WTT's reliance was reasonable depends on the circumstances *known by WTT* "at the time the promises were made," p. 157 above, not documents that CVS *never disclosed to WTT*—and, thus, on which WTT could *not* have relied. Accordingly, WTT's citation to *Trans-World*—a decision that does not address the relevance of any discovery requests, let alone one similar to this document request—is unavailing.

WTT is further mistaken that the documents go to the credibility of Ms. Currier and Mr. Kouyoumjian. WTT lacks any authority for that proposition, and its argument

is based purely on speculation. In any event, CVS has already produced all communications by or copying Ms. Currier and her two superiors regarding the alleged transactions at issue, which provides far more direct evidence as to the credibility of Ms. Currier and Mr. Kouyoumjian as to the material facts of this case. Light Decl. ¶¶ 7–10.

Even if WTT could establish some marginal relevance of the information, WTT's "sweeping" and "hopelessly broad" request for documents "*evidencing*" CVS's various policies "regarding face masks and/or face coverings" at more than 9,000 stores, Light Decl. ¶ 15, over the two-year period "between January 1, 2020 and January 31, 2022" does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. If the Court were to allow WTT to expand document discovery to such information requiring a search across more than 9,000 retail stores (and the tens of thousands of employees who work at them), CVS would necessarily incur exponentially greater time and expense than the ***more than 160 attorney hours and over \$103,000 in attorney fees, and over \$25,000 in e-discovery vendor and contract reviewer fees, CVS has already incurred collecting, processing, and reviewing documents for production related to WTT's goods alone at a wholesale level***. Light Decl. ¶ 14. The substantial burden and expense of such discovery would significantly outweigh any limited benefit even if WTT could establish some minimal relevance of the information (which it has not).

Moreover, "the importance of the [requested documents] in resolving the issues [in this case] is virtually nil." *ILC Trademark*, 2019 WL 2998576, at *2 (denying discovery). To the extent WTT establishes any relevance of CVS's face mask policies in its stores, such information can far more easily be obtained by asking Ms. Currier (or a representative of CVS) targeted questions in deposition, such as regarding why

CVS stopped ordering face masks from WTT. *See Teradyne*, 2022 WL 18397125, at *7 (denying discovery motion where information sought "can likely be obtained in more convenient, less burdensome ways," such as "depositions" that "would likely be more efficient"); Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery otherwise allowed … if it determines that" "the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Indeed, targeted deposition questions were precisely the discovery at issue in *Cohen*—a further reason the decision is inapposite.

For all these reasons, the Court should deny WTT's motion as to this request.

30.    Request No. 36

a.    *The Request*

"All DOCUMENTS evidencing any directives or instructions YOU provided to any of YOUR stores regarding face masks and/or face coverings between January 1, 2020 and January 31, 2022."

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects that this request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. CVS's directives or instructions regarding face masks or coverings between January 1, 2020 and January 31, 2022 has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is unduly burdensome and vague and ambiguous because it does not describe with reasonable particularity what "directives or instructions YOU provided to any of YOUR stores regarding face masks and/or face coverings" means or what types of documents are sought for the two-year period at issue. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful

161

right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection.

Based on the foregoing objections, CVS will not produce information in response to this request.

c. *WTT's Position*

This request asks for "[a]ll DOCUMENTS evidencing any directives or instructions YOU provided to any of YOUR stores regarding face masks and/or face coverings between January 1, 2020 and January 31, 2022." During the parties' meet and confer discussions, WTT agreed to limit the scope to the following subset of documents: email correspondence and/or internal memoranda and/or directives regarding the acquisition and/or use of red 3-ply masks at CVS stores. Despite this limitation, CVS stood on its objections, none of which have merit.

Most of the objections asserted are general and boilerplate as discussed in detail in Request No 2. As such, they should be overruled. As for CVS's relevance and proportionality objections, neither justifies CVS's refusal to produce responsive documents as limited by WTT. One of the key allegations in this case is breach, specifically, WTT's allegation that CVS breached the parties' agreement or otherwise breached its promise to purchase red 3-ply face masks by refusing to purchase a portion of those items, which WTT was told by Ms. Currier would be used for CVS staff as well as to provide to customers during mandatory mask mandates in various municipalities, counties, and/or states in order to comply with the applicable laws and to avoid having to ask unmasked customers to leave the stores. This request seeks evidence that goes to the heart of whether Ms. Currier made the promises alleged – the directives or instructions that she received regarding the acquisition of masks for use at CVS's retail stores. If such documents exist, it would constitute the proverbial "smoking gun." While WTT can understand why CVS would not want to search for

162

1 or produce documents responsive to this request, to say that the request seeks
2 documents that are not relevant or proportional is specious.

3     CVS should be compelled to produce documents responsive to this request,
4 which is narrowly tailored and only seeks documents sufficient to show in-store mask
5 policies during the relevant time period.

6               d.    *CVS's Position*

7     The Court should deny WTT's motion as to this request because CVS's
8 objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its*
9 *initial "burden* to demonstrate that the requested discovery is *both* relevant to the
10 claims or defenses in this action *and* proportional to the needs of the case." *White*,
11 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) &
12 (2)(C)(iii).

13     Contrary to WTT's unsupported assertion, the reason or motive why CVS
14 supposedly orally agreed or promised to buy face masks from WTT, or supposedly
15 breached those alleged oral agreements or promises, p. 162, above, is irrelevant to
16 WTT's contract and promissory estoppel claims for the same reasons as demonstrated
17 above for Request No. 13, *see* pp. 70–71. Again, this is *not a tort case* in which intent
18 is an element and motive may come into play. *See Stockton Mortgage*, 233 Cal. App.
19 4th at 453 ("The elements of a breach of oral contract claim are the same as those for
20 a breach of written contract: a contract; its performance or excuse for nonperformance;
21 breach; and damages."); *Mend Health*, 588 F. Supp. 3d at 1056 (C.D. Cal. 2022) ("In
22 California, the elements of promissory estoppel are (1) a promise clear and
23 unambiguous in its terms; (2) reliance by the party to whom the promise is made;
24 (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting
25 the estoppel must be injured by his reliance."). Therefore, even if information
26 regarding CVS's various directives or instructions to its thousands of stores regarding
27 face masks may support the alleged motive behind Ms. Currier's alleged oral
28 agreements and promises, and supposed breaches of those alleged oral agreements and

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  promises (as WTT speculates, *see* p. 162 above), such information would still not go
2  to any elements of WTT's contract or promissory estoppel claims and, thus, would not
3  make any fact "of consequence in determining the action" more or less probable, Fed.
4  R. Evid. 401.

5      WTT is likewise mistaken that the requested documents are relevant to whether
6  Ms. Currier allegedly orally agreed or promised to buy the red 3-ply masks, p. 162
7  above, for the same reasons as demonstrated above for Request No. 18, *see* pp. 97–98.
8  Whether Ms. Currier orally agreed or promised to buy the masks turns on any *objective*
9  manifestations of assent or clear and unambiguous promises that she *communicated to*
10 *WTT* during the alleged call in December 2020, not any *undisclosed* documents about
11 CVS's directives or instructions provided to its thousands of stores.

12     Even if WTT could establish some marginal relevance of the requested
13 documents, WTT's "sweeping" and "hopelessly broad" request for "*[a]ll*" documents
14 "*evidencing any* directives or instructions [CVS] provided to *any* of" its more than
15 9,000 stores, Light Decl. ¶ 15, regarding *any* "face masks and/or face coverings" over
16 the two-year period "between January 1, 2020 and January 31, 2022" does "not comply
17 with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at
18 *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety
19 of topics"), and is not remotely proportional to the needs of the case for the same
20 reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT's proposal to
21 limit the request to *all* "email correspondence and/or internal memoranda and/or
22 directives regarding the acquisition and/or use of red 3-ply masks at CVS stores,"
23 p. 162 above, fares no better. If the Court were to allow WTT to expand document
24 discovery to such information requiring a search across more than 9,000 retail stores
25 (and the tens of thousands of employees who work at them, Light Dec. ¶ 15), CVS
26 would necessarily incur exponentially greater time and expense than the ***more than***
27 ***160 attorney hours and over $103,000 in attorney fees, and over $25,000 in e-***
28 ***discovery vendor and contract reviewer fees, CVS has already incurred collecting,***

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    ***processing, and reviewing documents for production related to WTT's goods alone***
2    ***at a wholesale level***. Light Decl. ¶ 14. The substantial burden and expense of such
3    discovery would significantly outweigh any limited benefit even if WTT could
4    establish some minimal relevance of the information (which it has not).

5    Moreover, "the importance of the [requested documents] in resolving the issues
6    [in this case] is virtually nil." *ILC Trademark*, 2019 WL 2998576, at *2 (denying
7    discovery). To the extent WTT establishes any relevance of CVS's directives and
8    instructions to its thousands of retail stores relating to the red 3-ply masks, such
9    information can far more easily be obtained by asking Ms. Currier (or a representative
10    of CVS) targeted questions in deposition, such as regarding why CVS stopped ordering
11    face masks from WTT. *See Teradyne*, 2022 WL 18397125, at *7 (denying discovery
12    motion where information sought "can likely be obtained in more convenient, less
13    burdensome ways," such as "depositions" that "would likely be more efficient"); Fed.
14    R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery
15    otherwise allowed … if it determines that" "the discovery sought … can be obtained
16    from some other source that is more convenient, less burdensome, or less expensive").
17    Indeed, targeted deposition questions were precisely the discovery at issue in *Cohen*—
18    a further reason the decision is inapposite.

19    In any event, CVS has already produced all communications by or copying Ms.
20    Currier and her two superiors regarding the alleged transactions at issue, which
21    provides far more direct evidence as to the credibility of Ms. Currier and Mr.
22    Kouyoumjian as to the material facts of this case, Light Decl. ¶¶ 7–10, and which WTT
23    concedes "should capture all responsive documents," p. 23 above. This should end the
24    matter.

25    For all these reasons, the Court should deny WTT's motion as to this request.

26    31.    Request No. 38

27    a.    *The Request*

28    "DOCUMENTS sufficient to evidence all policies and procedures that were in

165

place between January 1, 2020 and January 31, 2022 regarding the purchasing of face
masks and/or face coverings."

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to
specific definitions set forth above as if fully stated in response to this request. CVS
further objects that this request seeks information that is neither relevant to any party's
claim or defense nor proportional to the needs of the case. CVS's policies and
procedures regarding the purchasing of face masks or coverings between January 1,
2020 and January 31, 2022 has no tendency to make any fact that is of consequence in
determining this action more or less probable than it would be without the evidence.
CVS further objects that the request is unduly burdensome and vague and ambiguous
because it does not describe with reasonable particularity what "evidence" the subject
policies and procedures means or what types of documents are sought for the two-year
period at issue. CVS further objects to the request to the extent it calls for information
solely within the possession, custody, or control of former employees of CVS or
witnesses over whom CVS has no lawful right of control. CVS further objects to the
request to the extent it seeks confidential and commercially-sensitive information.
CVS further objects to the request to the extent it seeks information protected by the
attorney-client privilege, the attorney work product doctrine, the right of privacy, or
any other applicable privilege or protection.

Based on the foregoing objections, CVS will not produce information in
response to this request.

c.    *WTT's Position*

During the parties' meet and confer, WTT confirmed that it was seeking only
written policies and procedures governing the purchase of face masks between January
1, 2020 and January 31, 2022.  In light of that, CVS's counsel indicated that it would
discuss this request further with CVS.  *See* McKown Decl., ¶¶ 5-7, Exs. G-H.  On
January 5, 2024, CVS's counsel indicated that he was still waiting to hear back from

166

CVS. *Id.*, ¶ 7, Ex. H.  As of this Joint Stipulation, CVS's counsel has not addressed this issue any further and thus, WTT assumes from CVS's silence that it is standing on its objections.

This request asks for "DOCUMENTS sufficient to evidence all policies and procedures that were in place between January 1, 2020 and January 31, 2022 regarding the purchasing of face masks and/or face coverings in YOUR retail stores."  After asserting a slew of boilerplate objections, CVS refused to produce any responsive documents.  CVS's refusal lacks merit.

Most of the objections asserted are general and boilerplate as explained in Request No. 2 above.  Because I have already addressed those above, they will not be addressed again here for brevity's sake.  Some of the key allegations in this case are breach and promissory estoppel, specifically, WTT's allegation that CVS breached the parties' agreement or otherwise breached its promise to purchase various kinds of face coverings.  Whether and what CVS's policies were for purchasing face coverings from WTT goes to the heart of whether Ms. Currier and/or WTT adhered to the policies in promising to purchase masks from WTT.

d.    *CVS's Position*

WTT's motion as to this request is moot because CVS served a supplemental response on February 12, 2024 stating, "pursuant to WTT's clarification during the parties' December 27, 2023 conference of counsel that this request seeks only written policies and procedures governing CVS's purchase of face masks from vendors between January 1, 2020 and January 31, 2022, that CVS "did not have any written policies or procedures specifically governing CVS's purchase of face masks or coverings from vendors between January 1, 2020 and January 31, 2022 and, therefore, no responsive documents exist." Light Decl. ¶ 17 & Ex. 5 at 51. For this reason alone, the Court should deny WTT's motion as to this request.

To the extent WTT seeks documents evidencing "all policies and procedures that were in place between January 1, 2020 and January 31, 2022 regarding the

167

purchasing" of goods in general, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii). Such policies and procedures (and whether Ms. Currier adhered to them) do not go to any elements of WTT's contract or promissory estoppel claims, *see* p. 71 above, and, therefore, have no tendency to make any fact "of consequence in determining the action" more or less probable. Fed. R. Evid. 401. Indeed, WTT does not allege that Ms. Currier failed to comply with such policies to its detriment.

Even if WTT could establish some marginal relevance of information, WTT's "sweeping" and "hopelessly broad" request for documents "*evidenc[ing] all [such] policies and procedures* that were in place" during the two-year period "between January 1, 2020 and January 31, 2022" does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT does not even attempt to articulate how documents evidencing "all policies and procedures that were in place between January 1, 2020 and January 31, 2022 regarding the purchasing" of goods in general would be important to resolving the action.

Accordingly, the Court should deny WTT's motion as to this request.

           32.    <u>Request No. 40</u>

              a.    ***The Request***

"All internal DOCUMENTS, including COMMUNICATIONS and ESI, evidencing how YOU applied any discounts or credits to any orders for masks YOU placed with WTT."

////

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. For example, the request is overbroad and unduly burdensome to the extent it seeks all documents somehow related to CVS's application of discounts or credits to any order for masks placed with WTT. Some of that information has no tendency to make any fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity the types of documents at issue or what "evidencing how [CVS] applied" the subject discounts or credits means. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, 14, and 23.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control,

169

CVS will produce copies of non-privileged documents sufficient to show how CVS applied the $2,068,816 in discounts/credits for face masks purchased from WTT at issue in the TAC. Based on the foregoing objections, CVS will not produce further information in response to this request

c.    *WTT's Position*

This request asks for "All internal DOCUMENTS, including COMMUNICATIONS and ESI, evidencing how YOU applied any discounts or credits to any orders for masks YOU placed with WTT."  After asserting a slew of boilerplate objections, CVS indicated that "CVS will produce copies of non-privileged documents sufficient to show how CVS applied the $2,068,816 in discounts/credits for face masks purchased from WTT at issue in the TAC."  This response unreasonably narrows the scope of documents responsive to this request, including excluding all internal communications regarding whether, when, and how to calculate the discounts at issue.  As a result, CVS's response overly narrows the scope of relevant, responsive documents.

During the parties' meet and confer discussions, CVS agreed to produce internal communications regarding the discounts and their application.  However, it was not clear whether CVS was withholding any documents to this request as indicated in its response and, if so, on what grounds.  Regardless, in light of the fact that none of the objections have merit as discussed above, CVS should be compelled to supplement this response and produce all documents responsive to this request.

d.    *CVS's Position*

The Court should deny WTT's motion as to this request because CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that [additional documents are] *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

As an initial matter, CVS has already produced all the key "internal" communications evidencing how it applied the discounts at issue in response to previous requests, which is why CVS objected that this request is cumulative and duplicative of Request Nos. 2, 7–10, 14, and 23. These are communications *by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added)— and her two superiors regarding the $2,068,816 in discounts and credits at issue. Light Decl. ¶¶ 7–9. The other key documents are data showing the discounts and credits at issue and how CVS applied the discounts and credits. This is exactly what CVS agreed to produce: "copies of non-privileged documents sufficient to show how CVS applied the $2,068,816 in discounts/credits for face masks purchased from WTT at issue in the TAC." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case. On the contrary, WTT concedes CVS's "keyword search … should capture all responsive documents," p. 23 above. This should end the matter.

To the extent WTT seeks "*[a]ll*" internal documents "evidencing" in any way how CVS applied "*any* discounts or credits" (even discounts or credits that are not at issue) "to *any* orders for masks [it] placed with WTT," such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    For all these reasons, the Court should deny WTT's motion as to this request.

2        33.    Request No. 41

3            a.    *The Request*

4    "All DOCUMENTS, including COMMUNICATIONS and ESI, regarding any

5    complaints YOU made to WTT."

6            b.    *CVS's Response*

7    CVS incorporates and reasserts its preliminary statement and objections to

8    specific definitions set forth above as if fully stated in response to this request. CVS

9    further objects to this request to the extent it seeks information that is not relevant to

10   any party's claim or defense or not proportional to the needs of the case. For example,

11   the request is overbroad and unduly burdensome to the extent it seeks all documents

12   somehow related to any complaints CVS made to WTT that are unrelated to the

13   specific face mask transactions at issue in the TAC. Such information has no tendency

14   to make any fact that is of consequence in determining this action more or less probable

15   than it would be without the evidence. CVS further objects that the request is vague

16   and ambiguous because it does not describe with reasonable particularity the types of

17   complaints at issue or provide any limitations as to subject matter and time. CVS

18   further objects to the request to the extent it seeks documents that are equally

19   accessible to WTT because they are within its possession, custody, or control. CVS

20   further objects to the request to the extent it calls for information solely within the

21   possession, custody, or control of former employees of CVS or witnesses over whom

22   CVS has no lawful right of control. CVS further objects to the request to the extent it

23   seeks confidential and commercially-sensitive information. To the extent CVS agrees

24   to produce any such confidential or commercially-sensitive information, it will do so

25   only after the parties have agreed to an appropriate stipulated protective order

26   governing the disclosure and use of confidential information in this action. CVS

27   further objects to the request to the extent it seeks information protected by the

28   attorney-client privilege, the attorney work product doctrine, the right of privacy, or

172

1   any other applicable privilege or protection. CVS further objects to this request to the

2   extent it is unreasonably cumulative and duplicative of Request Nos. 1–3.

3       Subject to and without waiving the foregoing objections, after a diligent search

4   and reasonable inquiry of documents within CVS's possession, custody, or control,

5   CVS will produce copies of any communications between it and WTT from April 1,

6   2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023

7   (the date WTT filed its initial complaint in this action) that address any complaint

8   regarding any face masks the TAC alleges were supplied or obtained by WTT or

9   discounts/credits owed for such masks. Based on the foregoing objections, CVS will

10  not produce further information in response to this request.

11          c.      *WTT's Position*

12      This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS

13  and ESI, regarding any complaints YOU made to WTT."  In other words, it seeks

14  documents that go to WTT's claims and CVS's defenses, specifically, whether CVS

15  ever complained about the timing of delivery, the quality of the goods, the quantity of

16  goods delivered, and whether there existed any non-conformities or defects in the

17  goods.  After asserting the same slew of boilerplate objections, CVS indicated that it

18  will produce at some unidentified time certain documents responsive to this request

19  while refusing to produce other responsive documents.  CVS, however, failed to

20  identify on which objection it is basing its refusal to produce certain documents as

21  requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

22      During the parties' meet and confer, CVS refused to clarify whether documents

23  were being withheld and, if so, what category of documents were being withheld and

24  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

25  WTT had to identify any additional categories of documents responsive to this request

26  that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

27  if there should be other categories of documents that should be produced in response

28  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

173

1     Regardless, in light of the fact that none of the objections have merit as
2     discussed above, CVS should be compelled to supplement this response and produce
3     all documents responsive to this request.

d.    *CVS's Position*

5     As an initial matter, the Court should deny WTT's motion as to this request for
6     the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because
7     [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

8     But even setting aside this procedural deficiency, CVS's objections (which are
9     *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to
10    demonstrate that the requested discovery is *both* relevant to the claims or defenses in
11    this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5
12    (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

13    As shown above, *see* p. 6, this action is limited to three categories of claims:
14    (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit
15    in October 2020 for face masks Sarah Currier previously ordered that was supposedly
16    conditioned on her alleged oral agreement or promise during a call in October 2020 to
17    buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that
18    CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks
19    previously ordered that was supposedly related to a request for additional funding by
20    Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the
21    alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or
22    promised to buy various masks during calls in August, October, and December 2020
23    and January 2021. TAC ¶¶ 87–197.

24    Thus, the key documents by CVS "regarding any complaints [CVS] made to
25    WTT" *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on
26    behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated
27    *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62
28    above (emphasis added). Nevertheless, CVS agreed to produce far broader categories

174

1  of documents.

2  Specifically, CVS agreed to produce "copies of any communications between it

3  and WTT from April 1, 2020 (the month when WTT alleges its relationship with CVS

4  began) to April 11, 2023 (the date WTT filed its initial complaint in this action) that

5  address any complaint regarding any face masks the TAC alleges were supplied or

6  obtained by WTT or discounts/credits owed for such masks." Critically, WTT has not

7  attempted to identify any documents beyond these categories that are supposedly

8  relevant and proportional to the needs of the case.

9  As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority

10  of these documents, including all communications by or copying Ms. Currier and her

11  two superiors and many communications by or copying other CVS employees. Light

12  Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial

13  production] should capture all responsive documents," p. 23 above. This should end

14  the matter. Further, CVS is collecting and reviewing for production additional

15  documents from other custodians, including individuals who WTT has identified as

16  potential deponents (even though they were not directly involved in the alleged

17  transactions) and supplier support mailboxes with whom WTT may have

18  communicated. Light Decl. ¶ 12.

19  To the extent WTT seeks "*[a]ll*" documents "regarding *any* complaints [CVS]

20  made to WTT" (even if they do not relate to the claims at issue), such a "sweeping"

21  and "hopelessly broad" request does "not comply with Rule 34's 'reasonable

22  particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery

23  seeking "'all documents' 'concerning or relating to' a variety of topics"). For example,

24  CVS bought other goods from WTT that are not at issue, such as various toys and

25  vaccine card holders. Documents regarding these transactions are not relevant.

26  Even if WTT could establish some marginal relevance of additional documents,

27  the additional documents WTT seeks are not remotely proportional to the needs of the

28  case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  WTT has not attempted to articulate how additional documents would be important to

2  resolving the action, or even what those additional documents may be.

3      WTT is further mistaken that CVS's response fails to comply with Rule 34 for

4  the same reasons as demonstrated above for Request No. 2, *see* p. 34.

5      For all these reasons, the Court should deny WTT's motion as to this request.

6          34.    Request No. 42

7              a.    *The Request*

8      "All DOCUMENTS, including COMMUNICATIONS and ESI, regarding any

9  claims YOU made to WTT that any goods were non-conforming."

10             b.    *CVS's Response*

11     CVS incorporates and reasserts its preliminary statement and objections to

12  specific definitions set forth above as if fully stated in response to this request. CVS

13  further objects to this request to the extent it seeks information that is not relevant to

14  any party's claim or defense or not proportional to the needs of the case. For example,

15  the request is overbroad and unduly burdensome to the extent it seeks all documents

16  somehow related to any claims CVS made to WTT that are unrelated to the specific

17  face mask transactions at issue in the TAC. Such information has no tendency to make

18  any fact that is of consequence in determining this action more or less probable than it

19  would be without the evidence. CVS further objects that the request is vague and

20  ambiguous because it does not describe with reasonable particularity the types of

21  goods or nonconformities at issue or provide any limitations as to subject matter and

22  time. CVS further objects to the request to the extent it seeks documents that are

23  equally accessible to WTT because they are within its possession, custody, or control.

24  CVS further objects to the request to the extent it calls for information solely within

25  the possession, custody, or control of former employees of CVS or witnesses over

26  whom CVS has no lawful right of control. CVS further objects to the request to the

27  extent it seeks confidential and commercially-sensitive information. To the extent

28  CVS agrees to produce any such confidential or commercially-sensitive information,

176

1    it will do so only after the parties have agreed to an appropriate stipulated protective
2    order governing the disclosure and use of confidential information in this action. CVS
3    further objects to the request to the extent it seeks information protected by the
4    attorney-client privilege, the attorney work product doctrine, the right of privacy, or
5    any other applicable privilege or protection. CVS further objects to this request to the
6    extent it is unreasonably cumulative and duplicative of Request Nos. 1–3 and 41.

7    Subject to and without waiving the foregoing objections, after a diligent search
8    and reasonable inquiry of documents within CVS's possession, custody, or control,
9    CVS will produce copies of any communications between it and WTT from April 1,
10   2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023
11   (the date WTT filed its initial complaint in this action) that address any claim that any
12   face mask supplied by WTT failed to conform to agreed product specifications. Based
13   on the foregoing objections, CVS will not produce further information in response to
14   this request.

15                          c.    *WTT's Position*

16   This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS
17   and ESI, regarding any claims YOU made to WTT that any goods were non-
18   conforming."  In other words, this request seeks documents that go to WTT's claims
19   and CVS's defenses, specifically, whether CVS ever complained about the timing of
20   delivery, the quality of the goods, the quantity of goods delivered, and whether there
21   existed any non-conformities or defects in the goods.  After asserting the same slew of
22   boilerplate objections, CVS indicated that it will produce at some unidentified time
23   certain documents responsive to this request while refusing to produce other
24   responsive documents.  CVS, however, failed to identify on which objection it is
25   basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or
26   which category of documents are being withheld.

27   During the parties' meet and confer, CVS refused to clarify whether documents
28   were being withheld and, if so, what category of documents were being withheld and

177

1  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

2  WTT had to identify any additional categories of documents responsive to this request

3  that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

4  if there should be other categories of documents that should be produced in response

5  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

6      Regardless, in light of the fact that none of the objections have merit as

7  discussed above, CVS should be compelled to supplement this response and produce

8  all documents responsive to this request.

9                      d.    *CVS's Position*

10     As an initial matter, the Court should deny WTT's motion as to this request for

11  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

12  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

13     But even setting aside this procedural deficiency, CVS's objections (which are

14  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

15  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

16  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

17  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

18     First, as CVS stated in response to Interrogatory Nos. 17–19, "it does not

19  contend at this time that any of the face masks delivered to it failed to conform to

20  product specifications." McKown Decl. Ex. D at 25–27. So, it is not clear why WTT

21  seeks documents "regarding any claims [CVS] made to WTT that any goods were non-

22  conforming" in the first instance. Nonetheless, CVS agreed to search for and produce

23  any such documents that are relevant and proportional to the case.

24     As shown above, *see* p. 6, this action is limited to three categories of claims:

25  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

26  in October 2020 for face masks Sarah Currier previously ordered that was supposedly

27  conditioned on her alleged oral agreement or promise during a call in October 2020 to

28  buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks
2  previously ordered that was supposedly related to a request for additional funding by
3  Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the
4  alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or
5  promised to buy various masks during calls in August, October, and December 2020
6  and January 2021. TAC ¶¶ 87–197.

7       Thus, the key documents "regarding any claims [CVS] made to WTT that" any
8  of the mask at issue "were non-conforming" *are those by or copying Ms. Currier*—the
9  *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at
10  CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy
11  "*all* the [masks] at issue," p. 62 above (emphasis added). Nevertheless, CVS agreed to
12  produce far broader categories of documents.

13       Specifically, CVS agreed to produce "copies of any communications between it
14  and WTT from April 1, 2020 (the month when WTT alleges its relationship with CVS
15  began) to April 11, 2023 (the date WTT filed its initial complaint in this action) that
16  address any claim that any face mask supplied by WTT failed to conform to agreed
17  product specifications." Critically, WTT has not attempted to identify any documents
18  beyond this category that are supposedly relevant and proportional to the needs of the
19  case.

20       As demonstrated above, *see* pp. 31–32, CVS already produced all
21  communications by or copying Ms. Currier and her two superiors and many
22  communications by or copying other CVS employees. Light Decl. ¶¶ 7–10. WTT
23  concedes that CVS's "keyword search [underlying its initial production] should
24  capture all responsive documents," p. 23 above. This should end the matter. Further,
25  CVS is collecting and reviewing for production additional documents from other
26  custodians, including individuals who WTT has identified as potential deponents (even
27  though they were not directly involved in the alleged transactions) and supplier support
28  mailboxes with whom WTT may have communicated. Light Decl. ¶ 12.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    To the extent WTT seeks "*[a]ll*" documents "regarding *any* claims [CVS] made

2    to WTT that *any goods* were non-conforming" (even if they do not relate to the claims

3    at issue), such a "sweeping" and "hopelessly broad" request does "not comply with

4    Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2

5    (denying discovery seeking "'all documents' 'concerning or relating to' a variety of

6    topics"). For example, CVS bought other goods from WTT that are not at issue, such

7    as various toys and vaccine card holders. Documents regarding these transactions are

8    not relevant.

9    Even if WTT could establish some marginal relevance of additional documents,

10    the additional documents WTT seeks are not remotely proportional to the needs of the

11    case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.

12    WTT has not attempted to articulate how additional documents would be important to

13    resolving the action, or even what those additional documents may be.

14    WTT is further mistaken that CVS's response fails to comply with Rule 34 for

15    the same reasons as demonstrated above for Request No. 2, *see* p. 34.

16    For all these reasons, the Court should deny WTT's motion as to this request.

17    35.    Request No. 43

18    a.    *The Request*

19    "All DOCUMENTS, including COMMUNICATIONS and ESI, regarding

20    YOUR rejection of any goods delivered by WTT to YOU."

21    b.    *CVS's Response*

22    CVS incorporates and reasserts its preliminary statement and objections to

23    specific definitions set forth above as if fully stated in response to this request. CVS

24    further objects to this request to the extent it seeks information that is not relevant to

25    any party's claim or defense or not proportional to the needs of the case. For example,

26    the request is overbroad and unduly burdensome to the extent it seeks all documents

27    somehow related to any rejection by CVS to WTT that is unrelated to the specific face

28    mask transactions at issue in the TAC. Such information has no tendency to make any

180

fact that is of consequence in determining this action more or less probable than it would be without the evidence. CVS further objects that the request is vague and ambiguous because it does not describe with reasonable particularity the types of goods at issue or provide any limitations as to time. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–3 and 41–42.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of any communications between it and WTT from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) that address any rejection of any face mask delivered by WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS and ESI, regarding YOUR rejection of any goods delivered by WTT to YOU." In other words, this request seeks documents that go to WTT's claims and CVS's

1  defenses, specifically, whether CVS ever rejected any of the goods at any time.  After

2  asserting the same slew of boilerplate objections, CVS indicated that it will produce at

3  some unidentified time certain documents responsive to this request while refusing to

4  produce other responsive documents.  CVS, however, failed to identify on which

5  objection it is basing its refusal to produce certain documents as requested by Rule

6  34(b)(2)(C) or which category of documents are being withheld.

7      During the parties' meet and confer, CVS refused to clarify whether documents

8  were being withheld and, if so, what category of documents were being withheld and

9  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

10  WTT had to identify any additional categories of documents responsive to this request

11  that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

12  if there should be other categories of documents that should be produced in response

13  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

14      Regardless, in light of the fact that none of the objections have merit as

15  discussed above, CVS should be compelled to supplement this response and produce

16  all documents responsive to this request.

17          d.    *CVS's Position*

18      As an initial matter, the Court should deny WTT's motion as to this request for

19  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

20  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

21      But even setting aside this procedural deficiency, CVS's objections (which are

22  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

23  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

24  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

25  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

26      As shown above, *see* p. 6, this action is limited to three categories of claims:

27  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

28  in October 2020 for face masks Sarah Currier previously ordered that was supposedly

conditioned on her alleged oral agreement or promise during a call in October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks previously ordered that was supposedly related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or promised to buy various masks during calls in August, October, and December 2020 and January 2021. TAC ¶¶ 87–197.

Thus, the key documents "regarding [CVS's] rejection" of any masks at issue delivered by WTT *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of any communications between it and WTT from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) that address any rejection of any face mask delivered by WTT." Critically, WTT has not attempted to identify any documents beyond this category that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors and many communications by or copying other CVS employees. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  transactions) and supplier support mailboxes with whom WTT may have

2  communicated. Light Decl. ¶ 12.

3  To the extent WTT seeks "*[a]ll*" documents "regarding [CVS's] rejection of

4  *any* goods delivered by WTT" (even if they do not relate to the claims at issue), such

5  a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's

6  'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying

7  discovery seeking "'all documents' 'concerning or relating to' a variety of topics").

8  For example, CVS bought other goods from WTT that are not at issue, such as various

9  toys and vaccine card holders. Documents regarding these transactions are not

10 relevant.

11 Even if WTT could establish some marginal relevance of additional documents,

12 the additional documents WTT seeks are not remotely proportional to the needs of the

13 case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.

14 WTT has not attempted to articulate how additional documents would be important to

15 resolving the action, or even what those additional documents may be.

16 WTT is further mistaken that CVS's response fails to comply with Rule 34 for

17 the same reasons as demonstrated above for Request No. 2, *see* p. 34.

18 For all these reasons, the Court should deny WTT's motion as to this request.

19          36.    Request No. 44

20                 a.    *The Request*

21 "All DOCUMENTS, including COMMUNICATIONS and ESI, regarding

22 YOUR request that WTT replace any goods it delivered to YOU."

23                 b.    *CVS's Response*

24 CVS incorporates and reasserts its preliminary statement and objections to

25 specific definitions set forth above as if fully stated in response to this request. CVS

26 further objects to this request to the extent it seeks information that is not relevant to

27 any party's claim or defense or not proportional to the needs of the case. For example,

28 the request is overbroad and unduly burdensome to the extent it seeks all documents

1   somehow related to any request by CVS to WTT that it replace goods unrelated to the
2   specific face mask transactions at issue in the TAC. Such information has no tendency
3   to make any fact that is of consequence in determining this action more or less probable
4   than it would be without the evidence. CVS further objects that the request is vague
5   and ambiguous because it does not describe with reasonable particularity which goods
6   it refers to or provide any limitations as to time. CVS further objects to the request to
7   the extent it seeks documents that are equally accessible to WTT because they are
8   within its possession, custody, or control. CVS further objects to the request to the
9   extent it calls for information solely within the possession, custody, or control of
10  former employees of CVS or witnesses over whom CVS has no lawful right of control.
11  CVS further objects to the request to the extent it seeks confidential and commercially-
12  sensitive information. To the extent CVS agrees to produce any such confidential or
13  commercially-sensitive information, it will do so only after the parties have agreed to
14  an appropriate stipulated protective order governing the disclosure and use of
15  confidential information in this action. CVS further objects to the request to the extent
16  it seeks information protected by the attorney-client privilege, the attorney work
17  product doctrine, the right of privacy, or any other applicable privilege or protection.
18  CVS further objects to this request to the extent it is unreasonably cumulative and
19  duplicative of Request Nos. 1–3 and 41–43.

20          Subject to and without waiving the foregoing objections, after a diligent search
21  and reasonable inquiry of documents within CVS's possession, custody, or control,
22  CVS will produce copies of any communications between it and WTT from April 1,
23  2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023
24  (the date WTT filed its initial complaint in this action) that address any request that
25  WTT replace any face mask delivered by it. Based on the foregoing objections, CVS
26  will not produce further information in response to this request.

27          c.    *WTT's Position*

28          This request asks for "[a]ll DOCUMENTS, including COMMUNICATIONS

185

1    and ESI, regarding YOUR request that WTT replace any goods it delivered to YOU."
2    In other words, this request seeks documents that go to WTT's claims and CVS's
3    defenses, specifically, whether CVS acceptance of the goods at issue.  After asserting
4    the same slew of boilerplate objections, CVS indicated that it will produce at some
5    unidentified time certain documents responsive to this request while refusing to
6    produce other responsive documents.  CVS, however, failed to identify on which
7    objection it is basing its refusal to produce certain documents as requested by Rule
8    34(b)(2)(C) or which category of documents are being withheld.

9        During the parties' meet and confer, CVS refused to clarify whether documents
10    were being withheld and, if so, what category of documents were being withheld and
11    on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that
12    WTT had to identify any additional categories of documents responsive to this request
13    that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine
14    if there should be other categories of documents that should be produced in response
15    to this request is inconsistent with CVS's obligations under Rule 26 and 34.

16        Regardless, in light of the fact that none of the objections have merit as
17    discussed above, CVS should be compelled to supplement this response and produce
18    all documents responsive to this request.

19            d.    *CVS's Position*

20        As an initial matter, the Court should deny WTT's motion as to this request for
21    the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because
22    [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

23        But even setting aside this procedural deficiency, CVS's objections (which are
24    *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to
25    demonstrate that the requested discovery is *both* relevant to the claims or defenses in
26    this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5
27    (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

28        As shown above, *see* p. 6, this action is limited to three categories of claims:

186

(1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit in October 2020 for face masks Sarah Currier previously ordered that was supposedly conditioned on her alleged oral agreement or promise during a call in October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks previously ordered that was supposedly related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or promised to buy various masks during calls in August, October, and December 2020 and January 2021. TAC ¶¶ 87–197.

Thus, the key documents "regarding" any "request that WTT replace" any masks at issue *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of any communications between it and WTT from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) that address any request that WTT replace any face mask delivered by it." Critically, WTT has not attempted to identify any documents beyond this category that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced all communications by or copying Ms. Currier and her two superiors and many communications by or copying other CVS employees. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other

187

1  custodians, including individuals who WTT has identified as potential deponents (even

2  though they were not directly involved in the alleged transactions) and supplier support

3  mailboxes with whom WTT may have communicated. Light Decl. ¶ 12.

4      To the extent WTT seeks "*[a]ll*" documents "regarding" any "request that WTT

5  replace *any* goods delivered by WTT" (even if they do not relate to the claims at issue),

6  such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's

7  'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying

8  discovery seeking "'all documents' 'concerning or relating to' a variety of topics").

9  For example, CVS bought other goods from WTT that are not at issue, such as various

10 toys and vaccine card holders. Documents regarding these transactions are not

11 relevant.

12     Even if WTT could establish some marginal relevance of additional documents,

13 the additional documents WTT seeks are not remotely proportional to the needs of the

14 case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34.

15 WTT has not attempted to articulate how additional documents would be important to

16 resolving the action, or even what those additional documents may be.

17     WTT is further mistaken that CVS's response fails to comply with Rule 34 for

18 the same reasons as demonstrated above for Request No. 2, *see* p. 34.

19     For all these reasons, the Court should deny WTT's motion as to this request.

20         37.    Request No. 47

21             a.    *The Request*

22     "All DOCUMENTS, including all COMMUNICATIONS and ESI, that support

23 YOUR contention that YOU were entitled to a $1 million credit as of October 2020."

24             b.    *CVS's Response*

25     CVS incorporates and reasserts its preliminary statement and objections to

26 specific definitions set forth above as if fully stated in response to this request. CVS

27 further objects to this request to the extent it seeks information that is not proportional

28 to the needs of the case, such as documents that are unreasonably cumulative or

188

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

duplicative of documents sufficient to support CVS's contention that it was entitled to a $1 million credit as of October 2020. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's entitlement to the $1 million credit at issue in the TAC: (1) all communications between CVS and WTT (including its purported agents) that address the $1 million credit; and (2) all internal communications by those CVS employees primarily responsible for applying the $1 million credit that address the credit. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

and ESI, that support YOUR contention that YOU were entitled to a $1 million credit as of October 2020." In other words, this request seeks documents that go to the heart of WTT's claims and CVS's defenses and whether there was ever an agreement between the parties regarding such a discount and, if so, whether there were conditions that had to be met and whether those conditions were in fact met. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other categories of documents that should be produced in response to this request is inconsistent with CVS's obligations under Rule 26 and 34.

Regardless, in light of the fact that none of the objections have merit as discussed above, CVS should be compelled to supplement this response and produce all documents responsive to this request.

### d. *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

1    (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

2         The key documents supporting CVS's contention that it was entitled to a
3    $1 million credit as of October 2020 *are those by or copying Ms. Currier*—the *sole*
4    "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS
5    who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all*
6    the [masks] at issue," p. 62 above (emphasis added). Nevertheless, CVS agreed to
7    produce far broader categories of documents.

8         Specifically, CVS agreed to produce "copies of the following documents, to the
9    extent not privileged, for the period from April 1, 2020 (the month when WTT alleges
10   its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial
11   complaint in this action) sufficient to support CVS's entitlement to the $1 million
12   credit at issue in the TAC: (1) all communications between CVS and WTT (including
13   its purported agents) that address the $1 million credit; and (2) all internal
14   communications by those CVS employees primarily responsible for applying the $1
15   million credit that address the credit." Critically, WTT has not attempted to identify
16   any documents beyond these categories that are supposedly relevant and proportional
17   to the needs of the case.

18        As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority
19   of these documents, including all communications by or copying Ms. Currier and her
20   two superiors, many communications by or copying other CVS employees, and data
21   showing the credit at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword
22   search [underlying its initial production] should capture all responsive documents,"
23   p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for
24   production additional documents from other custodians, including individuals who
25   WTT has identified as potential deponents (even though they were not directly
26   involved in the alleged transactions), supplier support mailboxes with whom WTT
27   may have communicated, and data from various systems sufficient to show all
28   discounts and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "that support" in any way CVS's contention that it was entitled to a $1 million credit as of October 2020, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. Indeed, CVS has already stated all facts (and identified key documents) that support its contention that it was entitled to the credit in response to Interrogatory No. 6. *See* McKown Decl. Ex. D at 10–14. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be. Nor has WTT identified or produced a single document supporting its contention that CVS was not entitled to the $1 million credit. Light Decl. ¶ 19.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

38.    <u>Request No. 48</u>

a.    *<u>The Request</u>*

"All DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that YOU were not required to purchase 10 million blue 3-ply disposable face masks starting from October 2020 in order to receive a $1 million credit."

b.    *<u>CVS's Response</u>*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not proportional to the needs of the case, such as documents that are unreasonably cumulative or duplicative of documents sufficient to support CVS's contention that it was not

192

required to purchase 10 million blue 3-ply disposable face masks starting from October 2020 in order to receive a $1 million credit. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, 14, and 47.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's entitlement to the $1 million credit at issue in the TAC (including that CVS was not required to purchase 10 million blue 3-ply disposable face masks starting from October 2020 in order to receive the credit): (1) all communications between CVS and WTT (including its purported agents) that address the $1 million credit; and (2) all internal communications by those CVS employees primarily responsible for applying the $1 million credit that address the credit. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that YOU were not required to purchase 10 million blue 3-ply disposable face masks starting from October 2020 in order to receive a $1 million credit."  In other words, this request seeks documents that go to WTT's claims and CVS's defenses regarding the disputed discount taken by CVS in the amount of $1 million.  After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents.  CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other categories of documents that should be produced in response to this request is inconsistent with CVS's obligations under Rule 26 and 34.

Regardless, in light of the fact that none of the objections have merit as discussed above, CVS should be compelled to supplement this response and produce all documents responsive to this request.

d.    *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

194

demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

The key documents supporting CVS's contention that it was not required to purchase 10 million blue 3-ply disposable face masks starting from October 2020 in order to receive the $1 million credit *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's entitlement to the $1 million credit at issue in the TAC (including that CVS was not required to purchase 10 million blue 3-ply disposable face masks starting from October 2020 in order to receive the credit): (1) all communications between CVS and WTT (including its purported agents) that address the $1 million credit; and (2) all internal communications by those CVS employees primarily responsible for applying the $1 million credit that address the credit." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and data showing the credit at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all discounts and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "that support" in any way CVS's contention that it was not required to purchase 10 million blue 3-ply disposable face masks starting from October 2020 in order to receive the $1 million credit, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. Indeed, CVS has already stated all facts (and identified key documents) that support its contention that it was entitled to the credit in response to Interrogatory No. 6. *See* McKown Decl. Ex. D at 10–14. And CVS has not been able to locate a single document (including in all the external and internal communications collected and produced regarding the $1 million credit) that reference 10 million blue 3-ply masks, let alone condition the credit on CVS purchasing 10 million blue 3 ply masks. Nor has WTT identified or produced a single document supporting its contention that the $1 million credit was conditioned on CVS purchasing 10 million blue 3-ply masks. Light Decl. ¶ 19. Nor has WTT attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

39.    <u>Request No. 49</u>

a.    <u>*The Request*</u>

"All DOCUMENTS, including all COMMUNICATIONS and ESI, that support

196

1   YOUR contention that YOU were entitled to any discounts or credits after October
2   2020."

3            b.      *CVS's Response*

4            CVS incorporates and reasserts its preliminary statement and objections to
5   specific definitions set forth above as if fully stated in response to this request. CVS
6   further objects to this request to the extent it seeks information that is not relevant to
7   any party's claim or defense or not proportional to the needs of the case. For example,
8   the request is overbroad to the extent it relates to any discounts or credits other than
9   the $1,068,816 the TAC alleges CVS applied to face mask purchases from WTT in
10  2021, the only discounts/credits at issue in the TAC beyond the $1 million credit at
11  issue in Request Nos. 47–48. CVS further objects to the request to the extent it seeks
12  documents that are equally accessible to WTT because they are within its possession,
13  custody, or control. CVS further objects to the request to the extent it calls for
14  information solely within the possession, custody, or control of former employees of
15  CVS or witnesses over whom CVS has no lawful right of control. CVS further objects
16  to the request to the extent it seeks confidential and commercially-sensitive
17  information. To the extent CVS agrees to produce any such confidential or
18  commercially-sensitive information, it will do so only after the parties have agreed to
19  an appropriate stipulated protective order governing the disclosure and use of
20  confidential information in this action. CVS further objects to the request to the extent
21  it seeks information protected by the attorney-client privilege, the attorney work
22  product doctrine, the right of privacy, or any other applicable privilege or protection.
23  CVS further objects to this request to the extent it is unreasonably cumulative and
24  duplicative of Request Nos. 1–4, 7–10, 12, and 14.

25           Subject to and without waiving the foregoing objections, after a diligent search
26  and reasonable inquiry of documents within CVS's possession, custody, or control,
27  CVS will produce copies of the following documents, to the extent not privileged, for
28  the period from April 1, 2020 (the month when WTT alleges its relationship with CVS

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's entitlement to the $1,068,816 of credits at issue in the TAC: (1) all communications between CVS and WTT (including its purported agents) that address the credits; and (2) all internal communications by those CVS employees primarily responsible for applying the credits that address the credits. Based on the foregoing objections, CVS will not produce further information in response to this request.

c. <u>*WTT's Position*</u>

This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that YOU were entitled to any discounts or credits after October 2020." In other words, this request seeks documents that go to WTT's claims and CVS's defenses regarding the discounts in dispute and, specifically, documents that support CVS's contention that it was entitled to such disputed discounts. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine if there should be other categories of documents that should be produced in response to this request is inconsistent with CVS's obligations under Rule 26 and 34.

Regardless, in light of the fact that none of the objections have merit as discussed above, CVS should be compelled to supplement this response and produce all documents responsive to this request.

d.    *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

The key documents supporting CVS's contention that it was entitled to discounts or credits after October 2020 are regarding the $1,068,816 in discounts at issue in WTT's second written contract claim *by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's entitlement to the $1,068,816 of credits at issue in the TAC: (1) all communications between CVS and WTT (including its purported agents) that address the credits; and (2) all internal communications by those CVS employees primarily responsible for applying the credits that address the credits." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and data

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

showing the discounts/credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all discounts and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "that support" in any way CVS's contention that it was entitled to a $1 million credit as of October 2020, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. Indeed, CVS has already stated all facts (and identified key documents) that support its contention that it was entitled to the discounts in response to Interrogatory No. 6. *See* McKown Decl. Ex. D at 10–14. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be. Nor has WTT identified or produced a single document supporting its contention that CVS was not entitled to the $1 million credit. Light Decl. ¶ 19.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

40.    Request No. 50

a.    *The Request*

"All DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that YOU were not obligated to purchase 5 million red 3-ply

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    disposable face masks."

2                    b.    *CVS's Response*

3        CVS incorporates and reasserts its preliminary statement and objections to

4    specific definitions set forth above as if fully stated in response to this request. CVS

5    further objects to this request to the extent it seeks information that is not relevant to

6    any party's claim or defense or not proportional to the needs of the case. CVS further

7    objects to the request to the extent it seeks documents that are equally accessible to

8    WTT because they are within its possession, custody, or control. CVS further objects

9    to the request to the extent it calls for information solely within the possession,

10   custody, or control of former employees of CVS or witnesses over whom CVS has no

11   lawful right of control. CVS further objects to the request to the extent it seeks

12   confidential and commercially-sensitive information. To the extent CVS agrees to

13   produce any such confidential or commercially-sensitive information, it will do so only

14   after the parties have agreed to an appropriate stipulated protective order governing

15   the disclosure and use of confidential information in this action. CVS further objects

16   to the request to the extent it seeks information protected by the attorney-client

17   privilege, the attorney work product doctrine, the right of privacy, or any other

18   applicable privilege or protection. CVS further objects to this request to the extent it is

19   unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14–17.

20       Subject to and without waiving the foregoing objections, after a diligent search

21   and reasonable inquiry of documents within CVS's possession, custody, or control,

22   CVS will produce copies of the following documents, to the extent not privileged, for

23   the period from April 1, 2020 (the month when WTT alleges its relationship with CVS

24   began) to April 11, 2023 (the date WTT filed its initial complaint in this action)

25   sufficient to support CVS's contention that it was not obligated to purchase the 5

26   million red 3-ply disposable face masks at issue in the TAC: (1) all communications

27   between CVS and WTT (including its purported agents) that address red 3-ply

28   disposable face masks; (2) all purchase orders or agreements for such face masks

1    between CVS and WTT; and (3) all internal communications by those CVS employees

2    primarily responsible for negotiating, authorizing, and placing such face mask

3    purchase orders with WTT that address the terms of any such purchase orders or

4    agreements. Based on the foregoing objections, CVS will not produce further

5    information in response to this request.

6                              c.    *WTT's Position*

7        This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS

8    and ESI, that support YOUR contention that YOU were not obligated to purchase 5

9    million red 3-ply disposable face masks." This request seeks documents that go to the

10   heart of WTT's claims and CVS's defenses. After asserting the same slew of

11   boilerplate objections, CVS indicated that it will produce at some unidentified time

12   certain documents responsive to this request while refusing to produce other

13   responsive documents. CVS, however, failed to identify on which objection it is

14   basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or

15   which category of documents are being withheld.

16       During the parties' meet and confer, CVS refused to clarify whether documents

17   were being withheld and, if so, what category of documents were being withheld and

18   on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that

19   WTT had to identify any additional categories of documents responsive to this request

20   that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine

21   if there should be other categories of documents that should be produced in response

22   to this request is inconsistent with CVS's obligations under Rule 26 and 34.

23       Regardless, in light of the fact that none of the objections have merit as

24   discussed above, CVS should be compelled to supplement this response and produce

25   all documents responsive to this request.

26                              d.    *CVS's Position*

27       As an initial matter, the Court should deny WTT's motion as to this request for

28   the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

2      But even setting aside this procedural deficiency, CVS's objections (which are

3  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

4  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

5  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

6  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

7      The key communications supporting CVS's contention that it was not required

8  to purchase 5 million red 3-ply disposable face masks *are those by or copying Ms.*

9  *Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole*

10  individual at CVS who WTT alleges negotiated *all* the transactions and agreed or

11  promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). The other

12  key documents are all purchase orders or other agreements for red 3-ply masks

13  between CVS and WTT. Nevertheless, CVS agreed to produce far broader categories

14  of documents.

15      Specifically, CVS agreed to produce "copies of the following documents, to the

16  extent not privileged, for the period from April 1, 2020 (the month when WTT alleges

17  its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial

18  complaint in this action) sufficient to support CVS's contention that it was not

19  obligated to purchase the 5 million red 3-ply disposable face masks at issue in the

20  TAC: (1) all communications between CVS and WTT (including its purported agents)

21  that address red 3-ply disposable face masks; (2) all purchase orders or agreements for

22  such face masks between CVS and WTT; and (3) all internal communications by those

23  CVS employees primarily responsible for negotiating, authorizing, and placing such

24  face mask purchase orders with WTT that address the terms of any such purchase

25  orders or agreements." Critically, WTT has not attempted to identify any documents

26  beyond these categories that are supposedly relevant and proportional to the needs of

27  the case.

28      As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  of these documents, including all communications by or copying Ms. Currier and her

2  two superiors, many communications by or copying other CVS employees, and many

3  of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword

4  search [underlying its initial production] should capture all responsive documents,"

5  p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for

6  production additional documents from other custodians, including individuals who

7  WTT has identified as potential deponents (even though they were not directly

8  involved in the alleged transactions), supplier support mailboxes with whom WTT

9  may have communicated, and data from various systems sufficient to show all face

10 mask purchase orders submitted to WTT. Light Decl. ¶ 12.

11      To the extent WTT seeks "*[a]ll*" documents "that support" in any way CVS's

12 contention that it was not required to purchase 5 million red 3-ply disposable face

13 masks, such a "sweeping" and "hopelessly broad" request does "not comply with Rule

14 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2

15 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of

16 topics"), and is not remotely proportional to the needs of the case for the same reasons

17 as demonstrated above for Request No. 2, *see* pp. 33–34. CVS has not been able to

18 locate a single document (including in all the external and internal communications

19 collected and produced regarding red 3-ply masks) that suggest it was obligated to

20 purchase 5 million red 3-ply masks. Nor has WTT identified or produced a single

21 document supporting such an obligation. Light Decl. ¶ 19. Nor has WTT attempted to

22 articulate how additional documents would be important to resolving the action, or

23 even what those additional documents may be.

24      WTT is further mistaken that CVS's response fails to comply with Rule 34 for

25 the same reasons as demonstrated above for Request No. 2, *see* p. 34.

26      For all these reasons, the Court should deny WTT's motion as to this request.

27 ////

28 ////

41.    <u>Request No. 51</u>

  a. *<u>The Request</u>*

  "All DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that YOU were not obligated to purchase 5 million multi-color 3-ply disposable face masks."

  b. *<u>CVS's Response</u>*

  CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14–17.

  Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action)

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  sufficient to support CVS's contention that it was not obligated to purchase the 5
2  million red 3-ply disposable face masks at issue in the TAC: (1) all communications
3  between CVS and WTT (including its purported agents) that address multi-color 3-ply
4  disposable face masks; (2) all purchase orders or agreements for such face masks
5  between CVS and WTT; and (3) all internal communications by those CVS employees
6  primarily responsible for negotiating, authorizing, and placing such face mask
7  purchase orders with WTT that address the terms of any such purchase orders or
8  agreements. Based on the foregoing objections, CVS will not produce further
9  information in response to this request.

10            c.    *WTT's Position*

11        This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS
12  and ESI, that support YOUR contention that YOU were not obligated to purchase 5
13  million multi-color 3-ply disposable face masks."  This request seeks documents that
14  go to the heart of WTT's claims and CVS's defenses.  After asserting the same slew
15  of boilerplate objections, CVS indicated that it will produce at some unidentified time
16  certain documents responsive to this request while refusing to produce other
17  responsive documents.  CVS, however, failed to identify on which objection it is
18  basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or
19  which category of documents are being withheld.

20        During the parties' meet and confer, CVS refused to clarify whether documents
21  were being withheld and, if so, what category of documents were being withheld and
22  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that
23  WTT had to identify any additional categories of documents responsive to this request
24  that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine
25  if there should be other categories of documents that should be produced in response
26  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

27        Regardless, in light of the fact that none of the objections have merit as
28  discussed above, CVS should be compelled to supplement this response and produce

206

all documents responsive to this request.

### d.    *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

The key communications supporting CVS's contention that it was not required to purchase 5 million multi-color 3-ply disposable face masks *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). The other key documents are all purchase orders or other agreements for multi-color 3-ply masks between CVS and WTT. Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's contention that it was not obligated to purchase the 5 million multi-color[6] 3-ply disposable face masks at issue in the TAC: (1) all communications between CVS and WTT (including its purported agents) that address multi-color 3-ply disposable face masks; (2) all purchase orders or agreements for such face masks between CVS and WTT; and (3) all internal

---

[6] While CVS's initial response inadvertently stated "red" instead of "multi-color" here, CVS's amended response corrected that typo. Light Decl. Ex. 5 at 69.

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  communications by those CVS employees primarily responsible for negotiating,
2  authorizing, and placing such face mask purchase orders with WTT that address the
3  terms of any such purchase orders or agreements." Critically, WTT has not attempted
4  to identify any documents beyond these categories that are supposedly relevant and
5  proportional to the needs of the case.

6  As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority
7  of these documents, including all communications by or copying Ms. Currier and her
8  two superiors, many communications by or copying other CVS employees, and many
9  of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword
10 search [underlying its initial production] should capture all responsive documents,"
11 p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for
12 production additional documents from other custodians, including individuals who
13 WTT has identified as potential deponents (even though they were not directly
14 involved in the alleged transactions), supplier support mailboxes with whom WTT
15 may have communicated, and data from various systems sufficient to show all face
16 mask purchase orders submitted to WTT. Light Decl. ¶ 12.

17 To the extent WTT seeks "*[a]ll*" documents "that support" in any way CVS's
18 contention that it was not required to purchase 5 million multi-color 3-ply disposable
19 face masks, such a "sweeping" and "hopelessly broad" request does "not comply with
20 Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2
21 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of
22 topics"), and is not remotely proportional to the needs of the case for the same reasons
23 as demonstrated above for Request No. 2, *see* pp. 33–34. CVS has not been able to
24 locate a single document (including in all the external and internal communications
25 collected and produced regarding multi-color 3-ply masks) that suggest it was
26 obligated to purchase 5 million multi-color 3-ply masks. Nor has WTT identified or
27 produced a single document supporting such an obligation. Light Decl. ¶ 19. Nor has
28 WTT attempted to articulate how additional documents would be important to

1  resolving the action, or even what those additional documents may be.

2      WTT is further mistaken that CVS's response fails to comply with Rule 34 for

3  the same reasons as demonstrated above for Request No. 2, *see* p. 34.

4      For all these reasons, the Court should deny WTT's motion as to this request.

5          42.    Request No. 52

6              a.    *The Request*

7      "All DOCUMENTS, including all COMMUNICATIONS and ESI, that support

8  YOUR contention that YOU were not obligated to purchase 1 million black cloth face

9  masks."

10             b.    *CVS's Response*

11     CVS incorporates and reasserts its preliminary statement and objections to

12 specific definitions set forth above as if fully stated in response to this request. CVS

13 further objects to this request to the extent it seeks information that is not relevant to

14 any party's claim or defense or not proportional to the needs of the case. CVS further

15 objects to the request to the extent it seeks documents that are equally accessible to

16 WTT because they are within its possession, custody, or control. CVS further objects

17 to the request to the extent it calls for information solely within the possession,

18 custody, or control of former employees of CVS or witnesses over whom CVS has no

19 lawful right of control. CVS further objects to the request to the extent it seeks

20 confidential and commercially-sensitive information. To the extent CVS agrees to

21 produce any such confidential or commercially-sensitive information, it will do so only

22 after the parties have agreed to an appropriate stipulated protective order governing

23 the disclosure and use of confidential information in this action. CVS further objects

24 to the request to the extent it seeks information protected by the attorney-client

25 privilege, the attorney work product doctrine, the right of privacy, or any other

26 applicable privilege or protection. CVS further objects to this request to the extent it is

27 unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14–17.

28     Subject to and without waiving the foregoing objections, after a diligent search

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's contention that it was not obligated to purchase the 1 million black cloth face masks at issue in the TAC: (1) all communications between CVS and WTT (including its purported agents) that address black cloth face masks; (2) all purchase orders or agreements for such face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing such face mask purchase orders with WTT that address the terms of any such purchase orders or agreements. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that YOU were not obligated to purchase 1 million black cloth face masks."  This request seeks documents that go to the heart of WTT's claims and CVS's defenses.  After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents.  CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

if there should be other categories of documents that should be produced in response to this request is inconsistent with CVS's obligations under Rule 26 and 34.

Regardless, in light of the fact that none of the objections have merit as discussed above, CVS should be compelled to supplement this response and produce all documents responsive to this request.

### d.    *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

The key communications supporting CVS's contention that it was not required to purchase 1 million black cloth face masks *are those by or copying Ms. Currier—* the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). The other key documents are all purchase orders or other agreements for black cloth masks between CVS and WTT. Nevertheless, CVS agreed to produce far broader categories of documents.

Specifically, CVS agreed to produce "copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's contention that it was not obligated to purchase the 1 million black cloth face masks at issue in the TAC: (1) all communications between CVS and WTT (including its purported agents) that address black cloth face masks; (2) all purchase orders or agreements for such face masks

211

1 between CVS and WTT; and (3) all internal communications by those CVS employees

2 primarily responsible for negotiating, authorizing, and placing such face mask

3 purchase orders with WTT that address the terms of any such purchase orders or

4 agreements." Critically, WTT has not attempted to identify any documents beyond

5 these categories that are supposedly relevant and proportional to the needs of the case.

6       As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority

7 of these documents, including all communications by or copying Ms. Currier and her

8 two superiors, many communications by or copying other CVS employees, and many

9 of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword

10 search [underlying its initial production] should capture all responsive documents,"

11 p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for

12 production additional documents from other custodians, including individuals who

13 WTT has identified as potential deponents (even though they were not directly

14 involved in the alleged transactions), supplier support mailboxes with whom WTT

15 may have communicated, and data from various systems sufficient to show all face

16 mask purchase orders submitted to WTT. Light Decl. ¶ 12.

17       To the extent WTT seeks "*[a]ll*" documents "that support" in any way CVS's

18 contention that it was not required to purchase 1 million black cloth face masks, such

19 a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's

20 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying

21 discovery seeking "'all documents' 'concerning or relating to' a variety of topics"),

22 and is not remotely proportional to the needs of the case for the same reasons as

23 demonstrated above for Request No. 2, *see* pp. 33–34. CVS has not been able to locate

24 a single document (including in all the external and internal communications collected

25 and produced regarding black cloth masks) that suggest it was obligated to purchase

26 any of the black cloth masks at issue. Nor has WTT identified or produced a single

27 document supporting such an obligation. Light Decl. ¶ 19. Nor has WTT attempted to

28 articulate how additional documents would be important to resolving the action, or

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    even what those additional documents may be.

2          WTT is further mistaken that CVS's response fails to comply with Rule 34 for

3    the same reasons as demonstrated above for Request No. 2, *see* p. 34.

4          For all these reasons, the Court should deny WTT's motion as to this request.

5          43.    Request No. 53

6                 a.    *The Request*

7          "All DOCUMENTS, including all COMMUNICATIONS and ESI, that support

8    YOUR contention that YOU were not obligated to purchase 2.5 million kid's themed

9    face masks."

10                b.    *CVS's Response*

11         CVS incorporates and reasserts its preliminary statement and objections to

12   specific definitions set forth above as if fully stated in response to this request. CVS

13   further objects to this request to the extent it seeks information that is not relevant to

14   any party's claim or defense or not proportional to the needs of the case. CVS further

15   objects to the request to the extent it seeks documents that are equally accessible to

16   WTT because they are within its possession, custody, or control. CVS further objects

17   to the request to the extent it calls for information solely within the possession,

18   custody, or control of former employees of CVS or witnesses over whom CVS has no

19   lawful right of control. CVS further objects to the request to the extent it seeks

20   confidential and commercially-sensitive information. To the extent CVS agrees to

21   produce any such confidential or commercially-sensitive information, it will do so only

22   after the parties have agreed to an appropriate stipulated protective order governing

23   the disclosure and use of confidential information in this action. CVS further objects

24   to the request to the extent it seeks information protected by the attorney-client

25   privilege, the attorney work product doctrine, the right of privacy, or any other

26   applicable privilege or protection. CVS further objects to this request to the extent it is

27   unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14–17.

28         Subject to and without waiving the foregoing objections, after a diligent search

213

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1   and reasonable inquiry of documents within CVS's possession, custody, or control,

2   CVS will produce copies of the following documents, to the extent not privileged, for

3   the period from April 1, 2020 (the month when WTT alleges its relationship with CVS

4   began) to April 11, 2023 (the date WTT filed its initial complaint in this action)

5   sufficient to support CVS's contention that it was not obligated to purchase the 2.5

6   million kids' themed face masks at issue in the TAC: (1) all communications between

7   CVS and WTT (including its purported agents) that address kids' themed face masks;

8   (2) all purchase orders or agreements for such face masks between CVS and WTT;

9   and (3) all internal communications by those CVS employees primarily responsible

10  for negotiating, authorizing, and placing such face mask purchase orders with WTT

11  that address the terms of any such purchase orders or agreements. Based on the

12  foregoing objections, CVS will not produce further information in response to this

13  request.

14                    c.    *WTT's Position*

15          This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS

16  and ESI, that support YOUR contention that YOU were not obligated to purchase 2.5

17  million kid's themed face masks."  This request seeks documents that go to the heart

18  of WTT's claims and CVS's defenses.  After asserting the same slew of boilerplate

19  objections, CVS indicated that it will produce at some unidentified time certain

20  documents responsive to this request while refusing to produce other responsive

21  documents.  CVS, however, failed to identify on which objection it is basing its refusal

22  to produce certain documents as requested by Rule 34(b)(2)(C) or which category of

23  documents are being withheld.

24          During the parties' meet and confer, CVS refused to clarify whether documents

25  were being withheld and, if so, what category of documents were being withheld and

26  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

27  WTT had to identify any additional categories of documents responsive to this request

28  that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

1  if there should be other categories of documents that should be produced in response
2  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

3      Regardless, in light of the fact that none of the objections have merit as
4  discussed above, CVS should be compelled to supplement this response and produce
5  all documents responsive to this request.

6              d.    _CVS's Position_

7      As an initial matter, the Court should deny WTT's motion as to this request for
8  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because
9  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

10     But even setting aside this procedural deficiency, CVS's objections (which are
11 *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to
12 demonstrate that the requested discovery is *both* relevant to the claims or defenses in
13 this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5
14 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

15     The key communications supporting CVS's contention that it was not required
16 to purchase the kids' themed masks at issue *are those by or copying Ms. Currier*—the
17 *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at
18 CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy
19 "*all* the [masks] at issue," p. 62 above (emphasis added). The other key documents are
20 all purchase orders or other agreements for the kids' themed masks between CVS and
21 WTT. Nevertheless, CVS agreed to produce far broader categories of documents.

22     Specifically, CVS agreed to produce "copies of the following documents, to the
23 extent not privileged, for the period from April 1, 2020 (the month when WTT alleges
24 its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial
25 complaint in this action) sufficient to support CVS's contention that it was not
26 obligated to purchase the 2.5 million kids' themed face masks at issue in the TAC:
27 (1) all communications between CVS and WTT (including its purported agents) that
28 address kids' themed face masks; (2) all purchase orders or agreements for such face

masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing such face mask purchase orders with WTT that address the terms of any such purchase orders or agreements." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and many of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "that support" in any way CVS's contention that it was not required to purchase 2.5 million kids' themed face masks, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. CVS has not been able to locate a single document (including in all the external and internal communications collected and produced regarding kids' themed masks) that suggest it was obligated to purchase any of the kids' themed masks at issue. Nor has WTT identified or produced a single document supporting such an obligation. Light Decl. ¶ 19. Nor has WTT attempted to articulate how additional documents would be important to resolving the action, or

1  even what those additional documents may be.

2      WTT is further mistaken that CVS's response fails to comply with Rule 34 for

3  the same reasons as demonstrated above for Request No. 2, *see* p. 34.

4      For all these reasons, the Court should deny WTT's motion as to this request.

5      44.   <u>Request No. 54</u>

6      a.   *<u>The Request</u>*

7      "All DOCUMENTS, including all COMMUNICATIONS and ESI, that support

8  YOUR contention that WTT did not agree to sell specially licensed kids' themed face

9  masks exclusively to YOU."

10      b.   *<u>CVS's Response</u>*

11      CVS incorporates and reasserts its preliminary statement and objections to

12  specific definitions set forth above as if fully stated in response to this request. CVS

13  further objects to this request to the extent it seeks information that is not relevant to

14  any party's claim or defense or not proportional to the needs of the case. CVS further

15  objects to the request to the extent it seeks documents that are equally accessible to

16  WTT because they are within its possession, custody, or control. CVS further objects

17  to the request to the extent it calls for information solely within the possession,

18  custody, or control of former employees of CVS or witnesses over whom CVS has no

19  lawful right of control. CVS further objects to the request to the extent it seeks

20  confidential and commercially-sensitive information. To the extent CVS agrees to

21  produce any such confidential or commercially-sensitive information, it will do so only

22  after the parties have agreed to an appropriate stipulated protective order governing

23  the disclosure and use of confidential information in this action. CVS further objects

24  to the request to the extent it seeks information protected by the attorney-client

25  privilege, the attorney work product doctrine, the right of privacy, or any other

26  applicable privilege or protection. CVS further objects to this request to the extent it is

27  unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, and 14–17.

28      Subject to and without waiving the foregoing objections, after a diligent search

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's contention that CVS and WTT did not enter into an agreement for the exclusive sale of licensed kids' themed face masks by WTT to CVS: (1) all communications between CVS and WTT (including its purported agents) that address kids' themed face masks; (2) all purchase orders or agreements for such face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing such face mask purchase orders with WTT that address the terms of any such purchase orders or agreements. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.   *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that WTT did not agree to sell specially licensed kids' themed face masks exclusively to YOU." This request seeks documents that go to the heart of WTT's claims and CVS's defenses. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by Rule 34(b)(2)(C) or which category of documents are being withheld.

During the parties' meet and confer, CVS refused to clarify whether documents were being withheld and, if so, what category of documents were being withheld and on what grounds. McKown Decl., ¶ 7, Ex. H. Instead, CVS took the position that WTT had to identify any additional categories of documents responsive to this request that should be produced. *Id.* CVS's attempt to shift the burden onto WTT to determine

1    if there should be other categories of documents that should be produced in response

2    to this request is inconsistent with CVS's obligations under Rule 26 and 34.

3    Regardless, in light of the fact that none of the objections have merit as

4    discussed above, CVS should be compelled to supplement this response and produce

5    all documents responsive to this request.

6    d.    *CVS's Position*

7    As an initial matter, the Court should deny WTT's motion as to this request for

8    the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

9    [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

10    But even setting aside this procedural deficiency, CVS's objections (which are

11    *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

12    demonstrate that the requested discovery is *both* relevant to the claims or defenses in

13    this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

14    (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

15    The key communications supporting CVS's contention that WTT did not agree

16    to sell specially licensed kids' themed face masks exclusively to CVS *are those by or*

17    *copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above,

18    and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and

19    agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added).

20    The other key documents are all purchase orders or other agreements for the kids'

21    themed masks between CVS and WTT. Nevertheless, CVS agreed to produce far

22    broader categories of documents.

23    Specifically, CVS agreed to produce "copies of the following documents, to the

24    extent not privileged, for the period from April 1, 2020 (the month when WTT alleges

25    its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial

26    complaint in this action) sufficient to support CVS's contention that CVS and WTT

27    did not enter into an agreement for the exclusive sale of licensed kids' themed face

28    masks by WTT to CVS: (1) all communications between CVS and WTT (including its

purported agents) that address kids' themed face masks; (2) all purchase orders or agreements for such face masks between CVS and WTT; and (3) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing such face mask purchase orders with WTT that address the terms of any such purchase orders or agreements." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, and many of the purchase orders. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "that support" in any way CVS's contention that WTT did not agree to sell specially licensed kids' themed face masks exclusively to CVS, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement," *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"), and is not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. CVS has not been able to locate a single document (including in all the external and internal communications collected and produced regarding kids' themed masks) that suggest WTT agreed to sell specially licensed kids' themed face masks exclusively to CVS.

1  Nor has WTT identified or produced a single document supporting such an obligation.

2  Light Decl. ¶ 19. Nor has WTT attempted to articulate how additional documents

3  would be important to resolving the action, or even what those additional documents

4  may be.

5       WTT is further mistaken that CVS's response fails to comply with Rule 34 for

6  the same reasons as demonstrated above for Request No. 2, *see* p. 34.

7       For all these reasons, the Court should deny WTT's motion as to this request.

8          45.   <u>Request No. 55</u>

9           a.   <u>*The Request*</u>

10       "All DOCUMENTS, including all COMMUNICATIONS and ESI, that support

11  YOUR contention that YOU do not owe WTT any money."

12           b.   <u>*CVS's Response*</u>

13       CVS incorporates and reasserts its preliminary statement and objections to

14  specific definitions set forth above as if fully stated in response to this request. CVS

15  further objects to this request to the extent it seeks information that is not relevant to

16  any party's claim or defense or not proportional to the needs of the case. CVS further

17  objects to the request to the extent it seeks documents that are equally accessible to

18  WTT because they are within its possession, custody, or control. CVS further objects

19  to the request to the extent it calls for information solely within the possession,

20  custody, or control of former employees of CVS or witnesses over whom CVS has no

21  lawful right of control. CVS further objects to the request to the extent it seeks

22  confidential and commercially-sensitive information. To the extent CVS agrees to

23  produce any such confidential or commercially-sensitive information, it will do so only

24  after the parties have agreed to an appropriate stipulated protective order governing

25  the disclosure and use of confidential information in this action. CVS further objects

26  to the request to the extent it seeks information protected by the attorney-client

27  privilege, the attorney work product doctrine, the right of privacy, or any other

28  applicable privilege or protection. CVS further objects to this request to the extent it is

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, 14–17, 23–26, 40, and 47–54.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's contention that it does not owe WTT any money claimed in the TAC: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT; (2) all purchase orders or agreements for face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that YOU do not owe WTT any money." This request seeks documents that go to the heart of WTT's claims and CVS's defenses. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents. CVS, however, failed to identify on

1  which objection it is basing its refusal to produce certain documents as requested by

2  Rule 34(b)(2)(C) or which category of documents are being withheld.

3  During the parties' meet and confer, CVS refused to clarify whether documents

4  were being withheld and, if so, what category of documents were being withheld and

5  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

6  WTT had to identify any additional categories of documents responsive to this request

7  that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

8  if there should be other categories of documents that should be produced in response

9  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

10  Regardless, in light of the fact that none of the objections have merit as

11  discussed above, CVS should be compelled to supplement this response and produce

12  all documents responsive to this request.

13  d.    *CVS's Position*

14  As an initial matter, the Court should deny WTT's motion as to this request for

15  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

16  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

17  But even setting aside this procedural deficiency, CVS's objections (which are

18  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

19  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

20  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

21  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

22  As shown above, *see* p. 6, this action is limited to three categories of claims:

23  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

24  in October 2020 for face masks Sarah Currier previously ordered that was supposedly

25  conditioned on her alleged oral agreement or promise during a call in October 2020 to

26  buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

27  CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

28  previously ordered that was supposedly related to a request for additional funding by

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

2    alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

3    promised to buy various masks during calls in August, October, and December 2020

4    and January 2021. TAC ¶¶ 87–197.

5        Thus, the key communications supporting CVS's contention that it does not owe

6    WTT any money claimed in the action *are those by or copying Ms. Currier*—the *sole*

7    "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS

8    who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all*

9    the [masks] at issue," p. 62 above (emphasis added). The other key documents are the

10   purchase orders or agreements for the masks, credits, and discounts at issue, data

11   showing the payments at issue, and data showing the discounts and credits at issue.

12   Nevertheless, CVS agreed to produce far broader categories of documents.

13       Specifically, CVS agreed to produce "copies of the following documents, to the

14   extent not privileged, for the period from April 1, 2020 (the month when WTT alleges

15   its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial

16   complaint in this action) sufficient to support CVS's contention that it does not owe

17   WTT any money claimed in the TAC: (1) all communications between CVS and WTT

18   (including its purported agents) regarding WTT's actual or potential supply of face

19   masks, actual or potential face mask transactions with WTT, or any actual or potential

20   discounts or credits for face mask transactions with WTT; (2) all purchase orders or

21   agreements for face masks between CVS and WTT; (3) documents sufficient to show

22   all payments that CVS made to WTT for such masks; (4) documents sufficient to show

23   all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks;

24   and (5) all internal communications by those CVS employees primarily responsible

25   for negotiating, authorizing, and placing face mask purchase orders with WTT

26   regarding WTT's actual or potential supply of face masks, actual or potential face

27   mask transactions with WTT, or any actual or potential discounts or credits for face

28   mask transactions with WTT." Critically, WTT has not attempted to identify any

224

1    documents beyond these categories that are supposedly relevant and proportional to
2    the needs of the case.

3        As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority
4    of these documents, including all communications by or copying Ms. Currier and her
5    two superiors, many communications by or copying other CVS employees, many of
6    the purchase orders, and data showing many of the payments and all the discounts and
7    credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search
8    [underlying its initial production] should capture all responsive documents," p. 23
9    above. This should end the matter. Further, CVS is collecting and reviewing for
10    production additional documents from other custodians, including individuals who
11    WTT has identified as potential deponents (even though they were not directly
12    involved in the alleged transactions), supplier support mailboxes with whom WTT
13    may have communicated, and data from various systems sufficient to show all face
14    mask purchase orders submitted to WTT, all payments made to WTT, and all discounts
15    and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

16        To the extent WTT seeks "*[a]ll*" documents that "support" in any way CVS's
17    contention that it does "not owe WTT any money," such a "sweeping" and "hopelessly
18    broad" request does "not comply with Rule 34's 'reasonable particularity'
19    requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all
20    documents' 'concerning or relating to' a variety of topics"). Many (if not most)
21    documents related to WTT have no tendency to make any fact "of consequence in
22    determining the action" more or less probable, Fed. R. Evid. 401, for the same reasons
23    as demonstrated above for Request No. 2, *see* p. 32. For example, CVS bought other
24    goods from WTT that are not at issue, such as various toys and vaccine card holders.
25    Documents regarding these transactions are not relevant even though they show CVS
26    does not owe WTT money for those transactions.

27        Even if WTT could establish some marginal relevance of the information, the
28    additional documents WTT seeks are not remotely proportional to the needs of the

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

46.    Request No. 56

a.    *The Request*

"All DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that WTT owes YOU any money."

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, 14–17, 23–

226

26, 40, and 47–55.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following documents, to the extent not privileged, for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) sufficient to support CVS's contention that WTT owes it money for discounts/credits due on face mask purchases: (1) all communications between CVS and WTT (including its purported agents) regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT; (2) all purchase orders or agreements for face masks between CVS and WTT; (3) documents sufficient to show all payments that CVS made to WTT for such masks; (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS claimed from WTT for such masks; and (5) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT. Based on the foregoing objections, CVS will not produce further information in response to this request.

c.    *WTT's Position*

This request asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS and ESI, that support YOUR contention that WTT owes YOU any money."  This request seeks documents that go to the heart of WTT's claims and CVS's defenses. After asserting the same slew of boilerplate objections, CVS indicated that it will produce at some unidentified time certain documents responsive to this request while refusing to produce other responsive documents.  CVS, however, failed to identify on which objection it is basing its refusal to produce certain documents as requested by

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    Rule 34(b)(2)(C) or which category of documents are being withheld.

2        During the parties' meet and confer, CVS refused to clarify whether documents

3    were being withheld and, if so, what category of documents were being withheld and

4    on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

5    WTT had to identify any additional categories of documents responsive to this request

6    that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

7    if there should be other categories of documents that should be produced in response

8    to this request is inconsistent with CVS's obligations under Rule 26 and 34.

9        Regardless, in light of the fact that none of the objections have merit as

10    discussed above, CVS should be compelled to supplement this response and produce

11    all documents responsive to this request.

12                    d.    *CVS's Position*

13        As an initial matter, the Court should deny WTT's motion as to this request for

14    the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

15    [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

16        But even setting aside this procedural deficiency, CVS's objections (which are

17    *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

18    demonstrate that the requested discovery is *both* relevant to the claims or defenses in

19    this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

20    (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

21        As shown above, *see* p. 6, this action is limited to three categories of claims:

22    (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

23    in October 2020 for face masks Sarah Currier previously ordered that was supposedly

24    conditioned on her alleged oral agreement or promise during a call in October 2020 to

25    buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

26    CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

27    previously ordered that was supposedly related to a request for additional funding by

28    Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or
2    promised to buy various masks during calls in August, October, and December 2020
3    and January 2021. TAC ¶¶ 87–197. CVS also intends to assert counterclaims that WTT
4    owes it an outstanding debit balance for the $1,068,816 in discounts underlying WTT's
5    second written contract claim that CVS applied but WTT has not paid pursuant to the
6    parties' bill-back agreement.

7        Thus, the key communications supporting CVS's contention that WTT owes it
8    money are related to the $1,068,816 in discounts at issue *by or copying Ms. Currier*—
9    the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual
10   at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to
11   buy "*all* the [masks] at issue," p. 62 above (emphasis added). The other key documents
12   are the purchase orders or agreements for the masks, credits, and discounts at issue,
13   data showing the payments at issue, and data showing the discounts and credits at
14   issue. Nevertheless, CVS agreed to produce far broader categories of documents.

15       Specifically, CVS agreed to produce "copies of the following documents, to the
16   extent not privileged, for the period from April 1, 2020 (the month when WTT alleges
17   its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial
18   complaint in this action) sufficient to support CVS's contention that WTT owes it
19   money for discounts/credits due on face mask purchases: (1) all communications
20   between CVS and WTT (including its purported agents) regarding WTT's actual or
21   potential supply of face masks, actual or potential face mask transactions with WTT,
22   or any actual or potential discounts or credits for face mask transactions with WTT;
23   (2) all purchase orders or agreements for face masks between CVS and WTT;
24   (3) documents sufficient to show all payments that CVS made to WTT for such masks;
25   (4) documents sufficient to show all discounts/credits at issue in the TAC that CVS
26   claimed from WTT for such masks; and (5) all internal communications by those CVS
27   employees primarily responsible for negotiating, authorizing, and placing face mask
28   purchase orders with WTT regarding WTT's actual or potential supply of face masks,

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1    actual or potential face mask transactions with WTT, or any actual or potential
2    discounts or credits for face mask transactions with WTT." Critically, WTT has not
3    attempted to identify any documents beyond these categories that are supposedly
4    relevant and proportional to the needs of the case.

5        As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority
6    of these documents, including all communications by or copying Ms. Currier and her
7    two superiors, many communications by or copying other CVS employees, many of
8    the purchase orders, and data showing many of the payments and all the discounts and
9    credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search
10   [underlying its initial production] should capture all responsive documents," p. 23
11   above. This should end the matter. Further, CVS is collecting and reviewing for
12   production additional documents from other custodians, including individuals who
13   WTT has identified as potential deponents (even though they were not directly
14   involved in the alleged transactions), supplier support mailboxes with whom WTT
15   may have communicated, and data from various systems sufficient to show all face
16   mask purchase orders submitted to WTT, all payments made to WTT, and all discounts
17   and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

18       To the extent WTT seeks "*[a]ll*" documents that "support" in any way CVS's
19   contention that WTT owes it money, such a "sweeping" and "hopelessly broad"
20   request does "not comply with Rule 34's 'reasonable particularity' requirement,"
21   *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents'
22   'concerning or relating to' a variety of topics"), and is not remotely proportional to the
23   needs of the case for the same reasons as demonstrated above for Request No. 2, *see*
24   pp. 33–34. WTT has not attempted to articulate how additional documents would be
25   important to resolving the action, or even what those additional documents may be.

26       WTT is further mistaken that CVS's response fails to comply with Rule 34 for
27   the same reasons as demonstrated above for Request No. 2, *see* p. 34.

28       For all these reasons, the Court should deny WTT's motion as to this request.

47.    Request No. 57

    a.    *The Request*

"All DOCUMENTS evidencing, discussing, explaining, or referencing the reasons why YOU stopped ordering goods from WTT."

    b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection. CVS further objects to this request to the extent it is unreasonably cumulative and duplicative of Request Nos. 1–4, 7–10, 12, 14–17, and 23–26.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1  communications between CVS and WTT (including its purported agents) that address

2  any reasons why CVS stopped ordering face masks from WTT; and (2) all internal

3  communications by those CVS employees primarily responsible for negotiating,

4  authorizing, and placing face mask purchase orders with WTT that address any reasons

5  why CVS stopped ordering face masks from WTT. Based on the foregoing objections,

6  CVS will not produce further information in response to this request.

7                              c.    *WTT's Position*

8          This request asks for "[a]ll DOCUMENTS evidencing, discussing, explaining,

9  or referencing the reasons why YOU stopped ordering goods from WTT."  This

10  request seeks documents that go to the heart of WTT's claims and CVS's defenses.

11  After asserting the same slew of boilerplate objections, CVS indicated that it will

12  produce at some unidentified time certain documents responsive to this request while

13  refusing to produce other responsive documents.  CVS, however, failed to identify on

14  which objection it is basing its refusal to produce certain documents as requested by

15  Rule 34(b)(2)(C) or which category of documents are being withheld.

16          During the parties' meet and confer, CVS refused to clarify whether documents

17  were being withheld and, if so, what category of documents were being withheld and

18  on what grounds.  McKown Decl., ¶ 7, Ex. H.  Instead, CVS took the position that

19  WTT had to identify any additional categories of documents responsive to this request

20  that should be produced.  *Id.* CVS's attempt to shift the burden onto WTT to determine

21  if there should be other categories of documents that should be produced in response

22  to this request is inconsistent with CVS's obligations under Rule 26 and 34.

23          Regardless, in light of the fact that none of the objections have merit as

24  discussed above, CVS should be compelled to supplement this response and produce

25  all documents responsive to this request.

26                              d.    *CVS's Position*

27          As an initial matter, the Court should deny WTT's motion as to this request for

28  the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

232

1  [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

2       But even setting aside this procedural deficiency, CVS's objections (which are

3  *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to

4  demonstrate that the requested discovery is *both* relevant to the claims or defenses in

5  this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5

6  (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

7       As shown above, *see* p. 6, this action is limited to three categories of claims:

8  (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit

9  in October 2020 for face masks Sarah Currier previously ordered that was supposedly

10 conditioned on her alleged oral agreement or promise during a call in October 2020 to

11 buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that

12 CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks

13 previously ordered that was supposedly related to a request for additional funding by

14 Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the

15 alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or

16 promised to buy various masks during calls in August, October, and December 2020

17 and January 2021. TAC ¶¶ 87–197.

18      The reasons why CVS stopped ordering masks do not got to the elements of any

19 of these contract and promissory estoppel claims and, therefore, are irrelevant for the

20 same reasons as demonstrated above for Request No. 13, *see* pp. 70–71. Again, this is

21 *not a tort case* in which intent is an element and motive may come into play. *See*

22 *Stockton Mortgage*, 233 Cal. App. 4th at 453 ("The elements of a breach of oral

23 contract claim are the same as those for a breach of written contract: a contract; its

24 performance or excuse for nonperformance; breach; and damages."); *Mend Health*,

25 588 F. Supp. 3d at 1056 (C.D. Cal. 2022) ("In California, the elements of promissory

26 estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party

27 to whom the promise is made; (3) the reliance must be both reasonable and foreseeable;

28 and (4) the party asserting the estoppel must be injured by his reliance.").

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

However, even if the information were relevant (it is not), the key documents regarding why CVS stopped ordering face masks from WTT *are those by or copying Ms. Currier*—the *sole* "key witness" that acted on behalf of CVS, p. 3 above, and the *sole* individual at CVS who WTT alleges negotiated *all* the transactions and agreed or promised to buy "*all* the [masks] at issue," p. 62 above (emphasis added). CVS agreed to produce far broader categories of documents than this.

Specifically, CVS agreed to produce "copies of the following for the period from April 1, 2020 (the month when WTT alleges its relationship with CVS began) to April 11, 2023 (the date WTT filed its initial complaint in this action) to the extent not privileged: (1) all communications between CVS and WTT (including its purported agents) that address any reasons why CVS stopped ordering face masks from WTT; and (2) all internal communications by those CVS employees primarily responsible for negotiating, authorizing, and placing face mask purchase orders with WTT that address any reasons why CVS stopped ordering face masks from WTT." Critically, WTT has not attempted to identify any documents beyond these categories that are supposedly relevant and proportional to the needs of the case.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors and many communications by or copying other CVS employees. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions) and supplier support mailboxes with whom WTT may have communicated. Light Decl. ¶ 12.

To the extent WTT seeks "*[a]ll*" documents "evidencing, discussing, explaining or referencing" in any way the reasons why CVS stopped ordering *any* "goods" from

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

WTT, such a "sweeping" and "hopelessly broad" request does "not comply with Rule 34's 'reasonable particularity' requirement." *Koeper*, 2018 WL 6016915, at *2 (denying discovery seeking "'all documents' 'concerning or relating to' a variety of topics"). For example, CVS bought other goods from WTT that are not at issue, such as various toys and vaccine card holders. Documents regarding these transactions likewise are not relevant.

Even if WTT could establish some marginal relevance of the information, the additional documents WTT seeks are not remotely proportional to the needs of the case for the same reasons as demonstrated above for Request No. 2, *see* pp. 33–34. WTT has not attempted to articulate how additional documents would be important to resolving the action, or even what those additional documents may be.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

48.    <u>Request No. 58</u>

a.    <u>*The Request*</u>

"All DOCUMENTS referenced in YOUR Initial Disclosures."

b.    <u>*CVS's Response*</u>

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to

235

1  produce any such confidential or commercially-sensitive information, it will do so only

2  after the parties have agreed to an appropriate stipulated protective order governing

3  the disclosure and use of confidential information in this action. CVS further objects

4  to the request to the extent it seeks information protected by the attorney-client

5  privilege, the attorney work product doctrine, the right of privacy, or any other

6  applicable privilege or protection.

7        Subject to and without waiving the foregoing objections, after a diligent search

8  and reasonable inquiry of documents within CVS's possession, custody, or control,

9  CVS will produce copies of all non-privileged documents referenced in its initial

10 disclosures that address any face masks the TAC alleges were supplied or sourced by

11 WTT, the terms of any purchase orders or agreements for such masks, payments that

12 CVS made to WTT for such masks, or discounts/credits at issue in the TAC that CVS

13 claimed for such masks.

14       c.   *WTT's Position*

15       This request simply asks for "[a]ll DOCUMENTS referenced in YOUR Initial

16 Disclosures." These are documents that CVS has indicated it will rely upon at trial in

17 defense of the claims against it. There is absolutely nothing objectionable about this

18 request, yet, CVS asserts that same meritless, boilerplate objections as it asserted to

19 every other document request. These objections should be overruled.

20       Further improper is CVS's attempt to restrict what documents it will produce in

21 response to this request. While CVS did not indicate that it was withholding

22 documents responsive to this request as it did with other responses above, CVS also

23 did not unequivocally state that it would produce all responsive documents. Rather,

24 CVS indicated that it was placing various limitations on its production. This violations

25 CVS's obligations under Rules 26 and 34.

26       CVS should be compelled to supplement this response and produce all

27 documents responsive to this request.

28 / / / /

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

d.    *CVS's Position*

As an initial matter, the Court should deny WTT's motion as to this request for the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

But even setting aside this procedural deficiency, CVS's objections (which are *not* boilerplate) are justified, and WTT has failed to carry *its initial "burden* to demonstrate that the requested discovery is *both* relevant to the claims or defenses in this action *and* proportional to the needs of the case." *White*, 2022 WL 2189645, at *5 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) & (2)(C)(iii).

As shown above, *see* p. 6, this action is limited to three categories of claims: (1) a written contract claim alleging that CVS wrongfully deducted a $1 million credit in October 2020 for face masks Sarah Currier previously ordered that was supposedly conditioned on her alleged oral agreement or promise during a call in October 2020 to buy additional masks, TAC ¶¶ 32–37, 65–75; (2) a written contract claim alleging that CVS wrongfully deducted $1,068,816 in discounts as of August 2021 for certain masks previously ordered that was supposedly related to a request for additional funding by Ms. Currier in July 2021, TAC ¶¶ 59, 76–86; and (3) oral contract and, in the alternative, promissory estoppel claims alleging that Ms. Currier orally agreed or promised to buy various masks during calls in August, October, and December 2020 and January 2021. TAC ¶¶ 87–197.

The documents CVS "referenced in [its] initial disclosures are: (1) "Purchase Orders"; (2) "[i]nformation in CVS's EDI ordering system"; (3) "[e]mail correspondence related to purchases, goods, and credits at issue," and (4) "CVS's accounting records related to credits claimed." Light Decl. ¶ 20. Because this language could be more precise (for example, CVS obviously did not intend to rely on all "Purchase Orders" or "[i]nformation in CVS's EDI ordering system" for all goods from all vendors; rather, it intended to rely on such documents only to the extent they relate to the face masks from WTT at issue), CVS used more precise language in

237

response to this request. Specifically, CVS agreed to produce "copies of all non-privileged documents referenced in its initial disclosures that address any face masks the TAC alleges were supplied or sourced by WTT, the terms of any purchase orders or agreements for such masks, payments that CVS made to WTT for such masks, or discounts/credits at issue in the TAC that CVS claimed for such masks." Critically, WTT has not attempted to identify any relevant documents referenced in CVS's initial disclosures beyond these categories—*because there are none*.

As demonstrated above, *see* pp. 31–32, CVS already produced the vast majority of these documents, including all communications by or copying Ms. Currier and her two superiors, many communications by or copying other CVS employees, many of the purchase orders, and data showing many of the payments and all the discounts and credits at issue. Light Decl. ¶¶ 7–10. WTT concedes that CVS's "keyword search [underlying its initial production] should capture all responsive documents," p. 23 above. This should end the matter. Further, CVS is collecting and reviewing for production additional documents from other custodians, including individuals who WTT has identified as potential deponents (even though they were not directly involved in the alleged transactions), supplier support mailboxes with whom WTT may have communicated, and data from various systems sufficient to show all face mask purchase orders submitted to WTT, all payments made to WTT, and all discounts and credits applied to mask purchases from WTT. Light Decl. ¶ 12.

WTT is further mistaken that CVS's response fails to comply with Rule 34 for the same reasons as demonstrated above for Request No. 2, *see* p. 34.

For all these reasons, the Court should deny WTT's motion as to this request.

### 49.   Request No. 59

#### a.   *The Request*

"All DOCUMENTS referred to or relied upon by YOU in answering Interrogatories (Set One)."

////

b.    *CVS's Response*

CVS incorporates and reasserts its preliminary statement and objections to specific definitions set forth above as if fully stated in response to this request. CVS further objects to this request to the extent it seeks information that is not relevant to any party's claim or defense or not proportional to the needs of the case. CVS further objects to the request to the extent it seeks documents that are equally accessible to WTT because they are within its possession, custody, or control. CVS further objects to the request to the extent it calls for information solely within the possession, custody, or control of former employees of CVS or witnesses over whom CVS has no lawful right of control. CVS further objects to the request to the extent it seeks confidential and commercially-sensitive information. To the extent CVS agrees to produce any such confidential or commercially-sensitive information, it will do so only after the parties have agreed to an appropriate stipulated protective order governing the disclosure and use of confidential information in this action. CVS further objects to the request to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, the right of privacy, or any other applicable privilege or protection.

Subject to and without waiving the foregoing objections, after a diligent search and reasonable inquiry of documents within CVS's possession, custody, or control, CVS will produce copies of all non-privileged documents regarding WTT's actual or potential supply of face masks, actual or potential face mask transactions with WTT, or any actual or potential discounts or credits for face mask transactions with WTT that are referred to or relied upon by CVS in answering WTT's first set of interrogatories.

c.    *WTT's Position*

This request simply asks for "[a]ll DOCUMENTS referred to or relied upon by YOU in answering Interrogatories (Set One)."  These are documents that CVS has relied upon or referenced in responding to writing discovery.   There is absolutely

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

1   nothing objectionable about this request, yet, CVS asserts that same meritless,

2   boilerplate objections as it asserted to every other document request. These objections

3   should be overruled.

4       Further improper is CVS's attempt to restrict what documents it will produce in

5   response to this request. While CVS did not indicate that it was withholding

6   documents responsive to this request as it did with other responses above, CVS also

7   did not unequivocally state that it would produce all responsive documents. Rather,

8   CVS indicated that it was placing various limitations on its production. This violations

9   CVS's obligations under Rules 26 and 34.

10      CVS should be compelled to supplement this response and produce all

11   documents responsive to this request.

12              d.    *CVS's Position*

13      As an initial matter, the Court should deny WTT's motion as to this request for

14   the same reasons as demonstrated above for Request No. 2, *see* pp. 28–29, "because

15   [WTT] did not meet and confer concerning it." *Carrico*, 2020 WL 7711838, at *1.

16      But even setting aside this procedural deficiency, WTT's motion as to this

17   request is moot because CVS served a supplemental response on February 12, 2024

18   stating that "CVS has produced copies of all non-privileged documents referred to or

19   relied upon by CVS in answering WTT's first set of interrogatories." Light Decl. ¶ 17

20   & Ex. 5 at 80. Had WTT met and conferred about this request as required by Local

21   Rule 37-1, CVS would have agreed to supplement the response in the first instance to

22   clarify WTT's (apparent) confusion over the language used in the initial response.

23      Accordingly, the Court should deny WTT's motion as to this request.

24   **D.**    **Whether CVS Should Reimburse WTT for Some of Its Reasonable**

25           **Attorneys' Fees in Bringing this Motion**

26            1.   *WTT's Position*

27      Rule 37(a)(5) provides that "[i]f th[is] motion is granted—or if the disclosure or

28   requested discovery is provided after the motion was filed—the court **must**, after

1  giving an opportunity to be heard, require the party or deponent whose conduct
2  necessitated the motion, the party or attorney advising that conduct, or both to pay the
3  movant's reasonable expenses incurred in making the motion, including attorney's
4  fees" unless one of three circumstances exist:  (1) the motion was filed before a good
5  faith attempt to obtain the discovery was made; (2) CVS's objections to each of the
6  interrogatories and requests were substantially justified; or (3) other circumstances
7  make an award of expenses unjust.  *See* FRCP 37(a)(5)(i)-(iii) (emphasis added).

8       While legitimate, good faith disputes exist as to a handful of document requests,
9  the bulk of the issues raised in the Joint Stipulation to compel warrant reimbursing
10  WTT is reasonable attorneys' fees.  For example, there was no substantial justification
11  for CVS's refusal to identify party witnesses with knowledge regarding the creation,
12  modification, and/or approval of the specially made packaging used for the goods at
13  issue.  Nor was there any justification for CVS's failure to provide a privilege log,
14  especially after WTT agreed to CVS's request that it be allowed to provide a privilege
15  log a full three-weeks after CVS made an initial production and nearly five months
16  after CVS was first served with the document requests.

17       CVS was also not substantially justified in asserting the same, boilerplate
18  objections to Request Nos. 2-3, 7-10, 12, 14-17, 23-26, 29-32, 41-44, and 47-59.  Nor
19  was CVS substantially justified in admittedly withholding documents to these requests
20  based on its meritless objections. These 36 document requests either sought documents
21  that support CVS's various contentions or they sought documents directly related to
22  the transactions in dispute and the communications related thereto.

23       The total time spent by WTT on the two interrogatories, the privilege log, and
24  the 36 document requests was 8.2 hours.  *See* McKown Decl., ¶ 9.  This total does not
25  include the time WTT spent on the 13 disputed document requests that are legitimately
26  in dispute.  *Id.*  The hourly rate for WTT's counsel is $650 per hour.  *Id.*  As such,
27  WTT requests that CVS reimburse it $5,330.00 (8.2 hours X $650.00/hr.).  *Id.*

28           2.  *CVS's Position*

1    For the reasons demonstrated above, the Court should deny WTT's improper and meritless motion, and award *CVS* its reasonable expenses, including attorney fees, in opposing the motion as requested below. However, to the extent the Court grants the motion, the Court should deny WTT's request for its expenses, including attorney fees.

    As WTT concedes, under Rule 37, the Court "*must not* order" payment of expenses if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). All three of these exceptions apply here.

    First, WTT failed to meet and confer regarding 36 of the document requests (Request Nos. 2–3, 7–10, 12, 14–17, 23–26, 29–32, 41–44, and 47–59) as required by Local Rule 37. Had WTT met and conferred about these requests, CVS would have clarified any confusion over the phrasing of its responses, demonstrated that its responses satisfy Rule 34, explained why additional documents are not relevant or proportional to the needs of the case, and considered any proposals to resolve any remaining disputes as to the requests. What's more, WTT served its motion on CVS without notice, after CVS had already produced its privilege log and agreed to supplement Interrogatory Nos. 15–16, and before the parties had completed their meet and confer as to Request Nos. 5, 38, and 59. CVS has now supplemented both interrogatories and the three document requests—and would have earlier had WTT asked for the supplemental responses earlier, or simply reached out to CVS before serving the motion. Thus, the motion is entirely unnecessary and premature as to all these discovery requests, and a waste of both the parties' and the Court's limited resources.

    Second, as demonstrated above, CVS's objections (which are *not* boilerplate) and responses to each of the discovery requests are justified, and WTT has failed to carry *its initial burden* to demonstrate that additional information is *both* relevant to

242

the claims or defenses in this action *and* proportional to the needs of the case. WTT even concedes that CVS's "keyword search [underlying its initial production] should capture *all* responsive documents," p. 23 (emphasis added) above, including *all* communications by or among *all* "three key witnesses in this case," p. 3 above. Further, WTT admits that "genuine," "legitimate, good faith disputes exist" as to "13 requests" (Request Nos. 5, 11, 13, 18–21, 27–28, 34, and 36–40), pp. 3, 240 above. For this reason, WTT does not seek reimbursement as to those requests.

Third, other circumstances make an award of expenses unjust. As shown above, CVS agreed to produce all non-privileged, relevant documents that are proportional to the needs of the case. Light Decl. ¶¶ 7–10. For the most part, WTT has not even attempted to identify additional categories of documents that it believes are necessary for the case. Moreover, CVS has already produced the vast majority of these documents, including over 2,600 documents comprising over 5,400 pages of internal and external emails and attachments and over 620 native files (e.g., large excel spreadsheets) comprising thousands of additional pages of data. *Id.* In total, CVS has incurred ***over 280 attorney hours and over $180,000 in attorney fees, and over $25,000 in e-discovery and contract reviewer fees, responding to and collecting information for WTT's first sets of written discovery***, ***including over 160 attorney hours and over $103,000 in attorney fees collecting, processing, and reviewing documents for production***. *Id.* ¶¶12–14. Thus, CVS has been responding to WTT's discovery in good-faith and at great time and expense.

By contrast, WTT has failed to identify *any* documents supporting its claims and has produced *only 66* documents in total, many of which CVS already produced, and none of which are communications from the two "key witnesses" that acted on WTT's behalf, which CVS asked WTT to prioritize. Light Decl. ¶ 19. In other words, rather than focus on its own discovery obligations and litigate this case on the merits, WTT brought this 130-page motion addressing moot, irrelevant, and attenuated issues (leading with a frivolous argument that CVS waived all privileges) in an attempt to

243

1  abuse the discovery process and leverage exorbitant litigation costs. WTT's improper

2  and meritless motion will not advance the litigation and has only further (and

3  unnecessarily) increased CVS's expenses. The Court should not reward WTT's

4  gamesmanship with an award of its own expenses.

5       For all these reasons, the Court should deny WTT's request for expenses,

6  including attorney fees.

7  **E.**    **The Court Should Order WTT to Pay CVS's Reasonable Expenses**

8         **in Opposing Its Improper and Meritless Motion**

9       To the extent the Court denies WTT's motion, the Court should order WTT to

10  pay CVS's reasonable expenses, including attorney fees, in opposing the motion.

11       Under Rule 37, "[i]f the motion is denied," the Court "*must*, after giving an

12  opportunity to be heard, *require* the movant, the attorney filing the motion, or both to

13  pay the party … who opposed the motion its reasonable expenses incurred in opposing

14  the motion, including attorney's fees," unless "the motion was substantially justified

15  or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B)

16  (emphasis added). As just shown above, WTT's motion was not substantially justified.

17  Nor do other circumstances make an award of expenses unjust.

18       On the contrary, WTT served its 130-page motion addressing 51 document

19  requests without notice, without meeting and conferring about 36 of the requests, and

20  without completing the meet and confer as to other requests, as required by Local Rule

21  37. Local Rule 37 is clear that "[t]he failure of any counsel to comply with or cooperate

22  with the [meet and confer] procedures may result in the imposition of sanctions."

23  L.R. 37-4.

24       Moreover, WTT's motion is entirely meritless and a waste of the parties' and

25  the Court's limited resources. WTT's argument that CVS waived all privileges as to

26  WTT's first sets of discovery is baseless because CVS served a privilege log for all

27  documents withheld or redacted from its productions on January 19, 2024. WTT's

28  motion is moot as to Interrogatory Nos. 15–16 and Document Request Nos. 5, 38, and

JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL

59 because CVS served supplemental responses to the interrogatories on February 2, 2024, and to the document requests on February 12, 2024. And WTT's motion lacks merit (and offers nothing but frivolous, boilerplate argument) as to the remaining requests because it seeks documents that are either irrelevant or disproportionate to the needs of the case. The fact that WTT's counsel spent only 8.2 hours on the motion, p. 241 above, largely cutting and pasting from his December 18 and 27, 2023 letters without addressing any of CVS's arguments and authorities raised in the conference of counsel or subsequent correspondence, *see, e.g.*, McKown Decl. Exs. F–H, only further shows the motion is not justified and an award of CVS's expenses is warranted.

CVS has incurred more than 30 attorney hours and over $19,350 in attorney fees opposing WTT's frivlous motion. Light Decl. ¶¶ 21–22. Accordingly, CVS seeks reimbursement by WTT of $19,350.

Even if "the motion is granted in part and denied in part," the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Therefore, to the extent the Court denies any portion of WTT's motion, CVS urges the Court to apportion CVS's requested reimbursement accordingly and order WTT to pay such amount.

Dated:  February 14, 2024          **McKOWN BAILEY**

By: _____

Aaron M. McKown
William P. Cassidy, Jr.
Attorneys for Plaintiff
WORLD TECH TOYS, INC.

Dated: February 14, 2024          **SHOOK, HARDY & BACON L.L.P.**

By: /s _____

Ryan W. Light
Attorneys for Defendant
CVS Pharmacy, Inc.

245

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WORLD TECH TOYS, INC., | ) | Case No. CV 23-5567 FMO (JPRx) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **SCHEDULING AND CASE MANAGEMENT** |
| | ) | **ORDER RE: JURY TRIAL** |
| CVS PHARMACY, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**PLEASE READ THIS ORDER CAREFULLY. IT GOVERNS THIS CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

The term "Counsel," as used in this Order, includes parties appearing <u>pro se</u>.

The court has scheduled the dates set forth on the last two pages of this Order after review of the parties' Joint Rule 26(f) Report. Therefore, the court deems a Scheduling Conference unnecessary and hereby **vacates** the hearing. The dates and requirements set forth in this Order are firm. The court is unlikely to grant continuances, even if stipulated by the parties, unless the parties establish good cause through a proper showing.

In an effort to comply with Fed. R. Civ. P. 1's mandate "to secure the just, speedy, and inexpensive determination of every action[,]" the court **orders** as follows.

I.        JOINDER OF PARTIES AND AMENDMENT OF PLEADINGS.

        Any stipulation or motion to amend as to any claims, defenses, or parties shall be filed by the deadline set forth in the attached schedule, failing which it shall be deemed that the party has waived any such amendments. All unserved parties not timely served shall be dismissed without prejudice. In addition, all "Doe" defendants are to be identified and named on or before the date set forth below, on which date all remaining "Doe" defendants will be deemed dismissed, unless otherwise ordered by the court upon a showing of good cause.

II.      DISCOVERY.

      A.     <u>Generally</u>.

        Counsel are expected to comply with the Federal Rules of Civil Procedure and all Local Rules concerning discovery. <u>Pro se</u> litigants are entitled to discovery to the same extent as litigants represented by counsel. The court allows discovery to commence as soon as the first answer or motion to dismiss is filed. The parties should note that absent exceptional circumstances, **discovery shall not be stayed** while any motion is pending, including any motion to dismiss or motion for protective order. Whenever possible, the court expects counsel to resolve discovery disputes among themselves in a courteous, reasonable, and professional manner. The court expects that counsel will adhere strictly to the Civility and Professionalism Guidelines (available on the Central District's website under Information for Attorneys > Attorney Admissions).

      B.     <u>Discovery Cut-Off</u>.

        The court has established a cut-off date for discovery, including expert discovery, if applicable. This is not the date by which discovery requests must be served; it is the date by which all discovery, **including hearings on any related motions**, is to be completed. **The parties are directed to conduct any necessary discovery as soon as possible, as the court is not inclined to grant any extensions of the discovery or other case-related deadlines**.

      C.     <u>Discovery Motions</u>.

        Any motion relating to a deposition or challenging the adequacy of discovery responses must be filed, served, and calendared sufficiently in advance of the discovery cut-off date to

permit the responses to be obtained and/or the deposition to be completed before the discovery cut-off if the motion is granted.  Given the requirements set forth in the Local Rules (e.g., "meet and confer" and preparation of the Joint Stipulation), any party seeking to file a discovery motion must usually initiate meet and confer discussions at least seven (7) weeks before the discovery cut-off, i.e., by preparing and serving the letter required by Local Rule 37-1.

> D.  Expert Discovery.

All disclosures must be made in writing.  The parties should begin expert discovery immediately after the initial designation of experts.  The final pretrial conference and trial dates will not be continued because expert discovery is not completed.  Failure to comply with these or any other orders concerning expert discovery may result in the expert being excluded as a witness.

III.  MOTIONS.

The court has established a cut-off date for the filing and service of motions for the court's law and motion calendar.  Counsel should consult the court's Initial Standing Order and related procedures, located on the Central District's website,[1] to determine the court's requirements concerning motions and other matters.  Any motion that is noticed more than 35 days beyond the date the motion is filed may be stricken or advanced to an earlier motion date.  If the motion is advanced to an earlier motion date, counsel shall comply with the briefing schedule dictated by the new hearing date.  See Local Rules 7-9 & 7-10.

If documentary evidence in support of or in opposition to a motion exceeds 50 pages, the evidence must be separately bound and tabbed and include an index.  If such evidence exceeds **300 pages**, the documents shall be placed in a **three-ring binder**, with an index and with each item of evidence separated by a tab divider on the right side.  In addition, counsel shall provide an electronic copy (i.e., cd, dvd, or flash drive) of the documents in a single, OCR-scanned PDF file with each item of evidence separated by labeled bookmarks. Counsel shall ensure that all

---

[1] http://www.cacd.uscourts.gov > Judges' Requirements > Judges' Procedures and Schedules > Hon. Fernando M. Olguin (http://www.cacd.uscourts.gov/honorable-fernando-m-olguin).

documents are legible.  Counsel are strongly encouraged to cite docket numbers (and sub-numbers) when citing to the record.

IV.   SETTLEMENT.

Pursuant to Local Rule 16-15, the parties must complete a settlement conference.  No case will proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference.

If the case settles, counsel shall file a Notice of Settlement no later than 24 hours after the case is settled, stating when they expect to file their dismissal papers.  Otherwise, **the parties must, no later than 48 hours after the settlement proceeding is completed, file a Status Report Re: Settlement** in accordance with the requirements set forth on the last two pages of this Order.

V.   TRIAL PREPARATION.

A.   Final Pretrial Conference.

Unless excused for good cause, each party appearing in this action shall be represented at the final pretrial conference by lead trial counsel.  Counsel must be prepared to discuss streamlining the trial, including presentation of testimony by deposition excerpts or summaries, time limits, stipulations as to undisputed facts, and qualification of experts by admitted resumes.

B.   Pretrial Documents.

The filing schedule for pretrial documents is set forth on the last two pages of this Order. **Unless otherwise indicated, compliance with Local Rule 16 is required.  The court does not exempt pro se parties from the requirements of this Order or Local Rule 16**.  Carefully prepared memoranda of contentions of fact and law, witness lists, a pretrial exhibit stipulation, and a proposed pretrial conference order shall be submitted in accordance with the Local Rules and the requirements set forth in this Order.  All pretrial document copies shall be delivered to the court "binder-ready" (three-hole punched on the left side, without blue-backs, and stapled only in the top left corner).  Failure to comply with these requirements may result in the imposition of sanctions as well as the pretrial conference being taken off-calendar or continued.

1              1.   **Witness Lists**.

2          In addition to the requirements of Local Rule 16-5, the witness lists must include a brief

3   description (one or two paragraphs) of the testimony of each witness.

4              2.   **Pretrial Exhibit Stipulation**.[2]

5          No later than fourteen (14) days before the deadline set forth below to file the Pretrial

6   Exhibit Stipulation, counsel shall conduct a good faith meet and confer in person to discuss all the

7   trial exhibits and each party's position with respect to the admissibility of each exhibit. The Pretrial

8   Exhibit Stipulation shall contain each party's numbered list of trial exhibits, with objections, if any,

9   to each exhibit, including the basis of the objection and the offering party's brief response.  All

10  exhibits to which there is no objection shall be deemed admitted.  The parties shall stipulate to

11  the authenticity and foundation of exhibits whenever possible, and the Pretrial Exhibit Stipulation

12  shall identify any exhibits to which authenticity or foundation have not been stipulated and the

13  specific reasons for the parties' failure to stipulate.

14         The Pretrial Exhibit Stipulation shall be substantially in the following form:

15                      **Pretrial Exhibit Stipulation**

16                **Plaintiff(s)'/Defendant(s)' Exhibits**

17  **Exhibit No.   Description          Stip. to Adm.?**[3]   **Objection          Response to Objection**

18

19         Failure to comply with this section may be deemed a waiver of all objections.  Each

20  objection must include the grounds for the objection (_e.g._, a Federal Rule of Evidence) and an

21  explanation of why the disputed exhibit is not admissible.  **Do not submit** blanket or boilerplate

22  objections to the opposing party's exhibits.  These will be disregarded and overruled.

23

24

25

26  _____

       [2]  It is not necessary to file the Joint Exhibit List required by Local Rule 16-6.1.

27

       [3]  The Pretrial Exhibit Stipulation shall indicate in this column whether an exhibit is admitted

28  for identification purposes only.

                                    5

3. **Proposed Pretrial Conference Order**.

The format of the proposed final pretrial conference order shall conform to the format set forth in Appendix A to the Local Rules.  In drafting the proposed pretrial conference order, the parties shall attempt to agree on and set forth as many undisputed facts as possible.  The court will usually read the undisputed facts to the jury at the start of trial.  A carefully drafted and comprehensively stated stipulation of facts will reduce the length of trial and increase the jury's understanding of the case.

C.    Joint Statement of the Case.

No later than the date set forth below, counsel shall file an objective, non-argumentative statement of the case, which the court shall read to all prospective jurors at the beginning of voir dire.  The statement should not exceed one page.

D.    Motions in Limine.

Each party is allowed a maximum of five motions in limine, which must be filed no later than the deadline set forth below.  In the event a party believes that more than five motions in limine are necessary, the party must obtain leave of court to file additional motions in limine. The court will not hear or resolve motions in limine that are disguised summary judgment motions.

Before filing any motion in limine, counsel for the parties shall confer in a good faith effort to eliminate the necessity for the filing of the motion in limine or to eliminate as many of the disputes as possible.  Counsel for the moving party shall be responsible for arranging this conference. The conference shall take place in person, with a court reporter present, within seven (7) calendar days of service upon opposing counsel of a letter requesting such conference, but in no event later than fourteen (14) days before the deadline for filing motions in limine.  Unless counsel agree otherwise, the conference shall take place at the office of counsel for the moving party.  The moving party's letter shall:  identify the testimony, exhibits, or other specific matters alleged to be admissible or inadmissible; state thoroughly with respect to each such matter the moving party's position (and provide any legal authority which the moving party believes is dispositive); and specify the terms of the order to be sought.

If counsel are unable to resolve their differences, they shall prepare and file a separate,

sequentially numbered <u>joint</u> motion in limine for each issue in dispute.  Each joint motion in limine shall consist of one document signed by all counsel.  The joint motion in limine shall contain a clear identification of the testimony, exhibits, or other specific matters alleged to be admissible or inadmissible, and a statement of the specific prejudice that the moving party will suffer if the motion is not granted.  The identification of the matters in dispute shall be followed by each party's contentions and each party's memorandum of points and authorities.  The title page of the joint motion in limine must contain a clear caption identifying the moving party and the nature of the dispute (<u>e.g.</u>, "Plaintiff's Motion in Limine No. 1 to Exclude the Testimony of Defendant's Expert") and state the pretrial conference date, hearing date for the motion, and trial date.

Each separately represented party shall be limited to ten (10) pages, exclusive of tables of contents and authorities.  Repetition shall be avoided and, as always, brevity is preferred.  Leave for additional space will be given only in extraordinary cases.  The excessive use of footnotes in an attempt to avoid the page limitation shall not be tolerated.  All substantive material, other than brief argument on tangential issues, shall be in the body of the brief.

The moving party must provide its portion of the joint motion in limine to the nonmoving party, via e-mail, no later than nine (9) days before the deadline set forth below for filing motions in limine.  The nonmoving party shall then provide the integrated joint motion in limine, along with any exhibits, to the moving party no later than two (2) days before the filing deadline.  The moving party may not make any further revisions to the joint motion in limine other than finalizing it for filing.  The moving party shall be responsible for filing the joint motion in limine and preparing and filing any supporting exhibits.

The moving party may file a reply memorandum of points and authorities no later than the deadline set forth below.  The reply memorandum shall not exceed five pages, unless otherwise ordered by the court.

A motion in limine made for the purpose of precluding the mention or display of inadmissible matter in the presence of the jury shall be accompanied by a declaration that includes the following:  (A) a clear identification of the specific matter alleged to be inadmissible; (B) a representation to the court that the subject of the motion in limine has been discussed with

7

opposing counsel, and that opposing counsel has either indicated that such matter will be mentioned or displayed in the presence of the jury before it is admitted in evidence or that counsel has refused to stipulate that such matter will not be mentioned or displayed in the presence of the jury unless and until it is admitted in evidence; and (C) a statement of the specific prejudice that will be suffered by the moving party if the motion in limine is not granted.

Any challenge to expert testimony pursuant to <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579, 113 S.Ct. 2786 (1993), or Federal Rules of Evidence 702-704, must be lodged in the form of a joint motion in limine. The court generally does not hold <u>Daubert</u> hearings.

The mandatory chambers copy of all evidence in support of or in opposition to a motion in limine, including declarations and exhibits to declarations, shall be submitted in a separately bound volume and shall include a Table of Contents. **The transcript of the meet and confer session shall be included as an exhibit to the motion in limine**. If the supporting evidence exceeds 50 pages, then each copy of the supporting evidence shall be placed in a three-ring binder with each item of evidence separated by a tab divider on the right side, and shall include a label on the spine of the binder identifying its contents.

The court will not consider any motion in limine in the absence of a joint motion or a declaration from counsel for the moving party establishing that opposing counsel: (A) failed to confer in a timely manner; (B) failed to provide the opposing party's portion of the joint motion in a timely manner; or (C) refused to sign and return the joint motion after the opposing party's portion was added.

E.   <u>Jury Instructions and Verdict Forms</u>.

1.   No later than thirty-five (35) days before the deadline to file the required jury instructions and verdict forms, the parties shall exchange their respective proposed jury instructions and verdict forms. No later than twenty-eight (28) days before the filing deadline, each party shall serve objections to the other party's instructions and verdict forms. No later than twenty-one (21) days before the deadline to file the required jury instructions and verdict forms, lead counsel for the parties shall meet and confer in person at an agreed-upon location within the Central District of California and attempt to come to

agreement on the proposed jury instructions and verdict forms.

2.      No later than the deadline set forth below, counsel shall submit both general and substantive jury instructions in the form described below.  Counsel must provide the documents described below in WordPerfect (the court's preference) or Word format.  The parties should use the most recent version of the Ninth Circuit's <u>Manual of Model Civil Jury Instructions</u>, which is available on the Ninth Circuit's website,[4] for all applicable jury instructions.  If there is no applicable Ninth Circuit model jury instruction, the parties should consult the current edition of O'Malley, <u>et al.</u>, <u>Federal Jury Practice and Instructions</u>.  If neither the Ninth Circuit nor O'Malley provides an applicable jury instruction, the parties should consult the model jury instructions published by other Circuit Courts of Appeal. Where California law applies, counsel should use the current edition of the <u>Judicial Council of California Civil Jury Instructions</u> ("CACI"), which is available on the California Judicial Branch website.[5]  **The parties shall not modify or supplement a model instruction's statement of applicable law** unless absolutely necessary and strongly supported by controlling case law or other persuasive authority.  Each requested instruction shall:  (a) cite the authority or source of the instruction; (b) be set forth in full; (c) be on a separate page; (d) be numbered; (e) cover only one subject or principle of law; and (f) not repeat principles of law contained in any other requested instruction.

The proposed jury instructions shall be submitted as follows:

a.      **Joint Jury Instructions:** Counsel shall file a **joint set of jury instructions** on which the parties agree.  Model jury instructions should be modified as necessary to fit the facts of the case, <u>i.e.</u>, inserting names of defendant(s) or witness(es) to whom an instruction applies.  Where language appears in brackets in the model instruction, counsel shall select the appropriate text and eliminate the inapplicable bracketed text.  The court expects counsel to agree on the substantial

---

[4]  http://www3.ce9.uscourts.gov/jury-instructions/model-civil.

[5]  http://www.courts.ca.gov/partners/317.htm.

majority of jury instructions, particularly when pattern or model instructions provide a statement of applicable law. If one party fails to comply with the provisions of this section, the other party must file a unilateral set of jury instructions.

> b. **Disputed Jury Instructions:** Counsel shall file a separate **joint set of disputed jury instructions** propounded by one party to which another party objects. On a separate page following each disputed jury instruction, the party opposing the instruction shall briefly state the basis for the objection, any authority in support thereof and, if applicable, an alternative instruction. On the following page, the party proposing the disputed instruction shall briefly state its response to the objection, and any authority in support of the instruction. Each requested jury instruction shall be numbered and set forth in full on a separate page, citing the authority or source of the requested instruction.

3. For both the Joint Jury Instructions and Disputed Jury Instructions, counsel must provide an index of all instructions submitted, which must include the following:

> a. the number of the instruction;
> 
> b. the title of the instruction;
> 
> c. the source of the instruction and any relevant case citations; and
> 
> d. the page number of the instruction.

For example:

| Number | Title | Source | Page Number |
|--------|-------|--------|-------------|
| 1 | Trademark-Defined (15 U.S.C. § 1127) | 9th Cir. 8.5.1 | 1 |

F. <u>Voir Dire</u>.

1. The court will conduct the voir dire. Counsel may, but are not required to, file a list of proposed case-specific voir dire questions no later than the date set forth below.

2. In most cases, the court will conduct its initial voir dire of 16 prospective jurors who will be seated in the jury box. Generally, the court will select eight jurors.

3. Each side will have three peremptory challenges. After all peremptory

challenges have been exercised, the eight jurors in the lowest numbered seats will be the jury.  The court will not necessarily accept a stipulation to a challenge for cause.  If one or more challenges for cause are accepted, and all six peremptory challenges are exercised, the court may decide to proceed with six or seven jurors.

G.      Trial Exhibits.

Exhibits must be placed in three-ring binders indexed by exhibit number with tabs or dividers on the right side.  The spine portion of the binder shall indicate the volume number **and** contain an index of each exhibit included in the volume.  Plaintiff shall be responsible for submitting hard copies of all trial exhibits as follows:

1.      On the **first day of trial**, plaintiff shall submit to the Courtroom Deputy Clerk ("CRD") one (1) three-ring binder containing all **original exhibits** to be used at trial (except those to be used for impeachment only) with official exhibit tags attached and bearing the same number shown on the exhibit list.

2.      **Plaintiff shall also submit to the CRD** two (2) three-ring binders with **copies** of each exhibit, tabbed with exhibit numbers, for use by the court and the witness.

3.      Exhibit tags may be obtained from the Clerk's Office, located on the fourth floor of the First Street Courthouse.  Plaintiff shall use yellow tags and defendant shall use blue tags.  Digital exhibit tags are also available on the Court's website under Court Forms > General forms > Form G-14A (plaintiff) and G-14B (defendant).  Digital exhibit tags may be used in lieu of tags available from the Clerk's Office.  The tags shall be stapled to the upper right-hand corner of each exhibit with the case number, case name, and exhibit number placed on each tag. Exhibits shall be numbered 1, 2, 3, etc., **not** 1.1, 1.2, 1.3, etc. The defense exhibit numbers shall not duplicate plaintiff's numbers.  Counsel shall designate any "blow-up" enlargement of an existing exhibit with the number of the original exhibit followed by an "A."

4.      Admitted exhibits will be given to the jury during deliberations.  Counsel shall review all admitted exhibits with the CRD before the jury retires to begin deliberations.

5.      Where a significant number of exhibits will be admitted, the court encourages

counsel, preferably by agreement, to consider ways in which testimony about exhibits may be made intelligible to the jury while it is presented.  For example, counsel should consider using courtroom technology or other devices, such as jury notebooks for admitted exhibits.  Information concerning the availability, training, and use of courtroom technology is available on the Central District's website.  The court does not permit exhibits to be "published" by passing them up and down the jury box.  Exhibits may be displayed briefly using the screens in the courtroom, unless the process becomes too time-consuming.

VI.    JURY TRIAL.

A.    Generally.

On the first day of trial, **counsel must appear at 8:45 a.m.** to discuss preliminary matters with the court.  The jury panel will be called when the court is satisfied that the matter is ready for trial.  Jury selection usually takes only a few hours.  Counsel should be prepared to proceed with opening statements and witness examination immediately after jury selection.

B.    Advance Notice of Unusual or Difficult Issues.

If any counsel have reason to anticipate that a difficult question of law or evidence will necessitate legal argument requiring research or briefing, counsel must give the court advance notice.  Counsel are directed to notify the CRD at the day's adjournment if an unexpected legal issue arises that could not have been foreseen and addressed by a motion in limine.  See Fed. R. Evid. 103.  Counsel must also advise the CRD at the end of each trial day of any issues that must be addressed outside the presence of the jury, so that there is no interruption of the trial.  **The court will not keep jurors waiting**.

C.    Opening Statements, Examining Witnesses, and Summation.

1.    Counsel must use the lectern at all times.

2.    Counsel shall not discuss the law or argue the case in opening statements.

3.    Counsel must not consume time by writing out words, drawing charts or diagrams, etc.  Counsel must prepare such materials in advance.

4.    The court will honor (and may establish) reasonable time estimates for opening and closing arguments, examination of witnesses, etc.

12

D.    Objections to Questions.

1.    Counsel must not use objections to make a speech, recapitulate testimony, or attempt to guide the witness.

2.    When objecting, counsel must rise to state the objection and state only that counsel objects and the legal ground of objection.  If counsel wishes to argue an objection further, counsel must ask for permission to do so.

E.    General Decorum.

1.    Counsel should not approach the CRD or the witness box, or enter the well of the court, without specific permission and must return to the lectern when the purpose for approaching has been accomplished.

2.    Counsel should rise when addressing the court and when the court or the jury enters or leaves the courtroom, unless directed otherwise.

3.    Counsel should address all remarks to the court.  Counsel are not to address the CRD, the court reporter, persons in the audience, or opposing counsel.  If counsel wish to speak with opposing counsel, counsel must ask permission to do so.  Any request for the re-reading of questions or answers or to have an exhibit placed in front of a witness shall be addressed to the court.

4.    Counsel should not address or refer to witnesses or parties by first names alone, with the exception of witnesses under 14 years of age.

5.    Counsel must not offer a stipulation unless counsel have conferred with opposing counsel and have verified that the stipulation will be acceptable.

6.    While court is in session, counsel must not leave the counsel table to confer with any person in the back of the courtroom unless permission has been granted in advance.

7.    Counsel shall not make facial expressions; nod or shake their heads; comment; or otherwise exhibit in any way any agreement, disagreement, or other opinion or belief concerning the testimony of a witness.  Counsel shall admonish their clients and witnesses not to engage in such conduct.

8.      Counsel should not talk to jurors at all, and should not talk to co-counsel, opposing counsel, witnesses, or clients where the conversation can be overheard by jurors. Each counsel should admonish counsel's own clients and witnesses to avoid such conduct.

9.      Where a party has more than one lawyer, only one may conduct the direct or cross-examination of a particular witness, or make objections as to that witness.

10.     Water is permitted in the courtroom.  Food is not permitted in the courtroom.

F.      Promptness of Counsel and Witnesses.

1.      Promptness is expected from counsel and witnesses.  Once counsel are engaged in trial, this trial is counsel's first priority.  The court will not delay the trial or inconvenience jurors.

2.      If a witness was on the stand at a recess or adjournment, counsel who called the witness shall ensure the witness is back on the stand and ready to proceed when trial resumes.

3.      Counsel must notify the CRD in advance if any witness needs to be accommodated based on a disability or for other reasons.

4.      No presenting party may be without a witness.  If a party's remaining witnesses are not immediately available and there is more than a brief delay, the court may deem that party to have rested.

5.      The court attempts to cooperate with professional witnesses and will, except in extraordinary circumstances, accommodate them by permitting them to be called out of sequence.  Counsel must anticipate any such possibility and discuss it with opposing counsel.  If there is an objection, counsel must confer with the court in advance.

G.      Exhibits.

1.      Each counsel should keep counsel's own list of exhibits and should note when each exhibit has been admitted into evidence (if not already admitted pursuant to the pretrial exhibit stipulation).

2.      Each counsel is responsible for any exhibits that counsel secures from the CRD and must return them before leaving the courtroom at the end of the session.

3.      An exhibit not previously marked should, at the time of its first mention, be accompanied by a request that it be marked for identification.  Counsel must show a new exhibit to opposing counsel before the court session in which it is mentioned.

4.      Counsel are to advise the CRD of any agreements with respect to the proposed exhibits and as to those exhibits that may be received without further motion.

5.      When referring to an exhibit, counsel should refer to its exhibit number.  Witnesses should be asked to do the same.

6.      Counsel must neither ask witnesses to draw charts or diagrams nor ask the court's permission for a witness to do so.  Any graphic aids must be fully prepared before the court session starts.

H.      Depositions.

1.      The parties shall submit to the CRD all depositions that they intend to use as substantive evidence at trial (i.e., not merely for impeachment purposes) **on the first day of trial or such earlier date as the court may order**, with all objections noted in the margins.  Counsel should verify with the CRD that the relevant deposition is in the CRD's possession.

2.      In using depositions of an adverse party for impeachment, either one of the following procedures may be adopted:

a.      If counsel wishes to read the questions and answers as alleged impeachment and ask the witness no further questions on that subject, counsel shall first state the page and line where the reading begins and the page and line where the reading ends, and allow time for any objection.  Counsel may then read the portions of the deposition into the record.

b.      If counsel wishes to ask the witness further questions on the subject matter, the deposition shall be placed in front of the witness and the witness shall be told to read the relevant pages and lines silently.  Then counsel may:  (a) ask the witness further questions on the matter and thereafter read the quotations; or (b) read the quotations and thereafter ask further questions.  Counsel should have an

extra copy of the deposition for this purpose.

3.     Where a witness is absent and the witness's testimony is offered by deposition, counsel may:  (a) have a reader occupy the witness chair and read the testimony of the witness while the examining lawyer asks the questions; or (b) have counsel read both the questions and answers.

I.     Interrogatories and Requests for Admissions.

Whenever counsel expects to offer a group of answers to interrogatories or requests for admissions extracted from one or more lengthy documents, counsel must prepare a new document listing each question and answer and identifying the document from which it has been extracted.  Copies of this new document should be given to the court and opposing counsel.

VII.   COMPLIANCE WITH THIS ORDER, THE LOCAL RULES, AND THE FEDERAL RULES OF CIVIL PROCEDURE.

All parties and their counsel are ordered to become familiar with the Federal Rules of Civil Procedure, the Local Rules of the Central District of California, and the court's standing orders. The failure of any party or attorney to comply with the requirements of this Order, the Local Rules, or the Federal Rules of Civil Procedure may result in sanctions being imposed.

/ / /

/ / /

/ / /

World Tech Toys, Inc. v. CVS Pharmacy, Inc.
Case No. CV 23-5567 FMO (JPRx)

CASE DEADLINES

The court hereby enters the following scheduling order:

1. Any stipulation or motion to amend as to any claims, defenses, and/or parties shall be lodged/filed no later than **November 30, 2023**, failing which it shall be deemed that party's waiver of any such amendments in this action. All "Doe" defendants are to be identified and named on or before **November 30, 2023**, on which date all remaining "Doe" defendants will be dismissed, unless otherwise ordered by the court upon a showing of good cause.

2. All fact discovery shall be completed no later than **March 1, 2024**.

3. All expert discovery shall be completed by **May 15, 2024**. The parties must serve their Initial Expert Witness Disclosures no later than **March 15, 2024**. Rebuttal Expert Witness Disclosures shall be served no later than **April 15, 2024**. The parties should commence expert discovery shortly after the initial designation of experts, because Local Rules 7-3 and 37-1 require ample time to meet and confer as well as brief the matters, and because the final pretrial conference and trial dates will not be continued merely because expert discovery is still underway.

4. The parties shall complete their settlement conference before the assigned magistrate judge ("settlement officer") no later than **March 1, 2024**. Plaintiff's counsel shall contact the settlement officer with enough time so that the settlement conference date is early enough to comply with the settlement completion deadline imposed by this court. After obtaining available dates from the settlement officer, counsel for the parties shall confer and select one of the proposed dates. Plaintiff's counsel shall then advise the settlement officer of the settlement conference date selected by parties. If the case settles, counsel shall file a Notice of Settlement no later than 24 hours after the case is settled, stating when they expect to file their dismissal papers. Otherwise, **the parties must, no later than 48 hours after the settlement conference is completed, file a Status Report Re: Settlement**. The Status Report shall not disclose the parties' settlement positions, i.e., the terms of any offers or demands. The Status Report shall describe the efforts made by the parties to resolve the dispute informally, i.e., the occasions and

dates when the parties participated in mediation or settlement conferences.  The Status Report shall also include the name of the settlement officer who assisted the parties with their settlement conference.

5.  Any motion for summary judgment or other potentially dispositive motion (other than a motion under Rule 12(b)(6)) shall be filed no later than **June 17, 2024**, and noticed for hearing regularly under the Local Rules.  Any untimely or non-conforming motion will be denied.  *All potentially dispositive motions shall comply with the requirements set forth in the Court's Order Re: Summary Judgment Motions issued contemporaneously with the filing of this Order.*  Each party is allowed one potentially dispositive motion.[6]

6.  The parties shall file memoranda of contentions of fact and law; witness lists; the Pretrial Exhibit Stipulation; and joint motions in limine no later than **August 16, 2024**.

7.  The parties shall lodge their proposed Pretrial Conference Order and file the Joint Jury Instructions; Disputed Jury Instructions; a joint proposed verdict form; a joint statement of the case; proposed additional voir dire questions, if desired; and reply memoranda to motions in limine no later than **August 23, 2024**.

The parties shall also send copies of the proposed Pretrial Conference Order; Joint Jury Instructions; Disputed Jury Instructions; the joint proposed verdict form; the joint statement of the case; and any proposed additional voir dire questions, to the chambers e-mail address (fmo_chambers@cacd.uscourts.gov) in WordPerfect (the court's preference) or Word format.

8.  The final pretrial conference and hearing on motions in limine is scheduled for **September 6, 2024**, at 10:00 a.m.

9.  The trial is scheduled to begin on **Tuesday, September 24, 2024**, at 9:00 a.m.  On the first day of trial, **counsel must appear at 8:45 a.m.** to discuss preliminary matters with the court.  Dated this 5th day of September, 2023.

_____
/s/
Fernando M. Olguin
United States District Judge

---

[6]  A motion filed pursuant to Rule 12(c) more than 21 days after the pleadings are closed will be deemed a dispositive motion.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | **CV 23-5567 FMO (JPRx)** | Date | **February 1, 2024** |
|---|---|---|---|
| Title | **World Tech Toys, Inc. v. CVS Pharmacy, Inc.** | | |

Present: The Honorable    Fernando M. Olguin, United States District Judge

| Vanessa Figueroa | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorney Present for Plaintiff(s):        Attorney Present for Defendant(s):

     None Present               None Present

**Proceedings:**        **(In Chambers) Order Re: Further Proceedings**

Having reviewed and considered the parties' Joint Stipulation to Continue Trial And All Pretrial Deadlines by Four Months (Dkt. 32, "Stipulation"), IT IS ORDERED THAT:

1. The Stipulation **(Document No. 32)** is **granted** as set forth in this Order.

2. All fact discovery shall be completed no later than **May 30, 2024**.[1]

3. All expert discovery shall be completed by **August 15, 2024**. The parties must serve their Initial Expert Witness Disclosures no later than **June 13, 2024**. Rebuttal Expert Witness Disclosures shall be served no later than **July 15, 2024**. The parties should commence expert discovery shortly after the initial designation of experts, because Local Rules 7-3 and 37-1 require ample time to meet and confer as well as brief the matters, and because the final pretrial conference and trial dates will not be continued merely because expert discovery is still underway.

4. The parties shall complete their settlement conference before the assigned magistrate judge ("settlement officer") no later than **May 30, 2024**. Plaintiff's counsel shall contact the settlement officer with enough time so that the settlement conference date is early enough to comply with the settlement completion deadline imposed by this court. After obtaining available dates from the settlement officer, counsel for the parties shall confer and select one of the proposed dates. Plaintiff's counsel shall then advise the settlement officer of the settlement conference date selected by parties. If the case settles, counsel shall file a Notice of Settlement no later than 24 hours after the case is settled, stating when they expect to file their dismissal papers. Otherwise, **the parties must, no later than 48 hours after the settlement conference is completed, file a Status Report Re: Settlement**. The Status Report shall not disclose the parties' settlement positions, i.e., the terms of any offers or demands. The Status Report shall describe the efforts made by the parties to resolve the dispute informally, i.e., the occasions and

---

[1] Except as set forth in this Order, the parties shall comply with all the dates and requirements set forth in the Court's Case Management Order of September 5, 2023 (Dkt. 20).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 23-5567 FMO (JPRx) | Date | February 1, 2024 |
|---|---|---|---|
| Title | World Tech Toys, Inc. v. CVS Pharmacy, Inc. | | |

dates when the parties participated in mediation or settlement conferences.  The Status Report shall also include the name of the settlement officer who assisted the parties with their settlement conference.

5.  Any motion for summary judgment or other potentially dispositive motion (other than a motion under Rule 12(b)(6)) shall be filed no later than **September 16, 2024**, and noticed for hearing regularly under the Local Rules.  Any untimely or non-conforming motion will be denied. *All potentially dispositive motions shall comply with the requirements set forth in the Court's Order Re: Summary Judgment Motions issued contemporaneously with the filing of this Order.*  Each party is allowed one potentially dispositive motion.[2]

6.  The parties shall file memoranda of contentions of fact and law; witness lists; the Pretrial Exhibit Stipulation; and joint motions in limine no later than **November 1, 2024**.

7.  The parties shall lodge their proposed Pretrial Conference Order and file the Joint Jury Instructions; Disputed Jury Instructions; a joint proposed verdict form; a joint statement of the case; proposed additional voir dire questions, if desired; and reply memoranda to motions in limine no later than **November 8, 2024**.

The parties shall also send copies of the proposed Pretrial Conference Order; Joint Jury Instructions; Disputed Jury Instructions; the joint proposed verdict form; the joint statement of the case; and any proposed additional voir dire questions, to the chambers e-mail address (fmo_chambers@cacd.uscourts.gov) in WordPerfect (the court's preference) or Word format.

8.  The final pretrial conference and hearing on motions in limine is scheduled for **November 22, 2024**, at 10:00 a.m.

9.  The trial is scheduled to begin on **December 17, 2024**, at 9:00 a.m.  On the first day of trial, **counsel must appear at 8:45 a.m.** to discuss preliminary matters with the court.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |

---

[2]  A motion filed pursuant to Rule 12(c) more than 21 days after the pleadings are closed will be deemed a dispositive motion.